# Exhibit B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CALIFORNIA

ALL METAL SALES, INC.,

    Plaintiff,

     vs.    Case No. 1:10-cv-2343

All METAL SOURCE, LLC,

    Defendant.

_____

DEPOSITION OF ANCILLA GARCIA-COOLIDGE

San Diego, California

October 19, 2011

Reported by:

Diane M. Stockton

CSR No. 11085

Job No. 10000963

```
 1              UNITED STATES DISTRICT COURT
 2             FOR THE DISTRICT OF CALIFORNIA
 3
 4   ALL METAL SALES, INC.,
 5        Plaintiff,
 6         vs.                      Case No. 1:10-cv-2343
 7   ALL METAL SOURCE, LLC,
 8        Defendant.
 9   _____
10
11
12
13
14
15
16
17
18
19
20
21       Deposition of ANCILLA GARCIA-COOLIDGE, taken on
22   behalf of Plaintiff, at 4401 Eastgate Mall, San Diego,
23   California, beginning at 3:07 p.m., and ending at 4:22
24   p.m., on Wednesday, October 19, 2011, before Diane M.
25   Stockton, Certified Shorthand Reporter No. 11085.
```

```
 1   APPEARANCES:

 2   For Plaintiff:

 3        MCDONALD HOPKINS, LLC
          DAVID B. CUPAR, ESQ.
 4        600 Superior Avenue, East, Suite 2100
          Cleveland, Ohio 44114
 5        216.430.2036
          dcupar@mcdonaldhopkins.com
 6

 7   VIDEOGRAPHER:

 8        RUSTY KING
          APTUS COURT REPORTING
 9        701 B Street, Suite 1115
          San Diego, California 92101
10        619.546.9151

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   that.
 2      Q.   Is it fair to say that you put Mr. VandeVelde's
 3   name down to avoid any potential confusion within that
 4   company?
 5      A.   That's correct too, so they knew who the quote
 6   came from and they can now go into their system and
 7   update it or whatever they have to do so I can remind
 8   them, yeah, I got a quote already from this person.
 9      Q.   And what did -- and what happened next after you
10   sent this out, this e-mail out?
11      A.   I -- once I sent this out, I got an e-mail from
12   another company.  I believe that was the other company in
13   the list that had a similar name, and here, if my memory
14   serves me right, from All Metal Sales they were thanking
15   me for contacting them for my metal sale requirement.
16   And it didn't strike me as too different companies at the
17   time.  Both companies have "all metal" in it, and I
18   didn't realize that it was another company.  It was very
19   confusing.  I did not realize it was another company
20   until I got another response from the salesperson there.
21   What's her name?  Miss -- yeah, I wasn't introduced -- I
22   just had customer service.
23      Q.   Was her name Ms. Esparza?
24      A.   Yes.
25      Q.   Jessica Esparza?
```

1    A.   Yes.  And it was just customer service.  And
2  that's another thing that's confusing when you have small
3  companies and you have customer service, you think it's
4  the secretary, you think it's the person at the desk who
5  is taking in the calls, so you're speaking to them as you
6  would have spoken to the salesperson that gave you the
7  quote in the first place.  Once I did that and had a
8  response in my e-mail that seemed a bit out of touch in
9  the sense that this person had no idea Ms. Esparza had no
10 idea what I was talking about.  And I'm like, no, I got a
11 quote already from this person, that's not what I want.
12 This is what I want.  And there was some sort of
13 confusion.  Then I realized this is not the company.
14    **Q.   After the Monday, August 30th, 2010, at**
15 **10:48 a.m. e-mail where you sent to All Metal Source, who**
16 **at the time you thought was All Metal, this e-mail saying**
17 **you already got a quote from Jim VandeVelde at All**
18 **Metal --**
19    A.   Right.
20    **Q.   -- how did All Metal Source respond back to you?**
21    A.   They thanked me for my requirement, for my metal
22 requirement, as though it was -- as though the quote came
23 from them, not from All Metal Sales.
24    **Q.   Did they tell you, hey, we're not Jim VandeVelde**
25 **of All Metal Sales, we're a different company?**

1    A.   No, I was not -- that was not -- I can see it's
2  not in here, and I do not remember ever seeing anything
3  that said anything different even though I mentioned I
4  already got a quote.  I was really just going back now to
5  confirm the quote and everything that's on the quote as
6  we need to do when we get quotes.  We have to validate.
7    **Q.   And do you see an e-mail on page 5 above your**
8  **e-mail from All Metal Source responding to you dated --**
9    A.   Yes.  Could you --
10   **Q.   -- Monday, August 30, 2010 at 11:21 a.m.?**
11   A.   Correct.  And I was requested to please forward
12 the quote back to them as we do not have it in our
13 records that you had been quoted.
14   **Q.   And did you quote it back to them?**
15   A.   Yes, I did.
16   **Q.   And did you quote it back to them with the**
17 **understanding that this All Metal Source was actually All**
18 **Metal Sales?**
19   A.   Correct, I did.  I didn't think anything of it
20 at the time because of the All Metal Sales name.  I mean,
21 it's --
22   **Q.   Would you have ever e-mailed to All Metal Source**
23 **and All Metal Sales a quote if you knew they were two**
24 **different companies?**
25   A.   No.

1    Q.    Why not?

2    A.    Because from the get-go I did not even in my --

3  even in my selection of vendors in the list that came to

4  me, it's only one All Sales that I chose, and I think, as

5  I said before, it was confusing even if the items are

6  even similar in the name, and so I did not choose them so

7  I wouldn't go to them after the fact either.  It would

8  only be the group of vendors selected in the first

9  instance.

10   Q.    And take a look at that e-mail from All Metal

11 Source to you on Monday, August 30, 2010, at 11:21 a.m.,

12 which is on page 5 of Exhibit 8.  Do you see that e-mail?

13   A.    11:21, yes.

14   Q.    And do you see there that All Metal Source there

15 in response to your e-mail identifies Mr. VandeVelde

16 where All Metal Source states, "Could you please forward

17 the quote back to us as we do not have it in our records

18 that you had been quoted?"  Do you see that?

19   A.    Yes.

20   Q.    Did All Metal Source at that point in time tell

21 you that it was not All Metal Sales?

22   A.    No, they did not.

23   Q.    Was it your belief at that point in time that

24 this All Metal Source was All Metal Sales, was all one

25 company?

1    A.   Correct, I thought it was the same company that
2  I was working with and that perhaps -- because this has
3  happened before where they look for a quote or they have
4  a satellite office somewhere else and a different
5  salesperson who might be on the road. Different things
6  like that has happened in the past, so at the time I did
7  not think anything of that either because I've seen this
8  type of -- for small businesses it's very normal that
9  they may not have a quote in the system because somebody
10 is working from their home or something. That's how
11 small, really.
12    Q.   Do you see on the next page, on page 4, the next
13 e-mail is from you back to All Metal Source dated Monday,
14 August 30, 2010, at 11:29 a.m.?
15    A.   Correct.
16    Q.   And do you see there that you state back to All
17 Metal Source, "Faxed quote attached"?
18    A.   Correct.
19    Q.   And do you see on the last page of Exhibit 8 a
20 quotation?
21    A.   Yes.
22    Q.   Is that the quote that you e-mailed back to All
23 Metal Source on Monday, August 30, 2010 at 11:29 a.m.?
24    A.   That is correct.
25    Q.   And who is this -- and looking at that quote,

1  who is that quite from, which company?

2     A.   This quote is from All Metal Sales, the intended
3  vendor that I went to and who produced it.

4     Q.   And why did you send All Metal Source and All
5  Metal Sales a quotation if you're not supposed to send to
6  other companies quotations?

7     A.   Because I believed I was dealing with All Metal
8  Sales.  I was like, if you can't find it in your records,
9  here it is.

10    Q.   Is it fair to say if you knew that they were two
11 different companies you would have never sent that All
12 Metal Sales quote on the last page of Exhibit 8 to All
13 Metal Source there?

14    A.   That is correct.  We are not allowed to do
15 anything like that because in a way it sets an unfair
16 advantage between vendors because what they would do is
17 reduce the price or, you know, and even in this instance
18 pretend that they were them in order to get -- you know,
19 it really causes a lot of problems.

20    Q.   Is it fair to say keeping quotes confidential
21 from competitive bidders is a very important process for
22 the Navy?

23    A.   Very, very important for DOD or any agency with
24 acquisitions, that's correct.

25    Q.   And why is it important to keep confidential the

1  we quoted you already.  Do you have a quote from us
2  already?  If so, please forward it to me so I can verify
3  it and close it on our end.  Thanks in advance for your
4  time.  Regards, Jessica Esparza."  Do you see that?
5      A.   Yes.
6      Q.   Did Ms. Esparza at that time tell you that she
7  was not All Metal Sales but, rather, All Metal Source?
8      A.   No, she did.
9      Q.   And at that time she had also received the All
10 Metal Sales quote --
11     A.   Metal Sales quote.
12     Q.   -- from you; isn't that right?
13     A.   That is correct.
14     Q.   And she also received the name Jim VandeVelde
15 from you?
16     A.   Correct.
17     Q.   And is it fair to say that you identified to her
18 that Jim VandeVelde worked for All Metal Sales?
19     A.   Yes.
20     Q.   And did you assume that Ms. Esparza here was
21 working with Mr. VandeVelde?
22     A.   That is correct, especially with the title of
23 Customer Service.  And it was only at this time that I
24 had a name.  That's why I was fumbling and looking for
25 her name because it was customer service I was dealing

1  with all along, and I didn't realize it was Ms. Esparza.
2     Q.   Is it fair to say that you received multiple
3  e-mails from All Metal Source after you identified your
4  belief that they were All Metal Sales where they never
5  corrected you as to who they were?
6     A.   That is correct.  The confusion started when I
7  already sent the quote I received, or I thought I
8  received, from this company, from All Metal Source,
9  pretending or being or acting as though they were All
10 Metal Sales, and it started to seem strange to me that,
11 okay, so I sent you a quote, this is the quote I got from
12 Mr. VandeVelde and you're telling me you don't have it.
13 And that's when I had sent that one, you know, the
14 description of the item that I was looking for.
15    Q.   Were you actually confused here?
16    A.   Yes, I was, because if I sent it to you, then
17 you have it, and now you're telling me you don't.  It's
18 not in your record.
19    Q.   Do you believe that All Metal Source at that
20 time had a chance to correct this confusion?
21    A.   Yes.
22    Q.   Did it?
23    A.   And -- there was no correction in the confusion.
24 I -- she continued -- All Metal Source led me, I have to
25 say.  I was led down that path because I sent the quote

1   to clarify. Since it was customer service, I am
2   thinking, you know, they'll contact Mr. VandeVelde and
3   let him know that I'm requesting for the quote to be
4   updated or what have you. And I never had a response
5   saying, well, that person doesn't work here, we are not
6   that company, none of that. And it's only when I
7   realized they didn't know what I really wanted even with
8   the quote in hand, then I started to see, yeah, this
9   can't be the same company.
10      Q.   And do you see on page 2 of Exhibit 8 at the
11  center an e-mail from you to All Metal Source dated
12  August 30th, 2010, at 1:14 p.m.?
13      A.   Correct.
14      Q.   And do you see there that you state, "You just
15  told me it was for this, the copper nickel material, not
16  HY-100. There are several metal-forged items. Can I
17  have a quote for the HY-100. Am I talking to the same
18  salesperson?" Do you see that?
19      A.   Yes.
20      Q.   And why did you say to All Metal Source at that
21  time, "Am I talking to the same salesperson?"
22      A.   Because I thought by now I would be talking to
23  Mr. VandeVelde, and when I mentioned "same salesperson,"
24  I had already had this discussion with Mr. VandeVelde, so
25  it was confusing to me that now Ms. Spaza -- or is it

1  Esparza?  And is asking me for information when I already
2  gave it.  So it started to ring true to me that something
3  is wrong here, it can't be the same salesperson or now
4  the same company.
5      Q.   And do you see starting on page 1 going into
6  page 2 Ms. Esparza's responsive e-mail to your question,
7  "Am I talking to the same salesperson?"
8      A.   Yes.
9      Q.   And do you see that that e-mail is from All
10 Metal Source or Ms. Esparza dated Monday, August 30th,
11 2010, at 1:18 p.m.?
12     A.   Yes.
13     Q.   And there do you see that Ms. Esparza wrote an
14 e-mail to you saying, "The attachment you forwarded was
15 for 70/30 copper nickel.  It was not for HY-100.  Yes,
16 you are speaking with the same person, Jessica Esparza.
17 Thank you in advance for your time.  Regards, Jessica
18 Esparza."  Do you see that?
19     A.   Yes.
20     Q.   Did Ms. Esparza there clarify the fact that she
21 was not All Metal Sales but, rather, All Metal Source?
22     A.   No, she didn't state that.  She just states that
23 I am speaking to the same salesperson.  So I know the
24 difference between Mr. VandeVelde and Esparza.  It's not
25 the same salesperson.

1   got the gist of what was happening and explained to me
2   that this other company is really right up the street and
3   there has been some issues with this other company and
4   they have a similar name, and it really then started to
5   make sense to me that my confusion was valid because,
6   yeah, I wasn't even stopped anywhere within that e-mail
7   chain to say, no, I'm not that company even when I
8   mentioned his name and I told him all of this.  And he
9   explained to me there are some major issues with this
10  company and that they are basically competing with them
11  about a block up the street or something like that.
12      Q.   Based on Mr. VandeVelde's explanation at that
13  point in time, do you believe that Ms. Esparza deceived
14  you?
15      A.   I do.  I truly do.  And I think I gave enough
16  time and e-mails for her to jump in and, you know,
17  justify herself and say, well, you know, I never got this
18  quote because I'm not that company, and Mr. VandeVelde
19  does not work for me, they are another company, what have
20  you.  It took me all that time to actually figure it out.
21  And then I got the call from Mr. VandeVelde explaining
22  some of what I was confused about.
23      Q.   Is it fair to say that at that time, in the
24  August-September 2010 timeframe, that you were an
25  experienced, professional buyer, purchasing agent for the

1  **U.S. Navy?**

2      A.   Yes, it was seven years I had been procuring

3  items, and this was the first instance of anything

4  happening like this ever, and that's one of the reasons I

5  remember it so well, because I had never seen anything

6  like this before.

7           And September 2nd here when I said, "I e-mailed

8  you and specifically said that I no longer needed a

9  quote," I felt I had to say that to her because she sent

10 the quote anyway after all of that, and that's when it

11 started to give me this bad feeling that, you know,

12 something is going on here, something is wrong here that

13 you sort of piggyback onto these quotes trying to get

14 them while I keep reiterating, no, it's for this item, I

15 already spoke to someone.  And I was really, truly under

16 the assumption it's the same company and that customer

17 service was just, you know, like the hub of all of the

18 salespeople where in many instances this has happened

19 before with small companies where they probably only have

20 a hundred people and you have salespeople out in the

21 field, you know, looking at the industry and getting the

22 prices and the items that they need to run their company.

23 So not always would you directly go back to the

24 salesperson.  And I'm thinking customer service is

25 picking up the slack for the -- you know, the salespeople

1   out in the field.  And she had many, many instances where
2   she could have said that, and coming to the end, she
3   still wanted a quote from me.  So it was clear that
4   that's what it was about, to take the business for
5   herself after I even told her, you know, I said
6   specifically, "I no longer need a quote from you" when I
7   realized that this is not the company, you know, and she
8   still sent it.
9        Q.   **Based on your more than seven and a half years**
10  **of experience as a purchase agent and a contract**
11  **specialist for the U.S. Navy, do you believe you're good**
12  **at distinguishing between suppliers?**
13       A.   Yes, except for this one.  It had the same name.
14       Q.   **And you may have testified to this before.  Is**
15  **this the first time you ever had this kind of confusion**
16  **happen regarding suppliers on a bid?**
17       A.   That is correct, because it's for the same item
18  and a similar name.
19       Q.   **Did you know that All Metal Source changed its**
20  **name to A Metal Source?**
21       A.   No.
22       Q.   **And at that time you worked in this situation**
23  **they were both "all metal"; is that right?**
24       A.   That is correct.
25            MR. CUPAR:  Let's take a short break.

```
 1        I, the undersigned, a Certified Shorthand Reporter
 2   of the State of California, do hereby certify:
 3        That the foregoing proceedings were taken before me
 4   at the time and place herein set forth; that any
 5   witnesses in the foregoing proceedings, prior to
 6   testifying, were duly sworn; that a record of the
 7   proceedings was made by me using machine shorthand which
 8   was thereafter transcribed under my direction; that the
 9   foregoing transcript is a true record of the testimony
10   given.
11        Further, that if the foregoing pertains to the
12   original transcript of a deposition in a Federal Case,
13   before completion of the proceedings, review of the
14   transcript [X] was [ ] not requested.
15        I further certify I am neither financially
16   interested in the action nor a relative or employee of
17   any attorney or party to this action.
18        IN WITNESS WHEREOF, I have this date subscribed my
19   name.
20
21   Dated:_____
22
23                              _____
                                        Diane M. Stockton
24                              Diane M. Stockton
                                CSR No. 11085
25
```