# Exhibit C

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

JAN X 7 2013

Cuyahoga County, Cleveland Courts

**JESSICA ESPARZA**
25935 Detroit Road, #321
Westlake, OH 44145

    Plaintiff (1),

**A METAL SOURCE, LLC,**
**f/k/a All METAL SOURCE, LLC,**
**C/O JESSICA ESPARZA**
25935 Detroit Road, #321
Westlake, OH 44145

    Plaintiff (2),


    v.


**THOMAS GERALD KLOCKER**
908 Beach Road
Rocky River, OH 44107

    Defendant (1),

**ALL METAL SALES, INC**.
**C/O THOMAS GERALD KLOCKER**
29260 Clemens Road, Suite #3
Westlake, OH 44145

    Defendant (2).

CASE NO.

JUDGE    Complaint
KATHLEEN ANN SUTULA
CV 13 798996

**COMPLAINT**

**JURY DEMAND ENDORSED HERON**

## THE PARTIES

1.      Plaintiff Jessica Esparza ("Jessica") is a U.S. citizen and resides in Westlake, Ohio.

2.      Plaintiff A Metal Source, LLC ("Source") f/k/a All Metal Source, LLC ("Source") is an Ohio limited liability company with its principal place of business in Westlake, Ohio.

3.      Defendant All Metal Sales, Inc. ("AMS") is an Ohio corporation with its principal place of business at 29260 Clemens Road, Suite #3, Westlake, Ohio 44145, located in Cuyahoga County, Ohio.

4.      Defendant Thomas Gerald Klocker ("Junior") is a U.S. citizen and resides at 908 Beach Road, Rocky River, Ohio 44107, located in Cuyahoga County, Ohio. Upon information and belief, Defendant is the sole shareholder and President of Defendant All Metal Sales, Inc.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter, and venue is proper, pursuant to Civ.R.3.

## RELEVANT FACTS

2.      Plaintiff's President, Jessica Esparza ("Jessica"), and the Defendant, her step-brother, Thomas Gerald Klocker ("Junior"), both learned the business of sourcing all types, shapes and forms of metal products while working at Midwest Metals, Inc., ("Midwest Metals") from their father, Thomas Paul Klocker ("Senior"). The line of business entails the purchasing of metals and selling or distribution of them to its customers in a vast range of industries such as the aerospace, construction, electrical, industrial, machinery and equipment, marine, medical, military, satellite and space systems, telecommunications, tool and dies and much more.

3.     The metal products sold are from a variety of metal grades and alloys such as aluminum, brass, copper, Haynes, Hastelloy, Incoloy, Inconel, magnesium, Monel, niobium, stainless steel, titanium, tool steel, tantalum, tungsten and zirconium.

4.     The metal products sold come in different sizes and shapes such as bars, bolts, coil, fittings, flanges, pipe, plates, rings, screws, sheets, structurals, tubes, wire and custom made geometries per order.

5.     While Junior was still working as an employee of his father's business in 1999, he had been diverting sales from Midwest Metals to All Metal Sales, Inc., his own metal distributing company. See attached Defendant's articles of incorporation with the State of Ohio on **Exhibit A**.

6.     Jessica completed her bachelor's degree and intermittently worked as an employee of the company run by Senior, Midwest Metals. In 2004, Jessica then become a full time employee up until June 2009.

7.     In June 2009, Jessica stopped going to work at Midwest Metals because she had not received a paycheck for many weeks. When it became apparent that she would never get paid for those unpaid weeks in April and May 2009, Jessica filed for unemployment and started looking for work. Her job search was unsuccessful, so she decided to concentrate on what she knew best and formed her own metal distribution company. She registered Plaintiff with the Ohio Secretary of State as All Metal Source, LLC on November 11, 2009. See attached Plaintiff's articles of incorporation with the State of Ohio on **Exhibit B**.

8.     Jessica had registered two other metal businesses years earlier when the thought of having her own business had crossed her mind. The first company was registered in February 2003 as Monarch-E-Metals and the other in May 2003 as Unlimited Metals, Inc. Jessica never did any business under either one of these businesses because as she prepared to have her own

separate business venture, Senior would always ask her to keep working for him at Midwest Metals; to which she did continue working for.

9. Plaintiff Source was formed to be a metal distributor and service center of metals and alloys.

10. Plaintiff Source specializes in supplying small and large industrial and government end-users with a wide variety of all metals.

11. Jessica knew from her experience in this field that many metal distributorships include the phrase "all metal" in their business name.

12. A business directory called the "ThomasNet," formerly known as the Thomas Register, is one of the advertising methods Source used in order to promote Plaintiff's company. Founded in 1898 the Thomas Register is a widely-used buying guide that reports names and descriptions of businesses that offer particular good and services. Many engineers and industrial buyers throughout the United States use the ThomasNet to find vendors of goods or services. Many business owners throughout the United States use the ThomasNet to promote their company to the many engineers and industrial buyers in search of those goods or services.

13. The ThomasNet shows multiple metal distributors and service providers with the phrase "all metal" in their name. See attached search results of 51 companies with "All Metal" in their name on **Exhibit C**.

14. The ThomasNet is where Jessica's, Junior's and Senior's business all advertise in.

15. The Ohio Secretary of States' website includes registrations for All Metals, Inc., All Metal Recycling, Inc. and All Metal Fabricators. See attached search results on **Exhibit D**.

16. When forming, Plaintiff distinguished its use of the all metal description of the type of goods offered through the company by adding the word "Source" to form its name, All Metal Source, LLC.

17. Source invested in creating a website, printing business cards, supplies and advertising its services and products in relevant trade publications using the name All Metal Source, LLC. The corresponding logo used was:



18. Source's website was well-designed and quickly attracted potential business to Plaintiff.

19. Jessica knew the business well from her years of service to Midwest Metals and began to build the sales and the reputation of All Metal Source, LLC.

20. In September of 2010, Jessica was in South America visiting her beloved great aunt that was suffering from breast cancer and the effects of the chemo therapy treatments.

21. While away and out of the country, Jessica had Jamie Wirtjes ("Jamie") check the mail for Source. Jamie notified her (Jessica) that she had received a letter addressed to Jessica personally, insisting that she cease and desist the use of the phrase "all metal" in the name of her metal distributing business. The letter dated September 2, 2010 asserted that All Metal Sales, Inc. owned the right to the All Metal mark and that her use of "all metal" was in violation of the Lanham Act, Ohio statutes and common law. See **Exhibit E**.

22. Defendant All Metal Sales **does not** own a **federal** trademark or service mark registration for the phrase "All Metal" or "all metal."

23. Defendant All Metal Sales **does not** own a **federal** trademark or service mark registration for the phrase "AllMetal" or "allmetal."

24. Defendant All Metal Sales **does not** own a **federal** trademark or service mark registration for the phrase "A Metal" or "a metal."

25.     Defendant All Metal Sales **does not** own a **federal** trademark or service mark registration for the phrase "AMetal" or "ametal."

26.     Defendant All Metal Sales **does not** own a **federal** trademark or service mark registration for the letter element "A" or "a."

27.     Defendant All Metal Sales **does not** own a **federal** trademark or service mark registration for the illustrated logo design identified, namely a large capital "A" with a swirl around it over top of the words "All Metal Sales, Inc."

28.     Defendant All Metal Sales **does not** own a **federal** trademark or service mark registration for the illustrated logo design identified, namely a stylized letter "A" with a swirl around the letter. The words "All Metal Sales, Inc." are below the letter "A".

29.     Defendant All Metal Sales **does not** own a **state** trademark or service mark registration for the phrase "All Metal" or "all metal."

30.     Defendant All Metal Sales **does not** own a **state** trademark or service mark registration for the phrase "AllMetal" or "allmetal."

31.     Defendant All Metal Sales **does not** own a **state** trademark or service mark registration for the phrase "A Metal" or "a metal."

32.     Defendant All Metal Sales **does not** own a **state** trademark or service mark registration for the phrase "AMetal" or "ametal."

33.     Defendant All Metal Sales **does not** own a **state** trademark or service mark registration for the letter element "A" or "a."

34.     Defendant All Metal Sales **does not** own a **state** trademark or service mark registration for the illustrated logo design identified, namely a large capital "A" with a swirl around it.

**35.**     Jessica knew that many other companies had used the "all metal" phrase for years and suspected that the cease and desist letter was intended to intimidate her from competing with her step-brother.

**36.**     After receiving the September 2, 2010 cease and desist letter, Jessica heard a conversation between Senior and Defendant Junior in which Junior made clear that he would not consider dropping his claim against Source.  Junior's statements in the conversation indicated that his intention in bringing this lawsuit was to prevent Jessica from competing under any name and to destroy her fledgling company.  Senior provided as a witness testimony at trial on Civil Action Case No. 1-10 CV 2343, Junior openly said to Senior, his father, as documented on video by the Federal Court recorded at trial of All Metal Sales v All Metal Source Part 3 at 16:00 minutes to 17:55 minutes and viewable online at http://www.uscourts.gov/Multimedia/Cameras/NorthernDistrictofOhio.aspx?video_uuid=p58l59 5m&categoryId=35972  recorded as **Exhibit F**:

> **"I'm suing her [Jessica].  I'm going to tell you one thing.  I just spent a couple hundred thousand dollars having a lawsuit picking out the patio tile color, in Clifton Lagoons where I live.  I'm prepared to spend a lot more than that to make sure Jessica will never be in business.  I'll raise, spend all I can on legal fees to make sure she has no chance to be in business."**

**37.**     Faced with the choice between the cost of changing her company's name and the cost of litigating, Jessica chose to change the name of her company to A Metal Source, LLC. Jessica sent in a certificate of amendment dated October 8, 2010 to the Ohio Secretary of State. The amendment was confirmed by the State of Ohio on October 19, 2010 seen on **Exhibit G**.

**38.** Source invested in creating a website, printing business cards, supplies and advertising its services and products in relevant trade publications using the name A Metal Source, LLC. The corresponding logo used was:

*A Metal Source, LLC*

**39.** On October 14, 2010, as Source's name change filing was in process with the Ohio Secretary of State, All Metal Sales filed its Complaint as ECF #1 for Civil Action Case No. 1-10 CV 2343 for noted parties as All Metal Sales, Inc. v. All Metal Source, LLC.

**40.** All Metal Sales was aware that Source had changed its name in response to the cease and desist letter, but filed its hard-charging lawsuit anyway.

**41.** Source at no time believed that All Metal Sales, Inc. was the only company that could use the phrase "all metal" in the name of its metal distribution business.

**42.** Source at no time believed that its use of "all metal" in the name All Metal Source, LLC was infringing on any ownership rights of All Metal Sales, Inc.

**43.** Source at no time believed that its use of "allmetal" in its website name www.AllMetalSource.com was infringing on any ownership rights of All Metal Sales, Inc.

**44.** Source at no time believed that its use of "a metal" in the name A Metal Source, LLC was infringing on any ownership rights of All Metal Sales, Inc.

**45.** Source at no time believed that its use of "ametal" in its website name www.AMetalSource.com was infringing on any ownership rights of All Metal Sales, Inc.

**46.** All Metal Sales has waived its right to assert trademark rights in **ALL METAL** by its failure to assert such rights against the multiple other companies that use the phrase "all

metal" in connection with the sale of metal products, as illustrated in part by the ThomasNet listings attached as **Exhibit C**.

47.     All Metal Sales has waived its right to assert trademark rights in **ALL METAL** by it not having a federal registration with the USPTO.

48.     All Metal Sales has waived its right to assert trademark rights in **ALLMETAL** by it not having a federal registration with the USPTO. It already exists and is registered to another separate entity by the name of Cleaire Advanced Emission Controls, LLC as indicated in USPTO's Trademark Electronic Search System ("TESS"). See **Exhibit H**.

49.     All Metal Sales has waived its right to assert trademark rights in **A METAL** by it not having a federal registration with the USPTO.

50.     All Metal Sales has waived its right to assert trademark rights in **AMETAL** by it not having a federal registration with the USPTO. It already exists and is registered to another separate entity by the name of Tour & Andersson Aktiebolag Corp. as indicated in USPTO's TESS. See **Exhibit I**.

51.     All Metal Sales has waived its right to assert trademark rights in **A** by it not having a federal registration with the USPTO. .

52.     All Metal Sales has waived its right to assert trademark rights in **ALL METAL** by it not having a state registration with the State of Ohio.

53.     All Metal Sales has waived its right to assert trademark rights in **ALLMETAL** by it not having a state registration with the State of Ohio.

54.     All Metal Sales has waived its right to assert trademark rights in **A METAL** by it not having a state registration with the State of Ohio.

55.     All Metal Sales has waived its right to assert trademark rights in **AMETAL** by it not having a state registration with the State of Ohio.

56. All Metal Sales has waived its right to assert trademark rights in **A** by it not having a state registration with the State of Ohio.

57. All Metal Sales is estopped from asserting the claims in its Complaint as it has not asserted rights to an ALL METAL trademark against the multiple other companies that use the phrase "all metal" in connection with the sale of metal products, as illustrated in part by the ThomasNet listings attached as **Exhibit C**.

58. All Metal Sales is estopped from asserting the claims in its Complaint as it has not asserted rights to an ALL METAL trademark as a federal registration with the USPTO. '

59. The alleged mark is a phrase used by others as a mark or trade name.

60. All Metal Sales has suffered no damages as a result of the alleged conduct of Source.

61. Use of the phrase "all metal" is merely descriptive of the products sold by Plaintiff and by Defendant and does not have secondary meaning associating All Metal Sales, Inc. as the source of "all metal".

62. Source's use of "all metal" and "a metal" is fair use.

63. Source's use of "all metal" and "a metal" is nominative fair use.

64. Source has received no financial benefit from any confusion over its association, or lack of association, with All Metal Sales, Inc.

65. All Metal Sales' Complaint claims in Civil Action Case No. 1-10 CV 2343 were barred by laches.

66. All Metal Sales had unclean hands in Civil Action Case No. 1-10 CV 2343.

67. All Metal Sales filed its Complaint ECF #1 of Civil Action Case No. 1-10 CV 2343, knowing Source had changed its business name to A Metal Source, LLC and knowing that All Metal Sales had suffered no damage attributable to Source's use of the name All Metal

Source, LLC or A Metal Source, LLC. All Metal Sales filed an action asking the Court to enjoin unfair competition when All Metal Sales' real intent is to destroy Jessica's ability to succeed as a new business in competition with All Metal Sales, Inc.

68.     On February 19, 2011, Defendant's [former Plaintiff] counsel submitted a **federal** trademark application for registering All Metal Sales' company logo with the United States Patent & Trademark Office ("USPTO"). The **federal** trademark records of All Metal Sales' mark registered for is shown below and on application as **Exhibit J. NOTE:** The description of the illustrated drawing or logo for the **federal** trademark is for: **The mark consists of the letter "A" stylized with a swirl around the letter "A"** **NOTE:** "The words All Metal Sales, Inc. are **NOT** below the letter A." See visual illustration drawing of the mark in black and white:



69.     On February 22, 2011, Defendant's [former Plaintiff] counsel submitted a trademark registration application with the State of Ohio for registering its company's logo. See attached Pages 2 and 3 of Defendant's state trademark application as **Exhibit K.**

70.     On February 22, 2011, Defendant's [former Plaintiff] counsel submitted a service mark registration application with the State of Ohio for registering its company's logo. See attached Pages 2 and 3 of Defendant's state trademark application as **Exhibit L.**

71.     On February 24, 2011, the State of Ohio accepted and processed both the trademark and service mark application submitted by Defendant [former Plaintiff] and registered the mark as shown in the illustrated "red" drawing below. See the State of Ohio Certificate of

Trademark on Page 1 of **Exhibit K** and the Certificate of Service Mark on Page 1 of **Exhibit L**. Both the trademark and the service mark certificate from the State of Ohio do not show the full "in words" description of the mark description due to space restriction as noted on original application. **NOTE:** The description of the registered illustrated drawing or logo for the **state** trademark is for **"A stylized letter 'A' with a swirl around the letter. The words All Metal Sales, Inc. are below the letter A."** See visual illustration of the mark:



72.     On May 20, 2011, Defendant All Metal Sales filed a motion to enforce settlement ECF #27 of Civil Action Case No. 1-10 CV 2343, which lead to a hearing on July 12, 2011 before Northern District of Ohio Court Judge Donald C. Nugent. The Courts Memorandum Opinion and Order ECF #34 having considered the briefs, as well as all evidence and argument presented at the hearing, found All Metal Sales failed to prove by a preponderance of the evidence that an enforceable agreement had been reached. All Metal Sales' motion was denied.

73.     On August 30, 2011, Junior [former Plaintiff] falsely stated in a deposition on Trademark Civil Action Case No. 1-10 CV 2343, that his business had a **registered** trademark with the State of Ohio since 1999 when he claimed, **"There is a trademark pending from the U.S. Patent office. I do have one with the State of Ohio since 1999."** As recorded on Page 34, Line 18 – Line 20 of Junior's deposition seen attached on **Exhibit M** and proven otherwise on the State of Ohio Trademark Certificate seen on Page 1 of **Exhibit K** which is certified dated

on February 24, 2011. Therefore, All Metal Sales' **state** trademark registration with the State of Ohio indicates the filing was twelve years later; not since 1999.

**74.** As recorded on Page 34, Line 18 – Line 20 of Junior's deposition seen attached on **Exhibit M**

**75.** On October 24, 2011, the State of Ohio accepted and processed both the trademark and service mark application submitted by Plaintiff [former Defendant] and registered the mark as shown in the illustrated drawing below. See the State of Ohio Certificate of Trademark on **Exhibit N** and the Certificate of Service Mark on **Exhibit O** for A Metal Source, LLC. Both the trademark and the service mark certificate from the State of Ohio do not show the full "in words" description of the mark description due to space restriction.





**76.** On October 25, 2011, the USPTO accepted and processed the application submitted by Plaintiff [former Defendant] and registered the service mark. The federal service mark registration is for **"A METAL SOURCE, LLC"** as shown on the Defendant's official USPTO Registration Certificate No. 4047248 seen as **Exhibit P**.

**77.** On December 22, 2011, Senior submitted a personal deposition letter addressed to Northern District of Ohio Court Judge Donald C. Nugent and was documented as ECF #42 of Civil Action Case No. 1-10 CV 2343 as seen attached as **Exhibit Q**. This further proves the malice of Junior towards Jessica.

**78.** On January 5, 2012, at the conclusion of a two day trial of Civil Action Case No. 1-10 CV 2343, the Jury of twelve was duly impaneled and sworn pursuant to Fed. R. Civ. P.39(c)(1) and returned before the Court all unanimously in favor of Jessica Esparza's business A Metal Source, LLC f/k/a All Metal Source, LLC of all counts. The Court accepted the Jury's unanimous Answers to Interrogatories and entered Judgment in favor of Defendant [present Plaintiff, Source] on Plaintiff's Complaint [present Defendant, All Metal Sales]. All Metal Sales did not demonstrate the elements necessary for its claims of unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(a); violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 et. seq.; unfair competition, and unjust enrichment all based upon Source's alleged infringement of All Metal Sales' trademark "All Metal" and All Metal Sales' A Logo.

**The Jury, in open court, returned the following unanimous Answers to Interrogatories in Civil Action Case No. 1-10 CV 2343:**

**INTERROGATORY NUMBER 1**

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source,

LLC" infringed on Plaintiff's "All Metal" trademark in violation of the Lanham Act?

   **NO**    **(insert in ink "YES" or "NO" according to your findings)**

## INTERROGATORY NUMBER 2

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" willfully infringed on Plaintiff's "All Metal" trademark in violation of the Lanham Act?

   **NO**    **(insert in ink "YES" or "NO" according to your findings)**

## INTERROGATORY NUMBER 3

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" infringed on Plaintiff's "All Metal" trademark in violation of the Lanham Act?

   **NO**    **(insert in ink "YES" or "NO" according to your findings)**

## INTERROGATORY NUMBER 4

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" willfully infringed on Plaintiff's "All Metal" trademark in violation of the Lanham Act?

   **NO**    **(insert in ink "YES" or "NO" according to your findings)**

## INTERROGATORY NUMBER 5

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" infringed on Plaintiff's A Logo in violation of the Lanham Act?

   **NO**    **(insert in ink "YES" or "NO" according to your findings)**

## INTERROGATORY NUMBER 6

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" willfully infringed on Plaintiff's A Logo in violation of the Lanham Act?

___**NO**___ (insert in ink "YES" or "NO" according to your findings)


## INTERROGATORY NUMBER 7

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" infringed on Plaintiff's A Logo in violation of the Lanham Act?

___**NO**___ (insert in ink "YES" or "NO" according to your findings)


## INTERROGATORY NUMBER 8

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" willfully infringed on Plaintiff's A Logo in violation of the Lanham Act?

___**NO**___ (insert in ink "YES" or "NO" according to your findings)


## INTERROGATORY NUMBER 9

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Plaintiff's "all Metal" trademark was infringed by cyberpiracy in violation of the Lanham Act by Defendant's use of the domain name "AllMetalSource.com"?

___**NO**___ (insert in ink "YES" or "NO" according to your findings)


## INTERROGATORY NUMBER 10

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Plaintiff's "all Metal" trademark was infringed by cyberpiracy in violation of the Lanham Act by Defendant's use of the domain name "AMetalSource.com"?

___**NO**___ (insert in ink "YES" or "NO" according to your findings)

79.     Ultimately, All Metal Sales was not able to prove the likelihood of confusion at trial in Civil Action Case No. 1-10 CV 2343.  In the Sixth Circuit, the court considers the eight *Frisch*-factors to determine whether a likelihood of confusion exists: (1) similarity of the marks; (2) relatedness of the goods; (3) evidence of actual confusion; (4) intent of the defendant in selecting the mark; (5) marketing channels used; (6) strength of the plaintiff's mark; (7) likely degree of purchaser care; and (8) likelihood of expansion of the product lines using the marks. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, (6th Cir. 1982). No one factor is conclusive; each must be weighed in light of the total evidence presented at trial.

80.     On January 9, 2012, Northern District of Ohio Court Judge Donald C. Nugent found Judgment in favor of Source [former Defendant] on Civil Action Case No. 1-10 CV 2343 - ECF #67.  See attached **Exhibit R:**

> "The Court read **the Interrogatory Answers in open court, and thereafter, the Court polled the Jury.  Each Juror affirmatively responded to the correctness of the Answers.  The Court accepted the Interrogatory Answers and the Jury was then discharged."**
>
> **"THEREFORE, based upon the Interrogatory Answers, the Court enters Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure in favor of the Defendant A Metal Source, LLC (formerly known as All Metal Source, LLC) on Plaintiff's Complaint.  All costs are to be paid by the Plaintiff."**

81.     On February 6, 2012, Defendant All Metal Sales [former Plaintiff] motions the Court for Judgment as a Matter of Law or for a New Trial [Civil Action Case No. 1-10 CV 2343 - DOC #71 and DOC #71-1].

**82.** Some point after trial ended, Source began using its updated and latest logo along with its business as seen below:



**83.** On March 13, 2012, after trial ended, the USPTO accepted and processed the revised application submitted by Defendant's [former Plaintiff] counsel and registered the trademark. As shown in the illustrated drawing below and on the Defendant's official USPTO Registration Certificate No. 4111084 seen as **Exhibit S** and on the USPTO Trademark Status and Document Retrieval ("TSDR") in **Exhibit U**. **NOTE:** The description of the illustrated drawing or logo for the **federal** trademark is only for: **The mark consists of the letter "A" stylized with a swirl around the letter "A"    NOTE: The words All Metal Sales, Inc. are not below the letter "A" on the USPTO Certificate (Exhibit S), nor the USPTO TSDR (Exhibit T)**. See visual illustration drawing of the registered mark in black and white:



**84.** On April 9, 2012 and then later corrected on May 18, 2012 due to clerical and/or typographical party reference errors, Northern District of Ohio Court Judge Memorandum

Opinion and Order (Corrected) for Civil Action Case No. 1-10 CV 2343 - ECF#76 seen as **Exhibit U**, denied All Metal Sales' Renewed Motion For Judgment As A Matter of Law or for a New Trial on trademark lawsuit. The Northern District of Ohio Court Judge Donald C. Nugent's Memorandum Opinion and Order stated:

## STANDARD OF REVIEW

"**Fed. R. Civ. P. 50(b) provides that if a court does not grant a motion for judgment as a matter of law made after the close of all the evidence and the party renews its request after a verdict is returned, the court may (1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of judgment as a matter of law. The "standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion." Wright & Miller, Federal Practice and Procedure: Civil 2d § 2537, p. 347 (footnote omitted)."**

**That is, judgment as a matter of law may be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); see also Fed.Civ. R.50(b). "The Court is not free to weigh the parties' evidence or to pass upon the credibility of witnesses. Nor may the Court substitute its own judgment for that of the jury... When the evidence would permit reasonable minds to differ on the issues decided, a motion for judgment as a matter of law must be denied. In short, every effort must be made to uphold the verdict**

if reasonably possible." *In re Scrap Metal Antitrust Litigation*, No. 1:02 CV 0844, 2006 WL 2850453, at *8 (N.D. Ohio Sept. 30, 2006).

The application of Fed. Civ. R.59 is similarly limited, and does not permit a court to set aside a jury verdict "simply because different inferences and conclusions could have been drawn or because some other results are more reasonable." *J.C. Wyckoff & Assoc., v. Standard Fire Insurance Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). Under Fed. R. Civ. P. 59(a), "a new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States..."

When reviewing a motion for a new trial, a court "should indulge all presumptions in favor of the validity of the jury's verdict." *Brooks v. Toyotomi Co.*, 86 F.3d 582, 588 (6th Cir. 1996) (citation *Ragner Benson, Inc. v. Kassab*, 325 F.2d 591, 594 (3rd Cir. 1963)). A jury verdict must be upheld so long as there is any competent and substantial evidence in the record to support it, even if contradictory evidence was presented. *Green v. Francis*, 705 F.2d 846, 849 (6th Cir. 1983).

Nevertheless, on a motion for new trial, as contrasted with a motion for judgment as a matter of law, the judge may set aside the verdict even though there exists substantial evidence to support it. *McDonald v. Petree*, 409 F.3d 724 (6th Cir. 2005). However, the district court "should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result." *Brooks v. Toyotomi Co.*, 86 F.3d 588. The Sixth

Circuit has explained that a "seriously erroneous result" would be evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion *i.e.*, the proceedings having been influenced by prejudice or bias. *Holmes v. City of Massillon*, 78 F.3d 1041 (6th Cir. 1996).

Moreover, procedural errors, such as a mistake regarding the admission or exclusion of evidence or an error made in instructing the jury, cannot be the basis for ordering a new trial unless the error affects a substantial right of a party. See Fed. R. Civ. P. 61. Thus, a motion for a new trial will not be granted unless the moving party suffered prejudice. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004) (citing *Erskine v. Consol. Rail Corp.*, 814 F.2d 266, 272 (6th Cir. 1987)) (holding that a new trial will not be granted on the ground that surprise evidence was admitted unless the moving party was prejudiced). Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial. *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 514 (6th Cir. 1998).

## DISCUSSION

The basis of Plaintiff's motion is that the twelve member jury erred in answering all ten interrogatories because based on the evidence offered at trial, reasonable minds could only conclude that each one of those interrogatories should have been answered in Plaintiff's favor. Plaintiff notes various testimony or documents which "dispositively" establish that its ALL

METAL mark has secondary meaning and that there was a likelihood of confusion. While the evidence referred to by Plaintiff [All Metal Sales] could certainly provide an inference of secondary meaning and/or likelihood of confusion, it was by no means dispositive in a legal sense. Further, the Defendant [Source] introduced witnesses and documents which supported Defendant's position on those questions. After carefully reviewing the record, filings and briefs, the Court concludes that the evidence would permit reasonable minds to differ on the issues decided. The court must not and will not weigh the evidence would permit reasonable minds to differ on the issues decided. The Court must not and will not weigh the evidence or make credibility determinations. The jury did that and its decisions were reasonably supported by the evidence. Accordingly, a motion for judgment as a matter of law must be denied.

Similarly, with respect to All Metal Sales' half hearted alternative request for a new trial, the Court decided, "this Court will 'indulge all presumptions in favor of the validity of the jury's verdict.'" *Brooks v. Toyotomi Co.*, 86 F.3d 582, 588 (6th Cir. 1996) (citation omitted) and uphold the jury's verdict so long as there is any competent and substantial evidence in the record to support it, even if contradictory evidence was presented. See *Green v. Francis*, 705 F.2d 846, 849 (6th Cir. 1983). Based upon review of the trial transcript, evidence and filings, the Court does not find that the Answers to Interrogatories were "seriously erroneous." That is the answers were not against the weight of the evidence and there was no showing that trial was unfair to [former] Plaintiff or that the answers were influenced by prejudice

or bias. *Holmes v. City of Massillon*, 78 F.3d 1041 (6th Cir. 1996). As such, Plaintiff's motion for a new trial is denied."

## CONCLUSION

For the reasons set forth above, Plaintiff's Renewed Motion for Judgment as a Matter of Law or, for a New Trial (ECF #71) is denied.

IT IS SO ORDERED."

85.     Mark Quasar ("Mark") is the son of Paul Quasar ("Paul"), a close and personal friend of Senior and a long-time acquaintance of Jessica. David B. Cupar ("Cupar") was one of Defendants [former Plaintiff] counsel in Civil Action Case No. 1-10 CV 2343 litigation against Jessica. Cupar and Mark were coaches on their own son's soccer team. In the summer of 2012, one day at their son's sports game, **after** the trademark case ended in favor of Source [former Defendant], Cupar, openly admitted that he had advised his client, Junior, that All Metal Sales had no case against Jessica in the Trademark Case No. 1:10 CV 2343 and that it was a ridiculous suit to pursue. He [Cupar] only continued pursuing the lawsuit because his client told him to continue. Mark told his father about this conversation he had Cupar. Paul told Senior about the conversation and the topic of discussion, who then forwarded this information to Jessica. Jessica later confirmed this incident. Mark Quasar will testify at trial with regards to this incident.

86.     Plaintiff Source has lost business and revenue due to Defendant Junior's business deliberate efforts to ensure Source would continue spending its income on the cost of litigating.

87.     Plaintiff Source has lost business and revenue due to Defendants deliberate efforts to trade upon the goodwill of Source and capture Source's upcoming business.

**88.**     Plaintiffs pray that Plaintiffs will be awarded reasonable attorneys fees under 15

U.S.C. § 1117(a) for having to defend against Defendant All Metal Sales' oppressive action in

Civil Action Case No. 1-10 CV 2343.

**89.**     Punitive damages can be awarded in Ohio where unfair competition claims are

premised on malicious litigation and there is evidence of actual malice, fraud, oppression, or

insult. *The American Chemical Society v. Leadscope, Inc.*, 10th Dist. No. 08AP-1026, 2010 Ohio

02725 Paragraph 86.     In this case, unfair competition, including intentional and malicious

conduct was alleged, including specific facts in support of those allegations.  Clarifying A Metal

Source's intent to seek punitive damages promotes justice by promoting clarity.

<u>**COUNT ONE – ABUSE OF PROCESS**</u>

**90.**     Plaintiffs Source and Jessica incorporate by reference all allegations in all

preceding paragraphs of this Complaint as if fully rewritten herein.

**91.**     When it learned that a potential customer had contacted Plaintiff Source [former

Defendant] by mistake, Defendant [former Plaintiff] All Metal Sales sent a cease and desist letter

and then proceeded to file suit to enjoin alleged violations of the Lanham Act, the Ohio

Deceptive Trade Practices Act, and state common law unfair competition claims.

**92.**     Defendant All Metal Sales [former Plaintiff] had taken one instance or mistake by

a single customer which did not result in Defendant All Metal Sales losing a sale to Plaintiff

Source [former Defendant] and used it as an opportunity to saddle a new competitor with the

costs of defending a federal lawsuit.  Defendants Junior and All Metal Sales determined to use

the action to try and destroy Plaintiff's business by diverting the time and resources of Plaintiffs

Jessica and A Metal Source and forcing Plaintiffs to compete while uncertain of its ability to use

the name and reputation it was building with its customers and suppliers.

**93.** Defendant [former Plaintiff] All Metal Sales had filed his action in Civil Action Case No. 1-10 CV 2343 to use the Courts in an attempt to accomplish an ulterior motive for which it was not designed.

**94.** Defendants Junior and All Metal Sales real intent was to destroy Plaintiff's ability to succeed as a new business in competition with Defendant All Metal Sales as well as take ownership of Plaintiff Source's intellectual trademark property, websites, along with other business registrations of ownership of Source.

**95.** Defendant's real intent was to gain access to Plaintiff's [former Defendant] business customer records with confidential information, pricing strategy and amongst other things, Plaintiff Source's trade secrets. This allowing for Defendant [former Plaintiff] to have leverage over Plaintiff [former Defendant] on products sold in the market place.

**96.** Defendant's real intent was to have Plaintiff financially responsible for damages that did not exist.

**97.** Plaintiffs Source and Jessica have suffered damages in connection with Defendant's wrongful use of process and the legal system in an amount greater than $86,000.00

**98.** The termination of the prior proceeding, Civil Action Case No. 1-10 CV 2343, was in Plaintiff's [former Defendant] A Metal Source, LLC's favor (formerly known as All Metal Source, LLC).

**99.** In order to establish a claim of abuse of process, the three elements of abuse of process under Ohio law include: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A., 68 Ohio St.3d 294, 1994-Ohio-503,626 N.E.2d 115

**100.**    In an abuse of process case, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Prosser & Keeton on Torts, (5 Ed. 1984), 898, Section 121.  Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order.

**101.**    We believe that reasonable minds could conclude that Defendants Junior and All Metal Sales instituted its trademark lawsuit Civil Action Case No. 1-10 CV 2343 with the intention to use it as a club to destroy Plaintiff's business.

## COUNT TWO – UNFAIR COMPETITION

**102.**    Plaintiffs Source and Jessica incorporate by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

**103.**    Defendant Junior through his company All Metal Sales pursued costly litigation in Civil Action Case No. 1-10 CV 2343 over one instance of alleged confusion which did not result in All Metal Sales losing an opportunity to make its bid.  Defendant All Metal Sales has not sought to challenge other metal distributor's use of the phrase "all metal".   Junior's and All Metal Sales' purpose in pursuing the trademark litigation was not the protection of a widely used phrase describing Plaintiff and Defendant's business.   Rather, Junior's and All Metal Sales' pursuit of that litigation, using its more established financial resources and the Court, was for the purpose of destroying Source, an emerging competitor.

**104.**    The number of customer confusion was not ten, twenty, fifty, one-hundred, or hundreds, nor thousands.  The count was one single instance.  This single instance gave Junior the spark to launch a new lawsuit.  "each must be weighed in light of the total evidence presented

at trial." *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, (6th Cir. 1982).

**105.** Defendants All Metal Sales' and Junior's actions in Civil Action Case No. 1-10 CV 2343 amount to malicious litigation and are not consistent with fair competition.

**106.** Defendants All Metal Sales' and Junior's actions have caused substantial commercial injury to Plaintiffs Source and Jessica.

**107.** As a direct and proximate result of Defendants All Metal Sales' and Junior's unfair competition under Ohio common law, Plaintiffs Source and Jessica have suffered damages in an amount exceeding $25,000.00.

**108.** Defendants All Metal Sales' and Junior's deceptive and infringing acts are unfair competition in violation of the common law of Ohio.

**109.** As a direct and proximate result of Defendants All Metal Sales' and Junior's unfair competition, Plaintiffs Source and Jessica have suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## COUNT THREE – UNJUST ENRICHMENT
*Ohio Trade Practices, Ohio Revised Code § 1333.63*

**110.** Plaintiffs Source and Jessica incorporate by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

**111.** Through its deceptive and infringing conduct, Defendants All Metal Sales and Junior have obtained benefits, including sales and goodwill, that rightfully belong to Source and Jessica.

**112.** Defendants All Metal Sales and Junior have not compensated Source or Jessica for the benefits that All Metal Sales and Junior wrongfully obtained, despite justice and equity requiring it to do so.

**113.** Defendants All Metal Sales and Junior have unjustly enriched themselves by obtaining and retaining the ill-gotten benefit of their deceptive conduct.

**114.** Defendant All Metal Sales' and Junior's receipt of the benefits of its deceptive acts is unjust enrichment.

**115.** As a direct and proximate result of All Metal Sales' and Junior's unjust enrichment, Plaintiffs Source and Jessica have suffered damages in an amount exceeding $15,000.00

**116.** As a direct and proximate result of Defendants All Metal Sales' and Junior's unjust enrichment, Plaintiffs Source and Jessica have suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

### COUNT FOUR – FRIVOLOUS CONDUCT
*Ohio Revised Code § 2323.51(A)(1)(a) and (2)(a)*

**117.** Source and Jessica incorporate by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

**118.** When it learned that a potential customer had contacted Plaintiff Source [former Defendant] by mistake, Defendant [former Plaintiff] All Metal Sales sent a cease and desist letter and then proceeded to file suit to enjoin alleged violations of the Lanham Act, the Ohio Deceptive Trade Practices Act, and state common law unfair competition claims.

**119.** Defendant All Metal Sales had taken one instance or mistake by a single customer which did not result in Defendant All Metal Sales [former Plaintiff] losing a sale to Plaintiff Source [former Defendant] and used it as an opportunity to saddle a new competitor with the costs of defending a federal lawsuit. Defendants Junior and All Metal Sales determined to use the action to try and destroy Plaintiff's business by diverting the time and resources of Plaintiffs Jessica and A Metal Source and forcing Plaintiffs to compete while uncertain of its ability to use the name and reputation it was building with its customers and suppliers.

**120.** The number of customer confusion was not ten, twenty, fifty, one-hundred, or hundreds, nor thousands. The count was one single instance. This single instance gave Junior the spark to launch a new lawsuit. "each must be weighed in light of the total evidence presented at trial." *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, (6th Cir. 1982).

**121.** Defendant Junior through his company All Metal Sales pursued costly litigation in Civil Action Case No. 1-10 CV 2343 over one instance of alleged confusion which did not result in All Metal Sales losing an opportunity to make its bid. Defendant All Metal Sales has not sought to challenge other metal distributor's use of the phrase "all metal". Junior's and All Metal Sales' purpose in pursuing the trademark litigation was not the protection of a widely used phrase describing Plaintiff and Defendant's business. Rather, Junior's and All Metal Sales' pursuit of that litigation, using its more established financial resources and the Court, was for the purpose of destroying Source, an emerging competitor.

**122.** Defendants All Metal Sales' and Junior's actions in Civil Action Case No. 1-10 CV 2343 amount to malicious litigation and is frivolous conduct.

**123.** Defendant [former Plaintiff] All Metal Sales had filed his action in Civil Action Case No. 1-10 CV 2343 to use the Courts in an attempt to accomplish an ulterior motive for which it was not designed.

**124.** Defendant Junior specifically told his father Senior that he will do whatever it takes as well as spend the necessary finances to ensure Plaintiffs Jessica and her business, Source, will never make it in business.

**125.** Plaintiffs Source and Jessica have suffered damages in connection with Defendant's wrongful use of process and the legal system in Civil Action Case No. 1-10 CV 2343 in an amount greater than $86,000.00

**126.** The frivolous conduct claim pursuant to O.R.C. § *2323.51(A)(1)(a) and (2)(a)* states in pertinent part:

"(A) As used in this section:

(1) "Conduct" means any of the following:

(a) The filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action;

\*\*\*

(2) "Frivolous conduct" means either of the following:

(a) Conduct of an inmate or other party to a civil action, of an inmate who has filed an appeal of the type described in division (A)(1)(b) of this section, or of the inmate's or other party's counsel of record that satisfies any of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

**127.** It is obvious from the trial evidence and trial testimony of witnesses in Civil Action Case No. 1-10 CV 2343 and exhibits introduced within this new Complaint that Defendant Junior definitely wanted to destroy Plaintiff Jessica and her business at any cost possible and with the use of the Courts.

**128.** As a direct and proximate result of Defendants All Metal Sales' and Junior's frivolous conduct in Civil Action Case No. 1-10 CV 2343, Source and Jessica have suffered damages in an amount exceeding $15,000.00

**129.** As a direct and proximate result of Defendants All Metal Sales' and Junior's frivolous conduct in Civil Action Case No. 1-10 CV 2343, Plaintiffs Source and Jessica have suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## COUNT FIVE – VEXATIOUS CONDUCT
### *Ohio Revised Code § 2323.52(A)(2) and (3)*

**130.** Plaintiffs Source and Jessica incorporate by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

**131.** When it learned that a potential customer had contacted Plaintiff Source [former Defendant] by mistake, Defendant [former Plaintiff] All Metal Sales sent a cease and desist letter and then proceeded to file suit to enjoin alleged violations of the Lanham Act, the Ohio Deceptive Trade Practices Act, and state common law unfair competition claims.

**132.** Defendant All Metal Sales had taken one instance or mistake by a single customer which did not result in Defendant All Metal Sales [former Plaintiff] losing a sale to Plaintiff Source [former Defendant] and used it as an opportunity to saddle a new competitor with the costs of defending a federal lawsuit. Defendants Junior and All Metal Sales determined to use the action to try and destroy Plaintiff's business by diverting the time and resources of Plaintiffs

**138.** Defendant Junior specifically told his father Senior that he will do whatever it takes as well as spend the necessary finances to ensure Plaintiffs Jessica and her business, Source, will never make it in business.

**139.** Plaintiffs Source and Jessica have suffered damages in connection with Defendant's wrongful use of process and the legal system in Civil Action Case No. 1-10 CV 2343 in an amount greater than $86,000.00

**140.** The vexatious conduct claim pursuant to O.R.C. § *2323.52(A)(2) and (3)* states in pertinent part:

"(A) As used in this section:

\*\*\*

(2) "Vexatious conduct" means conduct of a party in a civil action that satisfies any of the following:

(a) The conduct obviously serves merely to harass or maliciously injure another party to the civil action.

(b) The conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

\*\*\*

(3) "Vexatious litigator" means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether\*\*\* in a court of common pleas, municipal court\*\*\*, the person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions.\*\*\*"

**141.** It is obvious from the trial evidence and trial testimony of witnesses in Civil Action Case No. 1-10 CV 2343 and exhibits introduced within this new Complaint, that Junior definitely wanted to destroy Jessica and her business at any cost possible and with the use of the Courts.

**142.** As a direct and proximate result of All Metal Sales' and Junior's vexatious conduct in Civil Action Case No. 1-10 CV 2343, Source and Jessica have suffered damages in an amount exceeding $15,000.00

**143.** As a direct and proximate result of All Metal Sales' and Junior's vexatious conduct, Source and Jessica have suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Source prays for judgment against All Metal Sales as follows:

1. Compensatory damages in excess of $15,000.00, with the exact amount to be determined at trial, plus interest in this action.

2. Pain and suffering in this action.

3. Loss of income in this action.

4. Emotional Distress in this action.

5. Attorneys' fees in this action.

6. Treble damages in this action.

7. Costs and disbursements in this action.

8. For punitive damages in this action.

9. Compensatory damages in excess of $86,000.00, with the exact amount to be determined at trial, plus interest in defending against Civil Action Case No. 1-10 CV 2343.

10. Pain and suffering incurred in defending against Civil Action Case No. 1-10 CV 2343.

11. Loss of income in this action incurred in defending against Civil Action Case No. 1-10 CV 2343.

12. Emotional Distress in this action incurred in defending against Civil Action Case No. 1-10 CV 2343.

13. Attorneys' fees incurred in defending against Civil Action Case No. 1-10 CV 2343.

14. Treble damages incurred in defending against Civil Action Case No. 1-10 CV 2343.

15. Costs and disbursements incurred in defending against Civil Action Case No. 1-10 CV 2343.

16. For punitive damages incurred in defending against Civil Action Case No. 1-10 CV 2343 as may be assessed by the jury.

17. An order that All Metal Sales account to Source for any and all profits derived by All Metal Sales by reason of All Metal Sales' acts as complained of herein.

18. Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

19. Any further relief as allowed by law or equity that the Court deems to be appropriate.

20. Plaintiff hereby demands a trial by jury.

Dated: January 4, 2013

Respectfully Submitted,
s/ Jessica Esparza
Jessica Esparza, PRO SE

Authorized    Agent    for    *Jessica    Esparza*
Authorized Agent for *A METAL SOURCE, LLC*
(f/k/a  *All Metal Source, LLC*)

*A METAL SOURCE, LLC*
25935 Detroit Road, #321
Cleveland, OH  44145
P: 216.920.5020
F: 888.539.5281
Jessica@AMetalSource.com

and

Jessica Esparza
25935 Detroit Road, #321
Cleveland, OH  44145
P: 216.920.5020
F: 888.539.5281
Jessica@AMetalSource.com

## JURY DEMAND

Plaintiffs Jessica Esparza and A Metal Source, LLC hereby demand a jury trial for all

issues so triable.

Respectfully Requesting,
s/ Jessica Esparza
Jessica Esparza, PRO SE
Authorized Agent for *Jessica Esparza*
Authorized Agent for *A METAL SOURCE, LLC*
(f/k/a  *All Metal Source, LLC*)

# PLAINTIFF'S

# EXHIBITS

# TABLE OF CONTENTS FOR PLAINTIFF'S EXHIBITS

| Plaintiff's Exhibit No. | Description of Plaintiff's Exhibits |
|---|---|
| A | All Metal Sales, Inc.'s Articles of Incorporation with the State of Ohio in 1999 |
| B | Source's Articles of Incorporation with the State of Ohio in 2009 |
| C | ThomasNet's Directory Search Results of company names "All Metal" |
| D | Secretary of State of Ohio Search Results of company names "All Metal" |
| E | All Metal Sales, Inc.'s Letter of Cease and Desist on 9/2010 |
| F | Senior's Witness Testimony at Trial in Civil Action Case No. 1-10 CV 2343 given on 1/5/2012 |
| G | Source's Amendment of Articles of Incorporation as of 10/2010 |
| H | Cleaire Advanced Emission Controls, LLC USPTO Registration Record for "ALLMETAL" |
| I | Tour & Andersson Aktiebolag Corp. USPTO Registration Record for "AMETAL" |
| J | USPTO Original Application for All Metal Sales, Inc. |
| K | All Metal Sales, Inc.'s Trademark Certificate & Application with the State of Ohio as of 2/24/2011 |
| L | All Metal Sales, Inc.'s Service Mark Certificate & Application with the State of Ohio as of 2/24/2011 |
| M | Deposition of Thomas G. Klocker ("Junior") taken on 8/30/2011 |
| N | Source's State of Ohio Trademark Certificate as of 10/24/2011 |
| O | Source's State of Ohio Service Mark Certificate as of 10/24/2011 |
| P | Source's USPTO Service Mark Certificate as of 10/25/2011 |
| Q | Personal Deposition of Thomas P. Klocker ("Senior") submitted on 12/22/2011 |
| R | Judge Donald C. Nugent's Judgment in favor of Source (formerly the Defendant - Jessica) in Civil Action Case No. 1-10 CV 2343 - ECF #67 on 1/9/2012 |
| S | All Metal Sales' USPTO Trademark Certificate as of 3/11/2012 |

| | | |
|---|---|---|
| T | | USPTO Trademark Status and Document Retrieval (TSDR) for All Metal Sales, Inc. |
| | | |
| U | | Judge Donald C. Nugent's Memorandum Opinion and Order (Corrected)in Civil Action Case No. 1-10 CV 2343 - ECF #76 on 5/18/2012 denying All Metal Sales, Inc.'s Motion for Judgment as a Matter of Law or for a New Trial |



**J. Kenneth Blackwell**
**Secretary of State**
**State of Ohio**

**September 2, 1999**                    DIN#:  **199919500703**

PATTRICK R. ROCCO
25000 EUCLID AVE
EUCLID, OH 441170000

**Re: ALL METAL SALES, INC.**

Dear Customer:

The enclosed document (s) is being returned for the following reason (s) :

**The articles must indicate the city in which the corporation is to be located.**
**(O.R.C. 1701.04 (A) (2), 1702.04 (A) (2))**

**\*\*Please submit corrected documents to:  Secretary of State, P.O. Box 818,**
**Columbus, Ohio 43216\*\***

To ensure proper processing of your filing, **return this letter.**
- **Return the corrected documents and the entire filing**
- Your filing has been credited in the amount of **$85.00**

Completed documents must be returned within 30 days or a refund will be
issued.

If you have any questions regarding this matter, please feel free to contact this
office at (614) 466-3910, toll free 1-877-SOS-FILE.  Thank you.

SoS/jrw
      30 E. Broad Street, 14th Floor, Columbus, Ohio 43266-0418


EXHIBIT
A

# PROCEEDINGS OF THE INCORPORATORS

On the _____ day of _____ 19____

the persons named below as subscribers to the articles of incorporation, desiring for themselves, their associates, successors and assigns, to become a body corporate, in accordance with the general corporation laws of the State of Ohio, under the name and style of

### ALL METAL SALES, INC.
(Name of Corporation)

and with all the corporate rights, powers, privileges and liabilities enjoyed under or imposed by such laws, did subscribe and acknowledge, as required by law, articles of incorporation, which articles, together with

the certificate of acknowledgment, were, on the _____ day of _____

19____, duly filed in the office of the Secretary of State, at Columbus, Ohio, and by him recorded, and a certified copy thereof, of which the following is a true and correct copy, by him furnished to said subscribers:

Filed _____

Corporation No. _____

# Articles of Incorporation

(Under Chapter 1701 of the Ohio Revised Code)
Profit Corporation

The undersigned, desiring to form a corporation, for profit, under Sections 1701.01 et seq. of the Ohio Revised Code, do hereby state the following:

FIRST.  The name of said corporation shall be _All Metal Sales, Inc._

_____

SECOND.  The place in the State of Ohio where its principal office is to be located is _____

_____Lakewood_____ in _____Cuyahoga_____County.
(City, Village or Township)

THIRD.  The purpose or purposes for which it is formed are:

(1)    To sell and distribute metal including but not limited to stainless steel, brass, copper, aluminium, titanium, and nickel alloys to the aerospace, automotive, chemical processing, sporting goods and medical industries worldwide, and in general, any and all other things necessary and incidental to the conduct of said business enterprise.

## PROCEEDINGS OF THE INCORPORATORS

(2)     To engage in any business, related or unrelated, to that described in Paragraph (1) above of the Article Third, from time to time authorized or approved by the Board of Directors of this Corporation, to carry on any other trade or business which can, in the opinion of the Board of Directors of the company, be advantageously carried on in connection with or auxiliary to those described in Paragraph (1) of this Article Third, and to do all such things as are incidental or conducive to the attainment of the above objects or any of them.

(3)     To enter into any lawful arrangements for sharing profits and/or losses in any transaction or transactions, and to promote and organize other corporations.

(4)     To engage in any lawful act or activity authorized by Section 1701.01 to Section 1701.98 inclusive of the Ohio Revised Code, and to have and to exercise all rights and powers that are now or hereafter granted to a corporation by law.

(5)     To buy, sell, handle and deal in tangible personal property of any and every kind or nature whatsoever without limit as to description, locality and nature.

(6)     To manage, produce, purchase or otherwise acquire, own, hold, mortgage, pledge, hire, lease, transfer or in any manner handle, dispose of, or deal in personal property of any and every class and description, tangible or intangible.

(7)     To borrow money without limit as to amount and to issue, sell, or pledge bonds, promissory notes, bills of exchange, or other obligations and evidences of indebtedness, payable at a specified time or times, or payable upon the happening of a specified event or events, whether secured by mortgage, pledge, deed of trust or otherwise.

(8)     To purchase, acquire, guarantee, hold, and dispose of the shares, bonds, and other evidences of indebtedness or contracts of any corporation.

## PROCEEDINGS OF THE INCORPORATORS

(9)    To enter into, make, perform and carry out contracts of every kind and any kind, for any lawful purposes, without limit as to amount with any persons, firms, associations, corporations or government bodies, agencies or sub-divisions.

(10)    To carry one, acquire, or undertake any business or undertaking, which the company may deem convenient or desirable.

(11)    To do any or all of the things hereinabove set forth, and in addition, to do such other things as are necessary, convenient or incidental hereto, to the same extent as natural persons might or could do, and in any part of the world, without restriction as to place or amounts, as principals, agents, contractors or otherwise, alone or in the company of others.

(12)    It is the purpose that each of the purposes, objects, and powers specified by the foregoing clauses of this Article Third shall be regarded as an independent purpose, object and power; and that none of the foregoing clauses or the objects therein specified or the powers thereby conferred cause, object or power above specified or referred to.

## PROCEEDINGS OF THE INCORPORATORS

FOURTH.   The number of shares which the corporation is authorized to have outstanding is _____

_Seven Hundred Fifty (750) common shares, no par value_

(Please state whether shares are common or preferred, and their par value. Shares will be recorded as common with no par value unless otherwise indicated.)

IN WITNESS WHEREOF, we have hereunto subscribed our names, this _____ 3rd _____ day of _____ June _____, 19 _99_ .

By: _____ , Incorporator
Patrick R. Racco

By: _____ , Incorporator
Susan P. St. John

By: _____ , Incorporator

Print or type incorporators' names below their signatures.

### INSTRUCTIONS

1) Please see Section 111.16(A) of the Ohio Revised Code or contact the Secretary of State's Office (614-466-3910) to determine the correct fee. Please make checks payable to the Secretary of State of Ohio.

2) Articles will be returned unless accompanied by an Original Appointment of Statutory Agent. Please see Section 1701.07 of the Ohio Revised Code.

UNITED STATES OF AMERICA, STATE OF OHIO, OFFICE OF THE SECRETARY OF STATE.

I, _____ , Secretary of State of the State of Ohio, do hereby certify that the foregoing is an exemplified copy, carefully compared by me with the original record now in my official custody as Secretary of State, and found to be true and correct, of the Articles of Incorporation of _____

(Name of Corporation)

filed in this office on the_____ day of_____19_____ , and re-corded on Roll_____ Frame_____, of the Record of Incorporations.

Witness my hand and official seal at Columbus, this _____ day of _____ 19_____ .

(SEAL)

_____
Secretary of State

# Original Appointment of Statutory Agent

## Ohio Corporation

_____

| |
|---|
| Charter No. _____ |
| Approved _____ |
| Date _____ |
| Fee _____ |

The undersigned, being at least a majority of the incorporators of_____

**ALL METAL SALES, INC.** _____, hereby appoint
(Name of Corporation)

_____Thomas G. Klocker, Jr._____
(Name of Agent)

to be statutory agent upon whom any process, notice or demand required or permitted by statute to be served upon the corporation may be served.

Complete address of the agent is: _____900 Beach_____
(Street)

_____Lakewood, OH  44107_____
(City or Village)

_____Cuyahoga_____ County, Ohio  44107
(Zip Code)

Date: _6-3-99_

Patrick R. Roach (Incorporator)

Susan P. St. John (Incorporator)

_____
(Incorporator)

(Incorporator names should be typed or printed beneath signatures)

### Acceptance of Appointment

The undersigned, _____Thomas G. Klocker, Jr._____ , named herein as the statutory agent

for _____All Metal Sales, Inc._____ , hereby acknowledges and accepts
(name of corporation)

the appointment of statutory agent for said corporation.

Thomas G. Klocker, Jr.
**Statutory Agent**
Thomas G. Klocker, Jr.

**Instructions**

1)  Profit and non-profit articles of incorporation must be accompanied by an original appointment of agent. R.C. 1701.04(C), 1702.04(C).
2)  The statutory agent for a corporation may be (a) a natural person who is a resident of Ohio, or (b) an Ohio corporation or a foreign profit corporation licensed in Ohio which has a business address in this state and is explicitly authorized by its articles of incorporation to act as a statutory agent. R.C. 1701.07(A), 1702.06(A).
3)  The agent's complete street address must be given: a post office box number is not acceptable. R.C. 1701.07(C), 1702.06(C).
4)  An original appointment of agent form must be signed by at least a majority of the incorporators of the corporation. R.C. 1701.07(B), 1702.06(B).

*Patrick R. Rocco*

*Attorney at Law*

*25000 Euclid Avenue*

*Euclid, Ohio 44117*

---

*Office: (216) 289-4500*

*Fax: (216) 289-4546*

September 9, 1999

New Corporation Division
Secretary of State of Ohio
P. O. Box 818
Columbus, OH 43216

Re:    All Metal Sales, Inc.

Gentlemen:

I am enclosing the corrected Articles of Incorporation prepared for a newly formed corporation, All Metal Sales, Inc. along with your letter to me dated September 2, 1999. We have corrected the documents to include the city in which the corporation is to be located. As noted in your correspondence, you are holding the filing fee of $85.00, which was previously sent.

I would ask your cooperation in processing this new corporation and returning to my office the Articles of Incorporation after they have been approved.

I thank you for your assistance in this matter.

Very truly yours,

Patrick R. Rocco

/sps
Enclosures

| | DATE | DOCUMENT NO | DESCRIPTION | | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 10/29/1999 | 199919500703 | ARF | DOMESTIC ARTICLES/FOR PROFIT | 85.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | TOTAL | 85.00 | 0.00 | 0.00 | 0.00 | 0.00 |

**Return To:**
**PATRICK R. ROCCO**
**25000 EUCLID AVE**
**EUCLID, OH 44117-0000**

-----------------------------------------cut along the dotted line------------------------------------------



# *The State of Ohio*
## 🏵️ *Certificate* 🏵️

### *Secretary of State - J. Kenneth Blackwell*

### *1110598*

*It is hereby certified that the Secretary of State of Ohio has custody of the business records for ALL METAL SALES, INC. and that said business records show the filing and recording of:*

Document(s)
*DOMESTIC ARTICLES/FOR PROFIT*

Document No(s):
199919500703

United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of the Secretary
of State at Columbus, Ohio, This 13th day of
September, A.D. 1999

*J Kenneth Blackwell*

J. Kenneth Blackwell
Secretary of State

| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|
| 11/10/2009 | 200931302250 | ARTICLES OF ORGNZTN/DOM. PROFIT LIM.LIAB. CO. (LCP) | 125.00 | .00 | .00 | .00 | .00 |

### Receipt
This is not a bill. Please do not remit payment.

JESSICA ESPARZA
25935 DETROIT ROAD
CLEVELAND, OH 44145

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, Jennifer Brunner

**1894781**

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**ALL METAL SOURCE, LLC**

and, that said business records show the filing and recording of:

Document(s)                                                        Document No(s):

**ARTICLES OF ORGNZTN/DOM. PROFIT LIM.LIAB. CO.**        **200931302250**



Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 9th day of November,
A.D. 2009.

United States of America
State of Ohio
Office of the Secretary of State

Ohio Secretary of State

EXHIBIT B



## All metal Company Names

Displaying 1 to 25 out of 63 results

Sort by: | relevance | A-Z  Z-A

Go to page: | 1 | 2   3   Next >

**All Metal - Calgary, AB**
Manufacturer
Manufacturer Offering Equipment Manufacturing, Machining & Welding.

**All Metal, Inc. - Toccoa, GA**
Manufacturer, Custom Manufacturer, Service Company
Manufacturer Of Textile Machine Parts; Repairing Service

**All Metal Sales, Inc. - Cleveland, OH**
Distributor, Custom Manufacturer, Service Company
Stocking distributor of titanium, nickel alloys, stainless steel, & aircraft alloys along with other more common materials. Specializing in service to the aerospace, defense,
nuclear & petrochemical industries. Stock tube, sheet, plate, bar & foil in many sizes, types & forms from prototype to mill...
www.allmetalsalesinc.com

Capabilities

**All Metal Designs, Inc. - Holland, MI**
Manufacturer
Manufacturer Of " Operator Adustable" Workstations and Accessories

**All Metal Buildings, Inc. - Wolcott, CT**
Distributor
Metal Buildings

**All Metal Design - Longwood, FL**
Manufacturer, Custom Manufacturer
Manufacturer & Service Company Offering Metal Design & Fabrication Services.

**All Metal Fabrication - Miami, FL**
Custom Manufacturer, Service Company
Sheet Metal Work Service

**All Metal Fabrication, Inc. - Vallejo, CA**
Manufacturer
Manufacturer Of **All Metal** Fabrications

**All Metal Fabricators - Acton, MA**
Manufacturer, Custom Manufacturer, Service Company
Manufacturer Of Custom Metal Fabrications; Plasma Cutting Service

**All Metal Fabricators - Allen, TX**
Custom Manufacturer, Service Company
Manufacturer of steel fabrications; CNC machine work service

**All Metal Fabricators, Inc. - Lowell, NC**
Manufacturer, Custom Manufacturer
Manufacturer Of Fabricators; Sheet Metal & Machine Work Service

**All Metal Fabricators, Inc. - Seattle, WA**
Manufacturer, Custom Manufacturer, Service Company
Manufacturer of metal fabrications; Sheet metal work service

**All Metal Fence - North Highlands, CA**
Service Company
Fence Installation Services. Offers Core Drilling, Repair, Mobile Welding, Hole Drilling & Certified Pipe Welding On Chain Link & Iron Fences & Handrails.

**All Metal Polishing Co., Inc. - Newark, NJ**
Service Company
Plating, Polishing, Metal Finishing Service

**All Metal Recycling - Madison, WI**
Service Company



EXHIBIT C

9/13/2011

Scrap Metal Dealers

**All Metal Recycling, Inc. - Springfield, MO**
Service Company
Recycling Service

**All Metal Sales Corp - Great Neck, NY**
Distributor, Manufacturer, Custom Manufacturer, Service Company
2000LB Minimum. Inventory, JIT & Mill Direct Shipment Of Aluminum, Brass, Copper & Stainless Steel In Coil, Strip, Sheet, Tube, Bar, Plate, Rod, Busbar, Circles, Extrusions, Wire & Custom Metal Products To Customer Prints. Complete Finishing Services Available

**All Metal Specialties Inc. - Jamestown, NY**
Manufacturer, Custom Manufacturer
Metal Fabrications

**All Metal Stamping Inc. - Abbotsford, WI**
Manufacturer, Custom Manufacturer
Manufacturer of builders' hardware.

**All Metal Works - Kingston, WA**
Manufacturer, Custom Manufacturer
Manufacturer & custom manufacturer of metal products such as spacers, standoffs, shepherd game gambrels, & ornamental art products. Ornamental products include wine racks, pot-racks, commercial display racks, interior, & exterior railings. Capabilities include welding & fabrication. custom design...

**All Metal Fabrication Company - Glendale, AZ**
Manufacturer, Custom Manufacturer, Service Company
Metal Fabrication Services Including Design & Manufacture Of Custom Packaged For Power Generators, Pumping Units & Fuel Tanks.

**All Metal Machine & Tool Co. - Macedonia, OH**
Manufacturer, Custom Manufacturer, Service Company
CNC & General Machinery

**All Metal Welding & Fabrication, Inc. - Hinsdale, IL**
Custom Manufacturer, Service Company
Manufacturer of steel fabrications service

**All Metal Welding/Fabrication - Hinsdale, IL**
Manufacturer, Custom Manufacturer, Service Company
Structural Metal & Iron Fabricating, Arc & Friction Welding

**Apache All Metal Building - Jourdanton, TX**
Manufacturer, Service Company
Manufacturer Of Metal Buildings; Delivery Service

Sort by: | relevance | A-Z | Z-A

Go to page: | 1 | 2 | 3 | Next >

| Like us 📘 | Join us 🔲 | Follow us 📘

Home

**SiteMaps**
Categories
Featured Companies
Featured Categories

**Community**
Log In to MyThomas
Sign Up for MyThomas
Contact ThomasNet
Provide Feedback
Forums
Careers

**Additional Resources**
Guides
Resources
Press Room
Testimonials
FAQs

**Promote Your Business**
Free Listing
Advertising Services
Log In to Client Center

© 2011 Thomas Publishing Company. All rights reserved. See Terms and Conditions or Privacy Statement. Website Last Modified September 13, 2011.



## ıll metal Company Names

ıisplaying **26 to 50** out of 63 results

Sort by: relevance | A-Z   Z-A

**Go to page:** ‹ Prev   1 | 2 | 3   Next ›

**ilik-All Metal Treating - Gastonia, NC**
Service Company
Heat Treating Service

**Plate-All Metal Company - Akron, OH**
Service Company
Plating & metal finishing service

**lan/All Metal Technology - Hooksett, NH**
Manufacturer, Custom Manufacturer, Service Company
Precision Sheet Metal Fabricators

**Rohnert Park All Metal - Rohnert Park, CA**
Custom Manufacturer, Service Company
Production machining, steel fabrication & welding services for marine, 4x4, motorcycle & restaurant industry.

**All Metals Processing Co., Inc. - Stanton, CA**
Custom Manufacturer, Service Company
NADCAP certified metal finishing & inspection services. Finishing processes performed include anodizing, painting, dry film coating, powder coating & plating. Anodizing services such as chemical film treatment, chromic acid anodizing, sulfuric acid anodizing & hard anodizing are available....
allmetalsprocessing.rlrk.com/?scid=22045068 ... 

**All Metals Industries, Inc. - Locations**
Manufacturer
Metal service center for aluminum, carbon steel & stainless steel providing cutting, shaping, machining & finishing of steel sheets, blanks, coils, plates, bars & shapes. Aluminum alloys include 2024, 6061, 6063, 7075, 1100, 3003, 5005, 5052, 5083, 5086, 5454 & 5456 grades. Stainless steel includes...
www.allmetind.com 

**Treat All Metals, Inc. - Milwaukee, WI**
Custom Manufacturer, Service Company
ISO 9001:2008 certified metal heat treating services from -120 degrees F to +2200 degrees F temperature for parts up to 9 ft. Capabilities include hardening, gas carburizing, carbonitriding, nitriding, quenching, normalizing, annealing, straightening, shot blasting, sub zero treatment, stress...
www.treatallmetals.com 

**All Metals Engineering - Huntington Beach, CA**
Distributor, Manufacturer, Custom Manufacturer
Distributor Of Bars, Rods, Sheet, Plate, Strip, Pipe, Tubing, Forgings

**All Metals Fabricating Co., Inc. - Youngwood, PA**
Manufacturer, Custom Manufacturer
Manufacturer Of Metal Fabricators

**All Metals Fabricating, Inc. - Allen, TX**
Manufacturer, Custom Manufacturer, Service Company
Manufacturer of metal fabrications. Welding, precision sheet metal, laser cutting, machining, assembly & total turnkey service
Brand Names: Bystar, Bystronic

**All Metals Fabrication - Ogden, UT**
Manufacturer, Custom Manufacturer
Manufacturer & Service Company Offering Stainless Steel Design & Fabrication Services.

**All Metals Fabricators, Inc. - Wilmington, DE**
Manufacturer, Custom Manufacturer, Service Company
Manufacturer of precision, CNC machining service

**All Metals Incorporated - Adrian, MI**
Distributor
Steel service center.

**All Metals Incorporated - Adrian, MI**
Distributor
Distributor Of Steel, Aluminum, Stainless & Brass Products.

All Metals Processing Co. - Burbank, CA
Service Company
Magnetic Inspection Service

All Metals Supply,Inc. - Oroville, CA
Distributor
Distributor Of Ferrous & Non-Ferrous Metals, Plastic & Ind. Hardware

All-Metal Fabricators, Inc. - Cleveland, OH
Manufacturer, Custom Manufacturer, Service Company

All Metals & Forge Group, LLC - Fairfield, NJ
Distributor, Manufacturer, Custom Manufacturer
All Metals & Forge Group is your ISO9001:2008/AS9100 REV B/EN9100 Registered Forging Manufacturer and Steel Service Center. AMFG specializes in Specialty Steels, Alloy Steels, Carbon Steels, Aluminum Alloys, Stainless Steels (200,300,400,500 series), PH Grades, Nickel Alloys, Titanium Alloys, Tool...
www.steelforge.com pdf

All Metals Machine & Tool - Macedonia, OH
Custom Manufacturer, Service Company
Machine Work Service

All Metals Market East - Valley, NE
Distributor
Distributor Of Steel Service Centers

All Metals Service & Warehouse - Spartanburg, SC
Service Company
metal Slitting Service

All Metals Service & Warehousing - Cartersville, GA
Distributor, Service Company
Warehousing & Steel Service Centers

All-Metal Machine Specialties, Ltd. - Concord, ON
Manufacturer
Drum Brake Shoes Only; I.M. Disc Brakes

Southern All Metals Recycling, Inc. - Bay St. Louis, MS
Service Company
Recycling Service

All Metals Fabricators & Millwright Service - Elizabethton, TN
Custom Manufacturer, Service Company
CNC & Precision Machine Work, Welding Services

Sort by: | relevance | A-Z  Z-A

Go to page: ‹ Prev  1 | 2 | 3  Next ›

| Like us  | Join us  | Follow us 

| Home | SiteMaps | Community | Additional Resources | Promote Your Business |
|---|---|---|---|---|
| | Categories | Log in to MyThomas | Guides | Free Listing |
| | Featured Companies | Sign Up for MyThomas | Resources | Advertising Services |
| | Featured Categories | Contact ThomasNet | Press Room | Log In to Client Center |
| | | Provide Feedback | Testimonials | |
| | | Forums | FAQs | |
| | | Careers | | |

© 2011 Thomas Publishing Company. All rights reserved. See Terms and Conditions or Privacy Statement. Website Last Modified September 13, 2011.



## all metal Company Names
Displaying 51 to 63 out of 63 results

Sort by: | relevance | A-Z | Z-A

Go to page: « Prev 1 2 | 3 |

All Metals Product Development By Engineered Shapes - Garfield, NJ
Manufacturer, Custom Manufacturer, Service Company
Manufacturer Of Castings, Forgings, Machining & Assembly Service

Ball Metal Corp. - Fort Pierce, FL
Distributor, Manufacturer
Manufacturer Of Structural Steel; Distributor Of Iron & Steel Bars & Rods

Randall Metals Corp. - Salisbury, NC
Manufacturer, Custom Manufacturer
ISO 9001:2000 registered steel service center specializing in the processing of tight-tolerance, flat-rolled steel products for automotive, consumer & commercial markets.
Cutting specifications include gauge thicknesses from 0.006 to 0.085, widths from 0.375 to 59.750, 1 to 30 cuts & tolerances of...

Randall Metals Corp. - East Chicago, IN
Manufacturer, Custom Manufacturer
ISO 9001:2000 registered steel service center specializing in the processing of tight-tolerance, flat-rolled steel products for automotive, consumer & commercial markets.
Cutting specifications include gauge thicknesses from 0.006 to 0.085, widths from 0.375 to 59.750, 1 to 30 cuts & tolerances of...

Randall Metals Corporation - Elk Grove Village, IL
Manufacturer, Custom Manufacturer, Service Company
ISO 9001:2000 registered steel service center specializing in the processing of tight-tolerance, flat-rolled steel products for automotive, consumer & commercial markets.
Cutting specifications include gauge thicknesses from 0.006 to 0.085, widths from 0.375 to 59.750, 1 to 30 cuts & tolerances of...
www.randallmetals.com/

Ball Metal Container Corp. - Conroe, TX
Manufacturer
Manufacturing Of Aluminum Cans

Ball Metal Container Corp. - Kent, WA
Manufacturer
Manufacturer Of Aluminum

Marshall Metal Products, Inc. - Marshall, MI
Distributor, Manufacturer, Custom Manufacturer
Manufacture Small & Medium Custom Metal Stampings In Low & High Carbon Steel, Stainless Steel, Aluminum & Brass, Presses Range From 10 To 250 Tons; Also Produce Bright Zinc Plated, Unplated, Low-Carbon Stainless Steel, All-Purpose Tube Clamps For 1/8" To 7/8" OD Single & Multiple Tube Lines...

Skyball Metal Craft, Inc. - Los Angeles, CA
Manufacturer, Custom Manufacturer
Manufacturer Of Steel Fabrications

Ball Metal Beverage Container - Torrance, CA
Manufacturer
Manufacturer of aluminum cans.

Ball Metal Beverage Container - Milwaukee, WI
Manufacturer
Manufacturer of aluminum cans.

Ball Metal Container Group - Fairfield, CA
Manufacturer
Manufacturing Of Aluminum Cans

Sun Air Div., Stegall Metal Industries - Birmingham, AL
Manufacturer
Commercial Kitchen Hood & Ventilation Systems; Power Ventilators

Sort by: | relevance | A-Z | Z-A

Go to page: « Prev 1 2 | 3 |

| Like us | Join us | Follow us



JON HUSTED
Ohio Secretary of State

BUSINESS FILINGS

Home | About | Business | Voter Services | Candidates | Elections & Ballot Issues | Other Records | Better Lives | Publications | Media Center

General Information | Business Search | UCC Search | Trade Mark | Service Mark Search | Prepayment Accounts | Help

## Business Search by Name

Corporate Search

Business Name
Business Name - Exact
Number Search
Agent/Contact Name
Prior Business Name
Church Name

| Entity Number | Business Name | Filing Type | Original Filing Date | Expiry Date | Status | Business Location | County | State |
|---|---|---|---|---|---|---|---|---|
| 1837368 | ALL METAL RECYCLING, INC | CORPORATION FOR PROFIT | 04/22/2009 | | Active | BATAVIA | CLERMONT | |
| 1112558 | ALL METAL SALES, INC | CORPORATION FOR PROFIT | 09/13/1999 | | Active | WESTLAKE | CUYAHOGA | |
| 520070 | ALL METAL FABRICATORS INC | CORPORATION FOR PROFIT | 12/11/1978 | | Active | CLEVELAND | CUYAHOGA | OHIO |
| 306176 | DO ALL METAL FINISHING INC | CORPORATION FOR PROFIT | 10/21/1976 | | Cancelled | CLEVELAND | CUYAHOGA | OHIO |
| 261615 | ALL METAL PRODUCTS COMPANY | FOREIGN CORPORATION | 10/07/1965 | | Cancelled | | Conversion | DELAWARE |
| 216512 | ALL METAL PRODUCTS COMPANY | FOREIGN CORPORATION | 02/29/1960 | | Dead | | Conversion | DELAWARE |
| 111924 | THE ALL METAL CASKET COMPANY | CORPORATION FOR PROFIT | 03/16/1904 | | Cancelled | MANSFIELD | RICHLAND | OHIO |

Download Business Search Results  Print

Total Number of filings found : 7

[ New Search ]

EXHIBIT
D



McDonald Hopkins LLC
Attorneys at Law

Direct Dial: 216.430.2029
E-mail: dcupar@mcdonaldhopkins.com

600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114

P 216.348.5400
F 216.348.5474

September 2, 2010

## Certified Mail Return Receipt Requested

Ms. Jessica Esparza
25935 Detroit Rd.
Westlake, OH 44145

**Re:**   Unlawful Use of ALL METAL Trademark and Unfair Competition

Dear Ms. Esparza:

We represent All Metal Sales Inc. ("All Metal"). As you well know based on your personal experience, All Metal has successfully owned and used its **All Metal** mark in connection with the sale of its metal materials to customers for many years. The **All Metal** mark is of great value and importance to All Metal and its business.

Knowing the value of the **All Metal** mark and the success of All Metal's business, you have copied All Metal's mark and begun using it in the _identical_ business as does All Metal. Specifically, we found that you are selling the same metal materials under the name All Metal Source, LLC, and use the All Metal mark throughout your website www.allmetalsource.com in connection with your business. Needless to say, but your copying of the **All Metal** trademark to enter the identical business selling the identical goods and services constitutes trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a false designation of the original and false description under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and false registers, traffic in, or use of a domain name or trade name containing another's mark with a bad faith intent to profit from that mark under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); and violates the Ohio trademark and dilutions statutes and law of unfair competition and misappropriation.

Your unlawful use of the **All Metal** mark with your corporate name and in your advertising and business unfairly capitalizes on the goodwill and reputation embodied in All Metal's products, services, and business. Customers already have mistakenly believed that your use of the **All Metal** mark is somehow authorized or sponsored by us or is somehow affiliated with All Metal. This further evidences your significant and willful unlawful activities. Based on these violations, All Metal is entitled to monetary damages including lost profits, treble damages, attorneys' fees and costs, and injunctive relief.



EXHIBIT
E

To ensure that you cease and desist of all unauthorized use of the **All Metal** marks or any marks confusingly similar to the **All Metal** marks on any corporate names, websites, products, advertisements, or in connection with any services, we request that you certify that:

(1) you or any entity you are affiliated with or an agent of, immediately cease all use of **All Metal** or marks using **All Metal** or any domain name or mark confusingly similar to **All Metal**;

(2) cease the use of all metal tag or other marker in your domain name or HTML source code using **All Metal** or anything confusingly similar to the **All Metal** mark; and

(3) you or any entity you are affiliated with or an agent of, agree to cease any further corporate name, website use or advertising bearing the **All Metal** mark being a part thereof or any domain name, trade name, corporate name or mark confusingly similar to the **All Metal** mark.

Your signature on the line indicated below signifies your acceptance of the terms outlined in this letter. If we do not receive a full acceptance from you within seven (7) days of the date of this letter, we will proceed with all steps necessary to protect our client's goodwill in its goods and service marks and to stop your continued unlawful, willful infringement to confuse customers using the same mark for the same goods and services as All Metal.

Sincerely,

David B. Cupar

AGREED TO AND ACCEPTED BY:

By:_____

Name: _____

Title: _____





| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|
| 10/22/2010 | 201029400947 | AMEND/ARTICLES-ORGANIZATION/DOM. LLC (LAM) | 50.00 | .00 | .00 | .00 | .00 |

**Receipt**
This is not a bill. Please do not remit payment.

A METAL SOURCE, LLC
25935 DETROIT ROAD
CLEVELAND, OH 44145

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, Jennifer Brunner

**1894781**

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**A METAL SOURCE, LLC**

and, that said business records show the filing and recording of:

Document(s)                                          Document No(s):

**AMEND/ARTICLES-ORGANIZATION/DOM. LLC**              **201029400947**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 19th day of October, A.D. 2010.

*Jennifer Brunner*

Ohio Secretary of State





United States Patent and Trademark Office

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Mon Dec 17 05:03:59 EST 2012*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At:          OR  Jump  to record:          **Record 1 out of 5**

| TSDR | ASSIGN Status | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*

# ALLMETAL

| | |
|---|---|
| Word Mark | **ALLMETAL** |
| Goods and Services | IC 006. US 002 012 013 014 023 025 050. G & S: Emission control systems for diesel engines and exhaust after treatment systems comprised of catalytic converters, particulate filters, and housings for these components all comprised in whole or substantial part of metal. FIRST USE: 20090800. FIRST USE IN COMMERCE: 20090800 |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 77786861 |
| Filing Date | July 22, 2009 |
| Current Basis | 1A |
| Original Filing Basis | 1B |
| Date Amended to Current Register | November 1, 2010 |
| Registration Number | 3895669 |
| Registration Date | December 21, 2010 |
| Owner | (REGISTRANT) Cleaire Advanced Emission Controls LIMITED LIABILITY COMPANY DELAWARE 14333 Wicks Blvd. San Leandro CALIFORNIA 94577 |
| Attorney of | |

EXHIBIT H

| | |
|---|---|
| Record | Harold J. Milstein |
| Type of Mark | TRADEMARK |
| Register | SUPPLEMENTAL |
| Live/Dead Indicator | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST
NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Dec 15 05:02:45 EST 2012*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| Word Mark | **AMETAL** |
| Goods and Services | IC 006. US 014. G & S: Specialized Metal Alloys of High Corrosion Resistance Sold Only in the Form of Finished Valves and Other Fittings for Water, Heating and Sanitary Equipment. FIRST USE: 19630000. FIRST USE IN COMMERCE: 19700000 |
| Mark Drawing Code | (1) TYPED DRAWING |
| Serial Number | 73195698 |
| Filing Date | December 5, 1978 |
| Current Basis | 1A;44E |
| Original Filing Basis | 1A;44E |
| Published for Opposition | March 10, 1981 |
| Registration Number | 1267669 |
| Registration Date | February 21, 1984 |
| Owner | (REGISTRANT) Tour & Andersson Aktiebolag CORPORATION SWEDEN Svardlangsvagen 46 Johanneshov SWEDEN |
| Attorney of Record | BREWSTER TAYLOR |
| Type of Mark | TRADEMARK |
| Register | PRINCIPAL |
| Affidavit Text | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20040324. |
| Renewal | 1ST RENEWAL 20040324 |
| Live/Dead Indicator | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

EXHIBIT I

# Trademark/Service Mark Application, Principal Register

**Serial Number: 85243378**
**Filing Date: 02/16/2011**

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 85243378 |
| **MARK INFORMATION** | |
| *MARK | \\TICRS\EXPORT11\IMAGEOUT 11\852\433\85243378\xml1\ APP0002.JPG |
| **SPECIAL FORM** | YES |
| **USPTO-GENERATED IMAGE** | NO |
| **LITERAL ELEMENT** | A |
| **COLOR MARK** | NO |
| *DESCRIPTION OF THE MARK (and Color Location, if applicable) | The mark consists of the letter A stylized with a swirl around the letter A. |
| **PIXEL COUNT ACCEPTABLE** | YES |
| **PIXEL COUNT** | 400 x 262 |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | All Metal Sales, Inc. |
| *STREET | 29260 Clemens Road |
| *CITY | Westlake |
| *STATE (Required for U.S. applicants) | Ohio |

EXHIBIT J

| | |
|---|---|
| *COUNTRY | United States |
| *ZIP/POSTAL CODE (Required for U.S. applicants only) | 44145 |
| PHONE | 216-375-5400 |
| FAX | 216-375-5474 |
| EMAIL ADDRESS | ip@mcdonaldhopkins.com |

## LEGAL ENTITY INFORMATION

| | |
|---|---|
| TYPE | corporation |
| STATE/COUNTRY OF INCORPORATION | Ohio |

## GOODS AND/OR SERVICES AND BASIS INFORMATION

| | |
|---|---|
| INTERNATIONAL CLASS | 006 |
| * IDENTIFICATION | non-standard and custom-made items made from highly specialized non-standard metal material |
| FILING BASIS | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 09/30/1999 |
| FIRST USE IN COMMERCE DATE | At least as early as 09/30/1999 |
| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT11\IMAGEOUT 11\852\433\85243378\xml1\ APP0003.JPG |
| | \\TICRS\EXPORT11\IMAGEOUT 11\852\433\85243378\xml1\ APP0004.JPG |
| SPECIMEN DESCRIPTION | packaging of the goods with the mark thereon and the label |
| INTERNATIONAL CLASS | 040 |
| * IDENTIFICATION | manufacturing of non-standard and custom-made items made from highly specialized non-standard materials; production to prototype |
| FILING BASIS | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 09/30/1999 |
| FIRST USE IN | |

| | |
|---|---|
| **COMMERCE DATE** | At least as early as 09/30/1999 |

| **SPECIMEN FILE NAME(S)** |
|---|

| | |
|---|---|
| **ORIGINAL PDF FILE** | spec-21618316999-165817392_._10313_cl_40_specimen__2591470_.PDF |
| **CONVERTED PDF FILE(S) (1 page)** | \\TICRS\EXPORT11\IMAGEOUT11\852\433\85243378\xml1\APP0005.JPG |
| **SPECIMEN DESCRIPTION** | advertising on their website describing the services with the mark thereon |

## ATTORNEY INFORMATION

| | |
|---|---|
| **NAME** | David B. Cupar |
| **ATTORNEY DOCKET NUMBER** | 10313 |
| **FIRM NAME** | McDonald Hopkins LLC |
| **STREET** | 600 Superior Avenue, E., Suite 2100 |
| **CITY** | Cleveland |
| **STATE** | Ohio |
| **COUNTRY** | United States |
| **ZIP/POSTAL CODE** | 44114 |
| **PHONE** | 216-348-5400 |
| **FAX** | 216-348-5474 |
| **EMAIL ADDRESS** | ip@mcdonaldhopkins.com |
| **AUTHORIZED TO COMMUNICATE VIA EMAIL** | Yes |
| **OTHER APPOINTED ATTORNEY** | David T. Movius, Michael Femal, Charles F. Gray, Scott Slaby, Peter Berk, Stephen G. McClure, Matthew J. Cavanagh, Joseph J. Jacobi, and Todd A. Benni |

## CORRESPONDENCE INFORMATION

| | |
|---|---|
| **NAME** | David B. Cupar |
| **FIRM NAME** | McDonald Hopkins LLC |
| **STREET** | 600 Superior Avenue, E., Suite 2100 |
| **CITY** | Cleveland |
| **STATE** | Ohio |

| COUNTRY | United States |
|---|---|
| ZIP/POSTAL CODE | 44114 |
| PHONE | 216-348-5400 |
| FAX | 216-348-5474 |
| EMAIL ADDRESS | ip@mcdonaldhopkins.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |

## FEE INFORMATION

| NUMBER OF CLASSES | 2 |
|---|---|
| FEE PER CLASS | 325 |
| *TOTAL FEE DUE | 650 |
| *TOTAL FEE PAID | 650 |

## SIGNATURE INFORMATION

| SIGNATURE | /Thomas G.Klocker/ |
|---|---|
| SIGNATORY'S NAME | Thomas G. Klocker |
| SIGNATORY'S POSITION | President |
| DATE SIGNED | 02/15/2011 |

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 02/31/2011)

# Trademark/Service Mark Application, Principal Register

## Serial Number: 85243378
## Filing Date: 02/16/2011

# To the Commissioner for Trademarks:

**MARK:** A (stylized and/or with design, see mark)

The literal element of the mark consists of A.
The applicant is not claiming color as a feature of the mark. The mark consists of the letter A stylized with a swirl around the letter A.
The applicant, All Metal Sales, Inc., a corporation of Ohio, having an address of
    29260 Clemens Road
    Westlake, Ohio 44145
    United States
requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

    International Class 006:  non-standard and custom-made items made from highly specialized non-standard metal material

In International Class 006, the mark was first used at least as early as 09/30/1999, and first used in commerce at least as early as 09/30/1999, and is now in use in such commerce. The applicant is submitting one specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) packaging of the goods with the mark thereon and the label.
Specimen File1
Specimen File2

    International Class 040:  manufacturing of non-standard and custom-made items made from highly specialized non-standard materials; production to prototype

In International Class 040, the mark was first used at least as early as 09/30/1999, and first used in commerce at least as early as 09/30/1999, and is now in use in such commerce. The applicant is submitting one specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) advertising on their website describing the services with the mark thereon.

**Original PDF file:**
spec-21618316999-165817392_._10313_cl_40_specimen__2591470_.PDF
**Converted PDF file(s)** (1 page)
Specimen File1

The applicant's current Attorney Information:
David B. Cupar and David T. Movius, Michael Femal, Charles F. Gray, Scott Slaby, Peter Berk, Stephen
G. McClure, Matthew J. Cavanagh, Joseph J. Jacobi, and Todd A. Benni of McDonald Hopkins LLC
    600 Superior Avenue, E., Suite 2100
    Cleveland, Ohio 44114
    United States
The attorney docket/reference number is 10313.

The applicant's current Correspondence Information:
    David B. Cupar
    McDonald Hopkins LLC
    600 Superior Avenue, E., Suite 2100
    Cleveland, Ohio 44114
    216-348-5400(phone)
    216-348-5474(fax)
    ip@mcdonaldhopkins.com (authorized)

A fee payment in the amount of $650 has been submitted with the application, representing payment for 2
class(es).

## Declaration

The undersigned, being hereby warned that willful false statements and the like so made are punishable by
fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and
the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is
properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to
be the owner of the trademark/service mark sought to be registered, or, if the application is being filed
under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce;
to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right
to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to
be likely, when used on or in connection with the goods/services of such other person, to cause confusion,
or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and
that all statements made on information and belief are believed to be true.


Signature: /Thomas G.Klocker/   Date Signed: 02/15/2011
Signatory's Name: Thomas G. Klocker
Signatory's Position: President


RAM Sale Number: 7497
RAM Accounting Date: 02/16/2011

Serial Number: 85243378
Internet Transmission Date: Wed Feb 16 07:38:31 EST 2011

TEAS Stamp: USPTO/BAS-216.183.169.99-201102160738312
66126-85243378-48025a017968882645fa3ef76
667ff64a8-DA-7497-20110203165817392294





# _Another Quality Product From..._

## All Metal Sales, Inc.

**29260 Clemens Rd.**
**Westlake, OH 44145**
**1.888.333.0101**



**All Metal Sales, Inc.**

www.allmetalsalesinc.com

## _Distributor of Every Size, Type and Form._



**Home**

**Within these web pages you will find that All Metal Sales, Inc. is the best source for all your metal needs.**

**Request A QUOTE**

Specializing in non-standard and custom-made items, we have what you are looking for, including the competence to provide a vast range of materials from stock to suit your needs. Our specialties include:

- Highly specialized non-standard material
- Off the shelf items
- Production to prototype
- Low minimums to mill runs.

AMS has the experience to solve your most difficult requirements. **Call 1.888.333.0101** to discuss your needs or to talk to an experienced member of the All Metal Sales team for help with your order.

### • Click here to request a quote from All Metal Sales.

With our focus on superior customer service, premium quality and expedited turnaround, we are sure you will agree that All Metal Sales, Inc. is your best source for metal.

Please browse through our site and see the broad range of materials and capabilities that AMS offers. In addition you will find some helpful tools to estimate metal weights, convert your measurements, cross-reference thousands of material specifications for the material that we offer and most importantly, submit a request for quotation. You can fax your order to us at 1.888.333.0017.

**1.888.333.0101** | Fax: 1.888.333.0017    29260 Clemens Road, Westlake, Ohio 44145
Shipping from: Los Angeles, CA 90670 • Chicago, IL 60544 • Cleveland, OH 44145



| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|
| 02/25/2011 | 201105500935 | TRADE MARK/ORIGINAL FILING (TMO) | 125.00 | 100.00 | | .00 | .00 |

### Receipt
This is not a bill. Please do not remit payment.

MCDONALD HOPKINS LLC
600 SUPERIOR AVE E, STE 2100
CLEVELAND, OH 44114

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, Jon Husted

**1999526**

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**STYLIZED "A" W/ SWIRL AROUND IT & "ALL METAL SALES, INC" BELOW**

and, that said business records show the filing and recording of:

Document(s)                                                 Document No(s):

**TRADE MARK/ORIGINAL FILING**                              **201105500935**
    Class:   METAL GOODS
    Registrant's State of Inc.:  OH          ALL METAL SALES, INC.
    Date of First Use:    09/30/1999          29260 CLEMENS ROAD
    Date of First Use in Ohio:  09/30/1999     WESTLAKE, OH 44145
    Expiration Date:    02/24/2021



Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 24th day of February,
A.D. 2011.

*Jon Husted*

United States of America
State of Ohio
Office of the Secretary of State                           Ohio Secretary of State





Prescribed by:

The Ohio Secretary of State
Central Ohio: (614) 466-3910
Toll Free: 1-877-SOS-FILE (1-877-767-3453)

www.sos.state.oh.us
e-mail: busserv@sos.state.oh.us

| Expedite this Form: (Select One) |
|---|
| Mail form to one of the Following: |
| ⦿ Yes   PO Box 1390   Columbus, OH 43216 |
| *** Requires an additional fee of $100 *** |
| ◯ No   PO Box 1329   Columbus, OH 43216 |

# TRADE MARK / SERVICE MARK APPLICATION
## STATE OF OHIO
(For Domestic or Foreign, Profit or Nonprofit)
Filing Fee $125.00
(174-TSMO)

**(CHECK ONLY ONE (1) BOX)**
To the SECRETARY OF STATE BE IT KNOWN, that the undersigned applicant is an:
☐ individual ☐ firm ☐ partnership ☑ corporation ☐ association ☐ union of working men
☐ or other organization, has adopted and used in this state the:

**(CHECK ONLY ONE (1) BOX)**
☑ trade mark ☐ service mark for which application for registration is hereby made in compliance with the provisions
of Revised Code Sections 1329.54 to 1329.67 by filing with the Secretary of State of Ohio the following information:

1. a. The name of the applicant is   Ail Metal Sales, Inc.

   b. The business address of the applicant is

   29260 Clemens Road
   (street address)      NOTE: P.O. Box Addresses are NOT acceptable.

   Westlake      OH      44145
   (city, township, or village)    (state)    (zip code)

2. a. If applicant is a corporation, the state of incorporation is   Ohio
     (state)

   b. If applicant is a partnership or limited liability partnership, the state in which the partnership is organized is

     (state)
   and the names of the general partners.

   c. If the applicant is a limited liability company, the state of its organization:
     (state)

3. The goods or services in connection with which the mark is used:

   non-standard and custom-made items from highly specialized non-standard material

4. The manner in which the mark is used in connection with such goods or services:   (See instructions)
   packaging

'5. The class in which such goods or services fall:          (See instructions)

6

6. The date when the trade mark or service mark was first used anywhere: 09/30/1999
                                                                            (Date)

7. The date when the mark was first used in Ohio by the applicant or his predecessor in business: 09/30/1999
                                                                                                    (Date)

8. If mark used by predecessor in business, give name and address of predecessor:

_____
(name)

_____
(street address)          NOTE: P.O. Box Addresses are NOT acceptable.

_____, Ohio _____
(city, village or township)          (zip code)

9. The applicant is the owner of the trade mark/service mark and no other person has the right to use the mark in the State of Ohio either in the identical form or in such near resemblance as might be calculated to deceive or be mistaken for it.

10. No other person has a registration of the same or of a confusingly similar trade mark/service mark in the United States Patent Office for the same or similar goods. (See instructions.)

11. I am ☐ am not ☑ the owner of a concurrent registration in the United States Patent Office of this trade mark/ service mark covering an area including this State: (See instructions.)

12. The mark is described IN WORDS as follows:
    A stylized letter "A" with a swirl around the letter. The words All Metal Sales, Inc. are

    below the letter A._____

13. A specimen or facsimile of the mark accompanies this application.

State of Ohio
County of   Cuyahoga _____ ss.

I.  All Metal Sales, Inc. _____ the applicant herein, being first duly sworn, depose and say that the facts set forth in this application are true, as I verily believe, and that the copies, counterparts or facsimiles filed herewith are true and correct.

Signature: _____
           (Applicant, Authorized Rep., Officer)

           Counsel of Record _____
           (Title, if applicant is not an individual)

                    Subscribed and sworn to me on  2-22-11
                                                    (date)

                                Signature: _____
Notary Seal                                (Notary Public)

                    Expiration date of Notary's Commission _____
                                                             (date)

                                GINETTE M. PIROS
                              A Notary Public of Ohio
                          My Commission Expires June 2, 2013

555                    Page 2 of 5                    Last Revised Apr. 2004





### Receipt

This is not a bill. Please do not remit payment.

MCDONALD HOPKINS LLC
600 SUPERIOR AVE E
CLEVELAND, OH 44114

---

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, Jon Husted

1999527

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**STYLIZED "A" W/ SWIRL AROUND IT & "ALL METAL SALES, INC" BELOW**

and, that said business records show the filing and recording of:

Document(s)

**SERVICE MARK/ORIGINAL FILING**                    Document No(s):
   Class:   MATERIAL TREATMENT                      **201105500936**
   Registrant's State of Inc.:   OH
   Date of First Use:           09/30/1999          ALL METAL SALES, INC.
   Date of First Use in Ohio   09/30/1999          29260 CLEMENS ROAD
   Expiration Date:             02/24/2021          WESTLAKE, OH 44145



Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 24th day of February,
A.D. 2011.

*Jon Husted*

United States of America
State of Ohio
Office of the Secretary of State

Ohio Secretary of State

EXHIBIT
L


Prescribed by:

The Ohio Secretary of State
Central Ohio: (614) 466-3910
Toll Free: 1-877-SOS-FILE (1-877-767-3453)

www.sos.state.oh.us
e-mail: busserv@sos.state.oh.us

Expedite this Form: (Select One)

Mail Form to one of the Following:

⊙ Yes    PO Box 1390
      Columbus, OH 43216
      *** Requires an additional fee of $100 ***

○ No    PO Box 1329
      Columbus, OH 43216

# TRADE MARK / SERVICE MARK APPLICATION
## STATE OF OHIO
(For Domestic or Foreign, Profit or Nonprofit)
Filing Fee $125.00
(174-TSMO)

*(CHECK ONLY ONE (1) BOX)*
To the SECRETARY OF STATE BE IT KNOWN, that the undersigned applicant is an:
☐ individual ☐ firm ☐ partnership ☑ corporation ☐ association ☐ union of working men
☐ or other organization, has adopted and used in this state the

*(CHECK ONLY ONE (1) BOX)*
☐ trade mark ☑ service mark for which application for registration is hereby made in compliance with the provisions
of Revised Code Sections 1329.54 to 1329.67 by filing with the Secretary of State of Ohio the following information:

1. a. The name of the applicant is   All Metal Sales, Inc.

   b. The business address of the applicant is

   29260 Clemens Road
   (street address)
             NOTE: P.O. Box Addresses are NOT acceptable.

   Westlake                  OH           44145
   (city, township, or village)          (state)          (zip code)

2. a. If applicant is a corporation, the state of incorporation is   Ohio
                                                   (state)

   b. If applicant is a partnership or limited liability partnership, the state in which the partnership is organized is

   _____
   (state)
   and the names of the general partners

   _____

   _____

   _____

   c. If the applicant is a limited liability company, the state of its organization _____
                                                          (state)

3. The goods or services in connection with which the mark is used:

   non-standard and custom-made items from highly specialized non-standard material

4. The manner in which the mark is used in connection with such goods or services: [See instructions]
   advertising, brochures, letterhead, invoicing

555                               Page 1 of 5                         Last Revised Apr. 2004

5. The class in which such goods or services fall: _____ (See instructions.)

40)

6. The date when the trade mark or service mark was first used anywhere. 09/30/1999
   _____ (Date)

7. The date when the mark was first used in Ohio by the applicant or his predecessor in business: 09/30/1999
   _____ (Date)

8. If mark used by predecessor in business, give name and address of predecessor.

_____
(name)

_____
(street address)                              NOTE: P.O. Box Addresses are NOT acceptable

_____ , Ohio _____
(city, village or township)                                (zip code)

9. The applicant is the owner of the trade mark/service mark and no other person has the right to use the mark in the State of Ohio either in the identical form or in such near resemblance as might be calculated to deceive or be mistaken for it.

10. No other person has a registration of the same or of a confusingly similar trade mark/service mark in the United States Patent Office for the same or similar goods. (See instructions.)

11. I am ☐ am not ☑ the owner of a concurrent registration in the United States Patent Office of this trade mark/ service mark covering an area including this State. (See instructions.)

12. The mark is described IN WORDS as follows:
    A stylized letter "A" with a swirl around the letter. The words All Metal Sales, Inc. are

    below the letter A.

    _____

    _____

13. A specimen or facsimile of the mark accompanies this application.

State of Ohio
County of  Cuyahoga                              ss.

I,  All Metal Sales, Inc. _____ the applicant herein, being first duly sworn, depose and say that the facts set forth in this application are true, as I verily believe, and that the copies, counterparts or facsimiles filed herewith are true and correct.

Signature _____

(Applicant, Authorized Rep., Officer)

Counsel of Record
(Title, if applicant is not an individual)

Subscribed and sworn to me on  2-22-11
                                         (date)

Notary Seal        Signature _____
                              (Notary Public)

Expiration date of Notary's Commission _____
                                                    (date)

GINETTE M. PIROS
A Notary Public of Ohio
My Commission Expires June 2, 2013

555                         Page 2 of 5                    Last Revised Apr. 2004

*Another Quality Product From...*

# All Metal Sales, Inc.

29260 Clemens Rd.
Westlake, OH 44145
1.888.333.0101

www.allmetalsalesinc.com



All Metal Sales, Inc.

**Distributor of Every Size, Type and Form.**

**[Page 1]**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALL METAL SALES, INC., )
)
Plaintiff, ) Case No. 1:10-CV-02343
) Judge Donald C. Nugent
vs. )
) (Attorneys' Eyes Only
ALL METAL SOURCE, LLC, ) Pursuant to Paragraph 5
) of Stipulated Protective
Defendant. ) Order)

- - - - -

THE DEPOSITION OF THOMAS G. KLOCKER
TUESDAY, AUGUST 30, 2011

- - - - -

The deposition of THOMAS G. KLOCKER, called by the Defendant for examination pursuant to the Federal Rules of Civil Procedure, taken before me, the undersigned, Elaine S. Newlin, Registered Professional Reporter and Notary Public within and for the State of Ohio, taken at the offices of McDonald Hopkins, LLC, 2100 Fifth Third Bank Building, 600 Superior Avenue, East, Cleveland, Ohio, commencing at 9:55 a.m., the day and date above set forth.

**[Page 2]**

1  APPEARANCES:
2     On behalf of the Plaintiff:
3        David B. Cupar, Esq.
          McDonald Hopkins, LLC
4        2100 Fifth Third Bank Building
          600 Superior Avenue, East
5        Cleveland, Ohio 44114
          216-348-5400
6        dcupar@mcdonaldhopkins.com
7
       On behalf of the Defendant:
8
         Michael Drain, Esq.
9        Law Offices of Michael Drain
          147 Bell Street, Suite 202
10       Chagrin Falls, Ohio 44022
          440-247-3380
11       mdrain@mdrainlaw.com
12
     ALSO PRESENT:
13
         Jessica Esparza
14
15
16
17
18
19
20
21
22
23
24
25

**[Page 3]**

THOMAS G. KLOCKER DEPOSITION INDEX
Examinations                          Page
BY MR. CUPAR:...............................4

E X H I B I T S

No.                                   Page

Defendant's Exhibit No. 1................... 19
Defendant's Exhibit No. 2................... 39

**[Page 4]**

1                THOMAS G. KLOCKER,
2   of lawful age, called by the Defendant for
3   examination pursuant to the Federal Rules of
4   Civil Procedure, having been first duly sworn,
5   as hereinafter certified, was examined and
6   testified as follows:
7        EXAMINATION OF THOMAS G. KLOCKER
8   BY MR. DRAIN:
9   Q  Good morning, Mr. Klocker. How are you doing
10      today?
11  A  Good.
12  Q  Could you state your full name, please?
13  A  Thomas Gerald Klocker.
14  Q  And what's your address?
15  A  908 Beach Road, Lakewood, Ohio, 44107.
16  Q  And with whom do you live there?
17  A  With my wife Alison Klocker, my son Owen.
18      That's it.
19  Q  How long have you lived there?
20  A  Purchased the house May 15th, '03. I moved out
21      a couple years when I tore it down, rebuilt it.
22  Q  Well, what was your residence address prior to
23      that?
24  A  Prior to that? 900 Beach Road.
25  Q  Just down the street?

CADY REPORTING SERVICES, INC. - 216.861.9270
www.cadyreporting.com



5

1  A  Four doors down.
2  Q  And what's your business address?
3  A  29260 Clemens Road, with a C. It's in
4      Westlake. 44145.
5  Q  And can you describe that address, that
6      building that you're located in? Is it an
7      office building?
8  A  Two-story brick building, light industrial.
9      Light industrial park.
10  Q  Do you own or rent there?
11  A  Lease there.
12  Q  How long is your lease?
13  A  Five years.
14  Q  And under what name do you do business there?
15  A  All Metal Sales, Incorporated.
16  Q  Now, have you ever had your deposition taken
17      before?
18  A  Yes.
19  Q  Can you tell us how many times and what
20      instance?
21  A  One.
22  Q  One time before?
23  A  Yes.
24  Q  What case was that?
25  A  That was me versus Clifton Lagoon Trustees.

6

1  Q  Now, the public records have a different
2      designation. They call it Clifton Park
3      Trustees versus Thomas G. Klocker, case number
4      05-568033. So is that the case you're referring
5      to or is this another case?
6          MR. CUPAR:      Objection to
7      the extent it mischaracterizes the witness's
8      testimony.
9  Q  What was your answer?
10  A  You're looking for the proper name of the
11      association?
12  Q  Yes. Were they suing you or were you suing
13      them?
14  A  We were suing each other.
15  Q  I see. So I want to make sure I've got the
16      right case here. This is a case filed in 2005
17      and the court records have it designated as
18      Clifton Park Trustees versus Thomas G. Klocker.
19      So if I understand your testimony, you would
20      have filed a counterclaim against the Clifton
21      Park Trustees; is that it?
22          MR. CUPAR:      Objection to
23      the extent it calls for a legal conclusion.
24      Answer only if you know.
25  Q  Do you know?

7

1  A  Do I know what?
2  Q  Do you know if you filed a counterclaim in that
3      case?
4  A  I don't know which case this is.
5  Q  Well, let's go back then. When I asked you if
6      you had your deposition taken before, you said
7      yes, in one case, and that was the case of
8      Klocker versus Clifton Lagoons, and that
9      appears to be similar, if not the same case, as
10      Clifton Park Trustees versus Thomas G. Klocker.
11      Is there a need for clarity there? Are you
12      able to identify that case?
13          MR. CUPAR:      Objection.
14      I'm not sure what your question is.
15  Q  Which case are you talking about, Mr. Klocker?
16          MR. CUPAR:      He answered
17      that question.
18  A  I'm not sure what their official name is.
19  Q  I see. In any case, you've had your deposition
20      taken one time previously, right?
21  A  That I remember.
22  Q  So you know that I'm going to ask you factual
23      questions and expect factual answers, and that
24      when you answer, that you're going to give a
25      complete answer; is that fair?

8

1  A  Yes.
2  Q  You've told us you're doing business under the
3      name All Metal Sales, Inc., so you're an
4      employee of All Metal Sales, Inc.; are you not?
5  A  Correct.
6  Q  And how long have you been employed at All
7      Metal Sales, Inc.?
8  A  11 years.
9  Q  Going back to what year? 1999?
10  A  Correct.
11  Q  And in what capacity are you employed there?
12  A  President.
13  Q  Are you also a shareholder?
14  A  Yes.
15  Q  Do you have a board of directors?
16  A  No.
17  Q  And where is that company incorporated, if you
18      know?
19  A  State of Ohio.
20  Q  Do you know when it was incorporated?
21  A  June of 1999.
22  Q  Do you operate any other businesses at the
23      present time?
24  A  Yes.
25  Q  Tell us about that.

2 (Pages 5 to 8)

9

1   A   T.T. Charter Leasing, Incorporated.
2   Q   And what's the principal place of business of
3        that corporation?
4   A   30628 Detroit Road, Westlake, Ohio.
5   Q   What is that address in terms of residence or
6        business, office building?  What is that?
7   A   Business address.
8   Q   And how much space does your company occupy
9        there?
10  A   Not much.  It's a PO box.
11  Q   Oh, it's a PO box?
12  A   Correct.
13  Q   And what's the name of the company that has the
14       PO box?
15  A   I don't know.
16  Q   How long has T.T. Charter Leasing, Inc. been in
17       business?
18  A   Since 2002 I believe.
19  Q   Is that incorporated in Ohio also?
20  A   Yes.
21  Q   And what's your capacity with that company?
22  A   President.
23  Q   Do you have a board of directors?
24  A   No.
25  Q   What's the principal business of that company?

10

1   A   Leasing company.
2   Q   In what area?  Leasing what?
3   A   Equipment.
4   Q   What kind of equipment?
5   A   Marine equipment.
6   Q   How much of your time do you devote to that
7        business in your regular working hours?
8   A   Regular working hours?
9   Q   Yes.
10  A   Zero right now.
11  Q   So you're devoting your full time and attention
12       it's fair to say to All Metal Sales, Inc.; is
13       that true?
14  A   That's correct.
15  Q   Do you have any other businesses other than
16       T.T. Charter Leasing, Inc.?
17  A   Yes.
18  Q   What's that about?
19  A   T.T. --
20  Q   Tell me.
21  A   -- spelled out T period T period T-w-o Leasing,
22       LLC.
23  Q   What's the principal business of that company?
24  A   Leasing company.
25  Q   And what do you lease?

11

1   A   Equipment.
2   Q   What kind of equipment?
3   A   Maritime equipment.
4   Q   What's your capacity with that company?
5   A   Managing director.
6   Q   How much of your time do you devote to that
7        company?
8   A   So far, very, very little.
9   Q   Is that incorporated in the state of Ohio?
10  A   No, it is not.
11  Q   Is it registered or incorporated in any state?
12  A   Yes, it is.
13  Q   What state is that?
14  A   Florida.
15  Q   When was it registered in Florida?
16  A   Approximately two weeks ago.
17  Q   Does it have any sales to date?
18  A   No.
19  Q   Does T.T. Charter Leasing have any sales in the
20       year 2011?
21  A   Yes.
22  Q   Do you have any other businesses, Mr. Klocker?
23  A   No.
24  Q   Where were you employed prior to founding All
25       Metal Sales, Inc.?

12

1   A   Midwest Metals, Incorporated.
2   Q   What's the principal place of business of
3        Midwest Metals, Incorporated?
4            MR. CUPAR:          Objection.
5        What time period?
6   Q   At the time you were working there, sir.
7   A   At the time I worked at Midwest Metals?
8   Q   Yes.
9   A   What was their address?
10  Q   Yes.  What's the principal place of business of
11       Midwest Metals at the time you were working
12       there?
13           MR. CUPAR:          Objection.
14       Form.
15  Q   Do you know what the principal place of
16       business was at that time?
17  A   As in location?  Is that what you're asking,
18       the location?
19  Q   Right.  Yes.
20           MR. CUPAR:          Let me make
21       it clear.  If you're not sure what he's asking,
22       just ask him to clarify.
23  A   Do you want to know the location of the
24       business?
25  Q   Right, yes, where it did business, yes, sir.

3 (Pages 9 to 12)

13

1   A   25989 Detroit Road, Westlake, Ohio, 44145.
2   Q   And for how long a time were you employed at
3       Midwest Metals, Inc.?
4   A   Don't know exactly.
5   Q   When did you leave your employment there?
6   A   June 12th, 1999.
7   Q   Under what circumstances?
8   A   Unhappy.
9   Q   You were unhappy or they were unhappy?
10  A   I was unhappy.
11  Q   Why were you unhappy?
12  A   Many reasons.
13  Q   Which were what?
14  A   Feeling I was getting forced out.
15  Q   You were being forced out?
16  A   Felt like I was being forced out.
17  Q   Were you ever told you were being forced out?
18  A   In many ways. Not maybe in those exact words.
19  Q   And for how long a time did you work for
20      Midwest Metals, Inc. up until June 12, 1999?
21          MR. CUPAR:          Objection.
22      Asked and answered.
23  Q   Do you know?
24  A   I don't know the exact amount of time, no.
25  Q   What was your job title there?

14

1   A   Vice president.
2   Q   What were your duties and responsibilities?
3   A   Sales, shipping and receiving, investing.
4   Q   Investing?
5   A   Yes.
6   Q   Investing what?
7   A   Money.
8   Q   Did you have a job description?
9   A   Vice president.
10  Q   I mean did you have a written job description.
11  A   No.
12  Q   And those sales, were they inside sales or
13      outside sales?
14  A   Combination of both.
15  Q   Now, who's the principal of Midwest Metals,
16      Inc.?
17  A   My father, Thomas Paul Klocker.
18  Q   Is he still the principal so far as you know?
19  A   I don't know.
20  Q   And at the time you were working there, were
21      there other employees of that company?
22  A   Yes.
23  Q   Were there employees who worked for you at that
24      time?
25  A   No.

15

1   Q   Were there other salesmen other than yourself?
2   A   My father.
3   Q   So you and your father were the principal
4       salespeople; is that correct?
5   A   Yes.
6   Q   Would you describe your relationship with your
7       father today?
8   A   How would I?
9   Q   Yes.
10  A   Nonexistent.
11  Q   And why is that, if you know?
12  A   Probably because of his new marriage.
13  Q   New marriage to whom?
14  A   To his wife.
15  Q   What's his wife's name?
16  A   I don't know how to pronounce it officially,
17      but it's R -- I'm not sure of her actual name,
18      so since you're his attorney, maybe you'll know
19      it because I don't know her real name.
20  Q   What name do you know her by? Are you able to
21      pronounce it?
22  A   No.
23  Q   Is it anything like Rocio?
24  A   Sounds like that, but I'm not really sure what
25      her name is.

16

1   Q   Would that be spelled R-o-c-i-o, if you know?
2   A   Don't know.
3   Q   So when did this marriage take place, if you
4       know?
5   A   Don't know. Was never told about it.
6   Q   I see. But that's the reason for your
7       nonexistent relationship with your father?
8   A   Yes.
9   Q   And how long has this nonexistent relationship
10      gone on?
11  A   Years.
12  Q   Going back to the '90s?
13  A   Yes.
14  Q   So it's at least 11 plus years that this
15      nonexistent relationship has existed, correct?
16  A   As far as being a father, yes.
17  Q   Do you have any communication at this time with
18      your father?
19  A   No.
20  Q   How would you describe your relationship with
21      your father's new wife?
22  A   Nonexistent.
23  Q   Have you ever talked to her?
24  A   Ever?
25  Q   Ever.

4 (Pages 13 to 16)

17

1    A    Yes.
2    Q    When was the last time you talked to her, if
3         you recall?
4    A    Two years ago.
5    Q    What was the nature of the conversation?
6    A    My father approached me and my best friend at a
7         Cavs game.  My father tried to shake his hand
8         and his wife tried to break up the handshake
9         and told him he had to leave and I asked why
10        she had to be such a bitch.
11   Q    Now, on that note, did you ever write on a
12        mirror with lipstick, "Go back to Columbia, you
13        fucking bitch," or something to that effect?
14        Do you recall that?
15   A    Don't -- don't recall that, no.
16   Q    Do you recall it because it didn't happen or
17        you just don't recall?
18   A    Don't recall.
19   Q    I see.  Now, when you were working with Midwest
20        Metals, was it ever your practice to pilfer or
21        take his employees or customers?
22   A    No.
23             MR. CUPAR:          Objection.
24   Q    Did you ever work his accounts such that his
25        accounts became your accounts?

18

1             MR. CUPAR:          Objection.
2         Vague.
3    Q    Mr. Klocker, is that your answer, that it's you
4         don't know or you don't recall or what?
5             MR. CUPAR:          Which
6         question do you want him to answer, that one or
7         the one before it?
8    Q    Was it ever your practice to make his accounts
9         your accounts, Mr. Klocker?
10   A    I don't understand your question.
11   Q    Well, you understand that at the time you were
12        working for Midwest Metals, he had certain
13        accounts; do you not?
14             MR. CUPAR:          Objection.
15        Timeframe.  Vague.  Answer if you know or
16        understand.
17   Q    Are you avoiding that question or do you
18        understand it?
19   A    I understand your question, but someone like --
20        General Electric has hundreds of divisions
21        around the world.  My dad doesn't have the
22        rights to General Motors or General Electric,
23        Boeing, so your question's very, very, very
24        vague.
25   Q    I see.  Well, maybe I can clear it up a little

19

1         bit.  I'm going to hand you what's going to be
2         marked as Defendant's Deposition Exhibit Number
3         1.
4             MR. DRAIN:          Can you mark
5         that, please?
6             - - - - -
7         (Defendant's Exhibit No. 1 was marked.)
8             - - - - -
9    Q    I'm going to hand you what's been identified as
10        Defendant's Deposition Exhibit Number 1.  I ask
11        you to look at that.
12            MR. DRAIN:          I just have
13        one other copy, Mr. Cupar.
14            MR. CUPAR:          I'll take it.
15   Q    Do you want to look at that, Mr. Klocker?
16            MR. CUPAR:          Take your
17        time and look at the entire document.
18   A    I'm familiar with these companies.
19   Q    I'm sorry.  You are familiar with those
20        companies?
21   A    Yes.
22   Q    Can you identify that document?
23   A    These are a list of a portion of our customers
24        from around the world.
25   Q    Is it fair to say that that's a listing of

20

1         customers from your website as it exists today?
2    A    Might not exist today.  I don't know if it
3         exists today.
4    Q    Well, how about yesterday?
5    A    I didn't look at it yesterday.  I haven't
6         looked at my website in a long time.
7    Q    Is that a fair representation of your customers
8         that exist?
9    A    Past and present.
10   Q    I see.  Okay.  For the record, can you read off
11        the names of those companies, sir?
12   A    All of them?
13   Q    Yes, sir.
14   A    ABB; AEA; Aero Design & Manufacturing; Aerojet;
15        ALCOA; Architect of the Capitol; Argonne
16        National Lab; BAE Systems; Baker Hughes; Los
17        Alamos National Lab; Johns Hopkins University;
18        Korea Aerospace Industries, Limited; Lawrence
19        Berkeley National Lab; Learjet; Lockheed
20        Martin; Manchester Tool Company; MBM & Machine
21        (sic); MDOT Aerospace; Beaver Aerospace &
22        Defense; Bechtel Nevada; Bluefin Robotics;
23        Boeing; Bombardier Aerospace; Brookhaven
24        National Lab; Canadair; Caterpillar; Cessna
25        Aircraft; Consolidated Power Supply; Crane

5 (Pages 17 to 20)

21

1    Nuclear; MIT; NASA; Naval Surface Warfare
2    Center; Northstar Aerospace; Oak Ridge National
3    Lab; Oceaneering Space Systems; Ohio State
4    University; Oilphase; Orbital Science; Owens
5    Corning; Parker Hannifin; PCC Airfoils; Curtiss
6    Wright; Daimler Chrysler Aerospace; Elecsys;
7    Ethicon Endo-Surgery; Fermi National Lab; Fike
8    Corporation; GE; General Dynamics; Goddard
9    Space Flight Center; Goodrich Aerospace;
10   Goodrich Landing Gear; Hamilton Aviation;
11   Harvard University; Honeywell; Pioneer; PPG;
12   Pratt & Whitney; Praxair; Saint Gobain; Sandia
13   National Lab; Senior Aerospace; Siemens; Solar
14   Power Industries; Starsys Research; Strongwell;
15   Swagelok; Tect Aerospace; Thayer Aerospace;
16   Idaho National Lab; ITT; Jet Propulsion Lab;
17   Jetseal; JL Manufacturing; The Boeing Company;
18   Thermacore; Turbine Services, Limited; US Navy;
19   Wright Patterson Air Force Base.
20   Q   Now, sir, that listing that you just read off,
21      that represents a substantial number of
22      customers that you consider your customers; do
23      you not?
24          MR. CUPAR:        Objection.
25      Vague as to substantial.

22

1    Q   Are those your customers?
2    A   Yes.
3    Q   And were those your father's customers at
4       Midwest Metals when you worked there?
5           MR. CUPAR:        Objection.
6       Vague as to timeframe.  Answer only if you
7       know.  And what timeframe are you talking about
8       here?
9           MR. DRAIN:        When he
10      worked there.
11          MR. CUPAR:        Objection.
12      Vague.
13   Q   Are you able to answer the question?
14   A   No.  I don't know.  I don't know.
15   Q   Were those your father's customers?
16          MR. CUPAR:        Objection.
17      Asked and answered.
18          MR. DRAIN:        It hasn't
19      been answered yet.
20   Q   Have you answered the question, sir?
21          MR. CUPAR:        He said "I
22      don't know."
23   Q   Okay.  Did Midwest Metals ever do business with
24      any of those companies during the time you
25      worked there?

23

1           MR. CUPAR:        Objection.
2       Vague.
3    Q   Are you going to answer the question?
4           MR. CUPAR:        He answered
5       the question.  It's the same one.
6           MR. DRAIN:        No, he
7       didn't.
8    Q   Did Midwest Metals ever do business with those
9       customers while you worked there?
10   A   I don't know.
11   Q   Did you ever take any of those customers for
12      your own account?
13   A   No.
14   Q   And your answer is no.
15          Did you develop those customers on your
16      own, each and every one of them?
17          MR. CUPAR:        Objection.
18      Vague as to develop.
19   Q   Did you develop those customers on your own,
20      each and every one?  Are you going to answer
21      that?
22          MR. CUPAR:        Objection.
23      Who are you talking about, you as in the
24      company or you as individually or someone else?
25          MR. DRAIN:        Yes.  Okay.

24

1    A   I have employees.
2           MR. DRAIN:        My reference
3       is vague.
4           MR. CUPAR:        Yes.
5    Q   When I say you, sir, I mean All Metal Sales,
6       Inc.  Did All Metal Sales, Inc. develop those
7       customers --
8    A   Yes.
9    Q   -- on its own?
10          Each and every one?
11   A   Yes.
12   Q   Is it true, sir, that some of those customers
13      were taken by you from Midwest Metals, Inc.?
14          MR. CUPAR:        Objection.
15      Mischaracterization of his testimony.  Vague.
16   Q   Let me ask the question in reference to All
17      Metal Sales, Inc.  Did All Metal Sales, Inc.
18      take those customers for its own account from
19      Midwest Metals, Inc.?
20          MR. CUPAR:        Same
21      objection.
22   Q   What's your answer?
23   A   No.
24   Q   Sir, how far did you go in school?
25   A   College.

6 (Pages 21 to 24)

<table>
<tr><td>

25

1  Q  Did you graduate from high school?

2  A  Yes.

3  Q  What high school?

4  A  Ohio Military Academy.

5  Q  And what year?

6  A  '87.

7  Q  Did you get a diploma?

8  A  Yes.

9  Q  And did you then go to a school of higher

10    learning after Ohio Military Academy?

</td></tr>
</table>

1 Q Did you graduate from high school?
2 A Yes.
3 Q What high school?
4 A Ohio Military Academy.
5 Q And what year?
6 A '87.
7 Q Did you get a diploma?
8 A Yes.
9 Q And did you then go to a school of higher
10    learning after Ohio Military Academy?
11 A Yes.
12 Q What was the name of that one?
13 A Bowling Green State University.
14 Q And did you graduate from Bowling Green?
15 A No.
16 Q For how many years did you attend Bowling
17    Green?
18 A One and a half.
19 Q Did you then go on at any time to another
20    school or university?
21 A No.
22 Q Do you have any education at an institution of
23    higher learning beyond the one and a half years
24    at Bowling Green State University?
25 A No.

1 Q What year did you leave Bowling Green State
2    University, if you recall?
3 A 1989.
4 Q And did you then become employed in some
5    capacity after leaving Bowling Green in 1989?
6 A Yes.
7 Q Where was the first job?
8 A Rex Yacht Sales.
9 Q Where was that?
10 A Ft. Lauderdale, Florida.
11 Q And what did you do for them?
12 A I was a mate on a yacht.
13 Q And for how long a period of time did you work
14    for them?
15 A Maybe approximately six months.
16 Q And why did you leave that employment?
17 A To start a company.
18 Q Did you in fact start a company?
19 A Yes, I did.
20 Q What was that? What was that company?
21 A Precision Marine Appearance, Incorporated.
22 Q Where was that company incorporated?
23 A Ohio.
24 Q In what year?
25 A I don't know.

1 Q What was the principal business of that
2    company?
3 A Maintaining boats.
4 Q Did that company have any sales?
5 A Yes.
6 Q Was there a time when that company went out of
7    business?
8       MR. CUPAR:        Objection.
9    Vague.
10 Q Is the company still in business now?
11 A No.
12 Q Then it must have gone out of business,
13    correct?
14 A No.
15       MR. CUPAR:        Objection.
16 Q Is the company in business now?
17 A No.
18       MR. CUPAR:        Mr. Drain, be
19    nice here. Let's relax.
20 Q Under what circumstances did it go out of
21    business?
22 A Who said it went out of business?
23       MR. CUPAR:        Objection.
24    Calls for facts not in evidence.
25 Q Was there an incident that caused that company

1    to go out of business, sir?
2       MR. CUPAR:        Objection.
3 Q Was there a time when you stopped working for
4    that company?
5 A Yes.
6 Q When?
7 A When I came to work for Midwest Metals and I
8    sold the other business.
9 Q You sold the business to whom?
10 A Bill.
11 Q You sold the business to Bill?
12 A Yes.
13 Q Does Bill have a last name?
14 A I'm trying to think of it now. It was a long
15    time ago.
16 Q Do you remember what year?
17 A 1996.
18 Q And then I believe you said in 1996 you went to
19    work for Midwest Metals. Is that accurate?
20 A Yes.
21 Q So did you work continuously for Midwest Metals
22    from 1996 through June 12th, 1999?
23 A I was on the payroll during that time.
24 Q On the payroll. Is that different from
25    working?

29

1  A   I was employed by Midwest Metals during that
2      time.
3  Q   Continuously?
4  A   I received a paycheck during that time.
5  Q   Did you work for any other companies during
6      that three-year period?
7  A   Not that I recall.
8  Q   And when you were on the payroll, was that
9      full-time employment?
10 A   Please give me some more details, what you're
11     looking for.
12 Q   Did you work at least 40 hours a week for
13     Midwest Metals, Inc. during that three-year
14     period?
15 A   I have no idea.  I wasn't required to.  It
16     wasn't in my contract.
17 Q   Did you have a contract?
18 A   I did have a contract, yes.
19 Q   Did you have a three-year contract or something
20     less than that?
21 A   There was no time specified on the contract.
22 Q   Was the contract in writing?
23 A   Yes.
24 Q   Do you have a copy of it?
25 A   Doubt it.

30

1  Q   Now, sir, directing your attention to All Metal
2      Sales, Inc. which you incorporated in 1999, did
3      there come a time when you tried to obtain a
4      trademark registration for that company either
5      with the State of Ohio or with the Federal
6      Government?
7          MR. CUPAR:        At any point
8      in time?  Just so I'm clear on that.
9          MR. DRAIN:        Yes, at any
10     point in time.
11 A   Yes.
12 Q   Can you explain or tell us what you did in that
13     regard, took trademark with Ohio or the Federal
14     Government?
15 A   I came to Downtown Cleveland and went to the
16     license bureau I believe, obtained a vendor's
17     license and I incorporated the business through
18     McDonald Hopkins, using them as my attorney to
19     go to the State of Ohio and incorporate the
20     business through the State of Ohio.
21 Q   And that was in 1999, correct?
22 A   Correct.
23 Q   All right.  Did there come a time when you
24     attempted to obtain trademark registration for
25     your business All Metal Sales, Inc. with the

31

1      State of Ohio or the Federal Government?
2          MR. CUPAR:        Again,
3      objection as to timeframe.  Which timeframe?
4  Q   Was there a time that you tried to get a
5      trademark, sir?
6  A   Yes.
7  Q   When was that, if you know?
8  A   I don't know.
9  Q   Was it in 1999?
10 A   I don't know when it was.
11 Q   Was it recently?
12 A   I don't know.
13 Q   Do you have a trademark registration with the
14     U.S. Patent and Trademark Office?  When I say
15     you, I mean All Metal Sales, Inc.
16 A   A registration?
17 Q   Yes, sir.
18 A   No.
19 Q   Have you made application for a trademark
20     registration?
21 A   Yes.
22 Q   And did you apply for registration with the
23     State of Ohio for a trademark?
24 A   I believe the U.S. Government.
25 Q   What about the State of Ohio?

32

1  A   I have a trademark with the State of Ohio with
2      my company and my logo.  I've had that since
3      1999.
4  Q   A trademark?
5  A   A trademark, yes, since 1999.
6  Q   Is it registered in the records of the State of
7      Ohio, if you know?
8  A   Yes.  My company is registered with the State
9      of Ohio as of 1999.
10 Q   What about the trademark?
11 A   I have a trademark when I started my company in
12     1999.
13 Q   And how would you describe the trademark, sir?
14     Is it just the letter A or is it the name All
15     Metal Sales, Inc.?
16         MR. CUPAR:        Objection.
17     That's vague and it calls for a legal
18     conclusion.
19 Q   Do you know?  What does the trademark consist
20     of?
21         MR. CUPAR:        Are you
22     asking a legal question there?  I'm not sure
23     what you're asking.
24 Q   You're president of your company.  Do you know
25     if you have a trademark?

8 (Pages 29 to 32)

33

1  A  Yes, I do.
2  Q  And are you able to describe the trademark?
3        MR. CUPAR:        Objection.
4    Trademark or trademarks? Which one?
5  Q  Are you able to describe your trademark with
6    the State of Ohio, the one you just testified
7    to?
8  A  Yes.
9        MR. CUPAR:        Object. Hold
10    on. Objection. He identified trademarks and
11    you keep asking about a trademark. Are you
12    asking about a specific one or both or what?
13        MR. DRAIN:        I'm asking
14    about the trademark that he says he has
15    registered with the State of Ohio and I'm
16    asking him to describe it.
17        MR. CUPAR:        Objection.
18    He identified two, so I think he's asking for
19    both, but I'm not sure what he's asking, just
20    so you know.
21  BY MR. DRAIN:
22  Q  How many trademarks do you have, sir?
23  A  I don't know the answer.
24  Q  So you don't know if you have a trademark
25    basically?

34

1  A  No. I do know I have a trademark.
2  Q  Okay. If you have a trademark, can you
3    describe the trademark?
4  A  All Metal Sales, Incorporated, my logo as you
5    see it presented in front of you, my logo and
6    the name All Metal Sales, Incorporated, which
7    I've had since 1999 with the State of Ohio.
8  Q  With the State of Ohio?
9  A  Correct.
10  Q  Do you have that same trademark with the U.S.
11    Patent and Trademark Office?
12  A  Yes.
13  Q  You do. So if one went to the U.S. Patent and
14    Trademark Office and looked under All Metal
15    Sales, Inc., one would see that All Metal
16    Sales, Inc. is trademarked with the U.S. Patent
17    and Trademark Office. Is that your testimony?
18  A  There is a trademark pending from the U.S.
19    Patent Office. I do have one with the State of
20    Ohio since 1999.
21  Q  Yes, I heard that testimony, but now I'm asking
22    about the Federal Government, the U.S. Patent
23    and Trademark Office, asking if All Metal
24    Sales, Inc. and the logo that you just pointed
25    to is registered with the U.S. Patent and

35

1    Trademark Office.
2        MR. CUPAR:        Objection.
3    Asked and answered. Badgering.
4  Q  And your answer is the patent application is
5    pending; is that right, sir?
6        MS. HAYNES:        Could you
7    repeat the question?
8  Q  Yes. If one were to go to the U.S. Patent and
9    Trademark Office, sir, would one find a
10    trademark application pending for All Metal
11    Sales, Inc.?
12  A  I believe so.
13  Q  Now, your business, All Metal Sales, Inc., can
14    you describe the nature of the business,
15    please?
16  A  Global metal distributor of every size, type
17    and form.
18  Q  All right. So we can agree that it's not a
19    local company, that you're selling globally;
20    are you not?
21  A  Correct.
22  Q  Now, if one were to look at the scope of other
23    businesses with the name or the phrase All
24    Metal in them, one would find a number of
25    companies in existence at this time, wouldn't

36

1    they? True?
2        MR. CUPAR:        Objection.
3    Vague.
4  Q  Let me rephrase. Do you know of other
5    companies with the name or the phrase All Metal
6    in them, sir?
7  A  Yes.
8  Q  And can you estimate how many other companies
9    there might be?
10        MR. CUPAR:        Objection.
11    Vague as to estimate.
12  Q  Are you able to estimate the number of other
13    companies?
14        MR. CUPAR:        Objection.
15    Same objection.
16  Q  What's your answer? Yes or no. You aren't
17    able to estimate or you are able to estimate?
18        MR. CUPAR:        Objection.
19  Q  Do you have an answer, sir?
20        MR. CUPAR:        Same
21    objection.
22  Q  Even though there's an objection, you can
23    answer if you're able to. Are you able to
24    answer yes are no?
25        MR. CUPAR:        Hold on.

9 (Pages 33 to 36)

37

1   Mr. Drain, let him think. You're asking him a
2   question. He needs to think. Relax. He'll
3   answer it.
4           MR. DRAIN:          Well, I'll
5   give him time to think then.
6           MR. CUPAR:          Okay.
7   A   No, I'm not able to estimate.
8   Q   Now, do you know what CCR is?
9   A   No.
10  Q   Do you know that there's a requirement to
11      register as a CCR in order to do business with
12      the Federal Government?
13  A   Are you referring to a CAGE code?
14  Q   I'm referring to --
15  A   Not an acronysm (sic)? The proper terminology
16      for that -- I would like it if you don't speak
17      in acronyms.
18  Q   I appreciate that. I don't like acronyms
19      either. Thank you.
20      So we're referring to the Central
21      Contractor Registration. Are you familiar with
22      that registration, sir?
23  A   Is another name for that the CAGE code?
24  Q   I don't know. I'm just asking you if you're
25      familiar with the Central Contractor

38

1   Registration.
2           MR. CUPAR:          Objection.
3   Vague.
4   Q   Would the answer be yes or would the answer be
5   no?
6   A   Are you referring to a CAGE code? If you're
7       going to ask me the question, be knowledgeable
8       about it. Is it the CAGE code or not?
9   Q   Do you do business with the Federal Government?
10  A   Yes, I do.
11  Q   And is there a requirement to register with the
12      Federal Government?
13  A   Yes; to have a CAGE code, there is.
14  Q   All right.
15  A   And I have one.
16  Q   Now, do you know if there are other companies
17      that have such a code that do business with the
18      Federal Government whose companies are named
19      All Metals or have the phrase All Metals in
20      them?
21          MR. CUPAR:          Hold on.
22      Objection only to the extent you know about
23      third parties and what they're doing.
24  A   I don't know what they're doing.
25  Q   Do you know?

39

1   A   No.
2   Q   All right. I'm going to hand you a document.
3       I ask you to identify it.
4           MR. DRAIN:          Mark this,
5       please, as Defendant's Exhibit 2.
6           - - - - -
7       (Defendant's Exhibit No. 2 was marked.)
8           - - - - -
9           MR. CUPAR:          Do you have a
10      copy for me?
11          MR. DRAIN:          I'm sorry. I
12      don't. I can make copies, but I don't have
13      another copy.
14          MR. CUPAR:          You're
15      supposed to bring one by local rule.
16      Let me see it. You can't talk to me.
17      What's the pending question?
18  BY MR. DRAIN:
19  Q   Are you able to identify that document, sir?
20          MR. CUPAR:          Have you ever
21      seen it before I guess.
22  A   I've never seen it before.
23  Q   Does it refresh your recollection as to the
24      CAGE code or registration of other companies
25      designated with the name All Metals or having

40

1   the phrase All Metal in their name?
2           MR. CUPAR:          Objection as
3   he's never seen the document before.
4           MR. DRAIN:          I'm asking if
5   it refreshes his recollection.
6   Q   Does it, sir, or does it not?
7   A   What's the question?
8   Q   Does it refresh your recollection?
9           MR. CUPAR:          As to what?
10  A   I've never seen this document before. How can
11      it refresh my recollection if I've never seen
12      it before.
13  Q   Well, that's what documents can do, sir.
14          MR. CUPAR:          Object.
15  A   I've never seen this document.
16  Q   So you don't know basically is what you're
17      saying?
18  A   I've never seen this document.
19  Q   Now, has All Metal Sales or you individually
20      ever been sued before, sir?
21  A   I've been sued?
22  Q   Yes. Have you been sued?
23  A   Yes.
24  Q   In what instance or what case, if you recall?
25  A   I believe you had a document earlier with the

10 (Pages 37 to 40)

41

1    Clifton Park Trustees.
2  Q  So that's one. What was that suit about?
3  A  A patio.
4  Q  What about a patio? What was the issue?
5  A  When I purchased the land, there was a wood
6     deck in the front of my house on common ground
7     property that we were asked to maintain in
8     exchange for a use of that land, and I tore out
9     a dilapidated deck, it was caving in, and
10    replaced it with brick pavers.
11        And per the association's request,
12    demands that you cannot improve upon the land,
13    you can only maintain it, and by putting brick
14    pavers down was considered an improvement, and
15    I couldn't -- there were rotten boards that no
16    one had maintained for many years, so I chose
17    to put down pavers that could be removed and
18    replaced if need be, and that's what the
19    lawsuit was over.
20 Q  I see. Any other suits that you've been
21    involved with?
22 A  The Clifton Lagoon Association.
23 Q  Is that the same suit or a different suit?
24 A  I'm guessing from what you're telling me that
25    from -- from earlier, that it's a different

42

1     one. The Clifton Park, Clifton Lagoon, the
2     Clifton Land Trustee, I wasn't familiar with
3     the exact language they used for their official
4     name, but the Clifton Lagoon Association and I
5     have been in a lawsuit which is now over for
6     several years regarding my driveway. The color
7     of my driveway to be more specific.
8  Q  So that suit is closed; is it not?
9  A  That is closed.
10 Q  Any other lawsuits?
11 A  Not that I'm aware of.
12 Q  Were you involved in the case of McCarthy
13    versus All Metal Sales, Inc., a case pending in
14    U.S. District Court in 2010?
15 A  Oh, that's -- yes.
16 Q  What was that case about?
17 A  Hours and wages.
18 Q  What was the issue there?
19        MR. CUPAR:        Objection.
20    Asked and answered.
21 Q  Well, let me be more specific, sir. Was there
22    an allegation that your company violated the
23    Fair Labor Standards Act?
24        MR. CUPAR:        Objection.
25    Misrepresents that case.

43

1  Q  So the answer's no?
2        MR. CUPAR:        He didn't
3     answer yet.
4  A  Can you ask the question?
5  Q  Yes. The question was was there an allegation
6     that your company, All Metal Sales, Inc.,
7     violated the Fair Labor Standards Act.
8        MR. CUPAR:        Objection.
9     Calls for a legal conclusion. Answer only if
10    you know.
11 A  I don't know.
12 Q  What about the case Tausch versus All Metal
13    Sales, Inc.? Do you recall that case?
14 A  I do.
15 Q  What was that case about?
16 A  What was the case about? That's the question?
17 Q  Yes, sir.
18 A  In a nutshell, it was about somebody that I had
19    that believed felt they were going to be fired,
20    so they used whatever way they could to save
21    their job and be protected under the federal
22    guidelines.
23 Q  Was there an allegation of sexual harassment
24    there?
25 A  No, absolutely not.

44

1  Q  Was there an allegation of discrimination of
2     any kind?
3        MR. CUPAR:        Objection to
4     the extent it calls for a legal conclusion.
5  Q  You may answer.
6        MR. CUPAR:        Answer if you
7     know.
8  A  No.
9  Q  There was no allegation of discrimination in
10    that case to your knowledge?
11        MR. CUPAR:        Objection.
12    Asked and answered.
13 Q  Do you have an answer, sir?
14 A  No.
15 Q  Are you familiar with the case of All Metal
16    Sales, Inc. versus All Met Enterprises?
17 A  Yes.
18 Q  What was that case about?
19 A  That was about a vendor in London that stole a
20    couple hundred thousand dollars from me and
21    eventually returned the money.
22 Q  All right. Now, that case is closed; is it
23    not?
24 A  He paid me. Daniel paid me 100 percent of the
25    money.

11 (Pages 41 to 44)

45

1  Q  All right.  So your company sued him; is that
2      right?
3  A  Yes.
4  Q  Or sued his company?
5  A  Yes.
6  Q  And what about the case of All Metal Sales,
7      Inc. versus MBM Tool and Machine Company,
8      Limited?  What was that case about?
9  A  They're one of my customers.  They're located
10     in Canada and they owed me a lot of money.
11 Q  How was that case concluded?
12 A  They paid me every penny they owed me,
13     100 percent of it.
14 Q  Do you recall being involved in the case of
15     Corcoran Tile and Marble versus DLA Services,
16     LLC?
17 A  DLA and Corcoran Tile, DLA was my construction
18     manager and Corcoran Tile did tile work at my
19     residence.
20 Q  And what was the case about?  What was the
21     issue?
22 A  Faulty workmanship.
23 Q  Is that case concluded?
24 A  Yes, it is.  They fixed everything.
25 Q  Do you recall the case of Bradford Products,

46

1      LLC versus Thomas G. Klocker?
2  A  Yes.  They fixed everything.
3  Q  I'm sorry.  Let me ask the question, finish the
4      question first, sir.
5          MR. CUPAR:        Just hold on.
6  Q  What was the case about, if you know?
7  A  Did not supply a list of materials that were
8      per the quote in negotiations.
9  Q  Who did not supply that?
10 A  Bradford Products did not supply all of the
11     materials that were on the quote.
12 Q  Now, they sued you.  Why did they sue you?
13 A  Because I didn't pay them their retainage, the
14     retainage that I held against their contract
15     until I got my goods.  When I got my goods, I
16     paid them.  It's clear.
17 Q  And then the case was closed?
18 A  Closed.
19 Q  Now, there's a case of Thomas G. Klocker versus
20     Robert Zeiger.  Are you familiar with that
21     case, sir?
22 A  Yes.
23 Q  What was that case about?
24 A  Robert Zeiger was the president of the
25     association where I live, Clifton Lagoon Trust.

47

1      Bob is the president.  Bob was named when I
2      sued the Clifton Lagoon Trust.  He was also
3      named as a party in that lawsuit.
4  Q  Now, do you have any outstanding judgment liens
5      or unpaid taxes at this time, sir, either you
6      individually or your company?
7  A  My company does not, but I'm fighting with the
8      state right now over me overpaying taxes for
9      one year and the state is owed for another
10     year, so my CPA is handling so that they almost
11     balance each other out almost within $1,000.
12         MR. CUPAR:        Hold on.
13     Before you go any further, let's take a break.
14     Five minutes?
15         MR. DRAIN:        Sure.
16         (Short break taken.)
17 BY MR. DRAIN:
18 Q  You recall, Mr. Klocker, that you're still
19     under oath.  We're back on the record after a
20     break.
21     I was asking you about a judgment lien
22     filed in Cuyahoga County by the State of Ohio,
23     Department of Taxation in the amount of
24     $171,239.11.  Are you familiar with that
25     judgment entry?

48

1  A  Yes.
2  Q  And is that the tax dispute that you testified
3      to a minute ago --
4  A  No.
5  Q  -- regarding your account and clearing
6      something up?
7  A  No.
8  Q  What is the nature of that judgment lien?
9  A  The one -- which one are you referring to?
10     This one that you have in your hand right
11     there?
12 Q  Yes, sir.
13 A  The 171,000?
14 Q  Yes, sir.
15 A  A use tax issue.
16 Q  Oh, a use tax issue?
17 A  Yes.
18 Q  Can you tell us what the dispute is about?
19 A  One has been resolved 100 percent which you're
20     probably aware of.  A use tax is for using Ohio
21     waterways for the way it applied to me.  It's a
22     use tax.
23 Q  I'm not clear.  Can you clarify that, explain
24     that a little better?
25         MR. CUPAR:        Objection.  I

49

1    mean what --
2    Q   Why did the State of Ohio put a judgment
3        against you for $171,239.11?
4    A   Because we had a disagreement on whether or not
5        it was appropriate for me, selective
6        prosecution.
7    Q   So the State of Ohio selectively prosecuted you
8        for use tax; is that it?
9    A   That is correct.
10   Q   And arising out of what transaction or
11       occurrence or circumstance, if you know?
12           MR. CUPAR:        Objection.
13       Vague.
14   Q   Do you know?
15   A   Can you rephrase the question?
16   Q   Why did the State of Ohio come after you
17       selectively?
18   A   For a purchase I made.
19   Q   A purchase of what?
20   A   A boat.
21   Q   How much was the boat?  How much did the boat
22       cost?
23           MR. CUPAR:        Objection.
24       Irrelevant.  Relevance.  And is this about the
25       company or him personally?  Just so I'm clear

50

1        what you're asking about.
2            MR. DRAIN:         Oh, this is
3        about him personally.
4            MR. CUPAR:        Okay.
5        Objection to relevance then.
6    Q   So you personally bought a boat and the State
7        of Ohio came after you to impose a use tax; is
8        that correct, sir?
9    A   No.
10   Q   What is correct?
11   A   Nothing what you just said.
12   Q   Well, then help me out here.  Why did the State
13       of Ohio come after you for a use tax?
14   A   For selective prosecution.
15   Q   Right.  That's a conclusory statement.  So why
16       did the State of Ohio come after you for a use
17       tax?  Did you do something?
18           MR. CUPAR:        Objection.
19       Calls for speculation.  If you know why the
20       State of Ohio went after you, if you're the
21       State of Ohio, you can answer it, otherwise --
22   A   I'm not the State of Ohio.
23   Q   Are you current in your taxes on Beach Road,
24       sir?
25   A   Yes.

51

1    Q   On your real estate taxes?
2    A   As far as I know.
3    Q   If the records show that there's a delinquency
4        there, would that be accurate?
5    A   I have no idea.
6    Q   All right.  So you --
7    A   My CPA pays a lot of my stuff.  I've been out
8        of the country for a lot in the last several
9        weeks and they take care of my taxes.
10           MR. CUPAR:        Mr. Klocker,
11       make sure you just answer the question in front
12       of you.
13           THE WITNESS:        Sure.  Sure.
14   Q   Does the company All Metal Sales, Inc. have any
15       long-term liabilities?
16           MR. CUPAR:        Objection.
17       Vague.
18   Q   Do you know?
19   A   What's your question?
20   Q   Does the company All Metal Sales, Inc. have any
21       long-term liabilities?
22   A   Can you be more clear?
23   Q   Yes.  If you were to refer to your financial
24       statements that your CPA prepares, there's a
25       line item on them for long-term liabilities.

52

1        Do you know if the company All Metal Sales,
2        Inc. has any long-term liabilities?
3    A   None.
4            MR. CUPAR:        Hold on.
5        Objection, and I'm going to put this deposition
6        transcript under Attorneys' Eyes Only,
7        Confidential.
8            MR. DRAIN:         Why are you
9        doing that?
10           MR. CUPAR:        Because
11       you're asking about specific financial
12       information about his business.  It's trade
13       secret.
14           MR. DRAIN:         Well, nothing
15       prejudicial if he doesn't have any long-term
16       liabilities.  He just answered he doesn't have
17       any.
18           MR. CUPAR:        Yes, but
19       you're going in a route where I think you're
20       going to ask further question, and I'm also
21       going to ask your client to leave the room if
22       you continue with these questions.
23   BY MR. DRAIN:
24   Q   Now, All Metal Sales, Inc., is it under water
25       at the present time?

13 (Pages 49 to 52)

53

1         MR. CUPAR:       Objection.
2 Q  What's your answer?
3 A  No.
4 Q  How many cars does All Metal Sales, Inc. own?
5       Do you want me to repeat the question?
6 A  Yes.
7 Q  How many cars does All Metal Sales, Inc. own?
8         MR. CUPAR:       Objection.
9   Relevance.
10 Q  You may answer.
11 A  I'm not sure.
12 Q  Does it own one?
13 A  I'm not sure.
14 Q  Could it own more than one?
15 A  It could.
16 Q  But you don't know?
17 A  No.
18 Q  I see. How many cars do you own?
19         MR. CUPAR:       Objection.
20   Relevance. This is a trademark dispute.
21 Q  Do you have an answer?
22 A  I don't know.
23 Q  All right. You don't know how many cars the
24   company owns and you don't know how many cars
25   you own. Are those your answers?

54

1         MR. CUPAR:      Tom, if you
2   know, you can answer. Go ahead.
3 A  I don't know which ones are in what names.
4 Q  Do you or your company own a Rolls-Royce?
5 A  No.
6 Q  Do you or your company own a Bentley?
7         MR. CUPAR:       Objection.
8   Relevance.
9 Q  Do you want me to repeat the question?
10 A  Sure.
11 Q  Do you or your company own a Bentley?
12 A  No.
13 Q  Do you or your company own an Escalade?
14 A  No.
15 Q  What kind of car do you drive, sir?
16         MR. CUPAR:       Objection.
17   Relevance. I'm going to have to stop you here.
18   Why are you asking about his cars personally?
19   What's the point of this to this dispute? I'd
20   love to know that.
21         MR. DRAIN:      Okay. I'll
22   withdraw that line of questioning.
23 Q  Sir, do you recall having a conversation on the
24   phone with your father, Thomas Paul Klocker, on
25   or about September 17th, 2009 in which you told

55

1   Mr. Klocker, your father, that you were going
2   to make sure that the defendant, All Metal
3   Source, spent all of its money and would go out
4   of business? Do you remember having such
5   conversation?
6         MR. CUPAR:       Objection.
7 A  No.
8 Q  Did you ever say in that conversation or
9   otherwise that you did not want the defendant
10   All Metal Source, LLC to be in business at all?
11         MR. CUPAR:       Objection.
12   Hearsay.
13 A  Incorrect.
14 Q  What is correct?
15         MR. CUPAR:       Same
16   objection.
17 Q  What's your answer, sir?
18 A  As long as the name wasn't replicating, copying
19   my name, I was fine with whatever Jessica
20   Esparza did, but I did not want her copying my
21   name.
22 Q  I see.
23 A  And I specifically stated that if he was okay
24   with it, why doesn't she take his company's
25   name.

56

1 Q  So to the question as to whether you were going
2   to crush the defendant and put her out of
3   business, what is your answer? Did you ever
4   make such a statement, sir?
5         MR. CUPAR:      Hold on,
6   Elaine. Let me put my objections in.
7   Objection. Misleading. Objection. Vague.
8   Objection. Asked and answered.
9 Q  What's your answer, sir?
10 A  No.
11         MR. CUPAR:      And
12   objection, hearsay, too.
13 Q  So did you ever make a statement that you were
14   going to spend all of your money to make sure
15   that All Metal Source goes out of business?
16 A  No.
17         MR. CUPAR:       Objection.
18   Asked and answered. Hearsay. Same objections.
19   You can answer.
20 A  No. Nope.
21 Q  Now, are you familiar with a U.S. Navy
22   procurement person by the name of Garcia
23   Coolidge?
24 A  Are you sure you have her name correct?
25 Q  Well, I believe I do.

57

1      MR. CUPAR:    Mr. Klocker,
2  just answer the question.
3  A  Yes.
4  Q  And to your knowledge, had this person whom
5    I've identified as Ms. Garcia Coolidge
6    mistakenly called the defendant All Metal
7    Source, LLC when it was trying to contact your
8    company?  Do you have knowledge of such an
9    event?
10  A  Yes, I do.
11  Q  What is your understanding as to what happened
12    there?
13  A  Mrs. Coolidge, a purchasing agent for the U.S.
14    Navy, made repeated attempts to contact my
15    salesman via e-mail and via phone calls to
16    Jessica Esparza's company, All Metal Source.
17    Mrs. Coolidge asked Jessica on numerous
18    occasions, "I'd like to speak with Jim.  He
19    provided me a quote."  Jessica was given
20    numerous opportunities to say "That is not" --
21    "I don't have any employees, that you're
22    mistaking and confusing my business with
23    somebody else's business."
24    Mrs. Coolidge contacted our company and
25    said, "I'm confused.  What's going on here?  I

58

1    have a quote from your company, All Metal
2    Sales, Incorporated, from your salesman who
3    I've worked with in the past, Jim, and I'd like
4    to purchase this material, but I'm speaking to
5    someone that's very rude to me at All Metal
6    Source and I'm very confused at what's going on
7    here."
8    And she finally got in touch with the
9    proper company that quoted her, which she had
10    the quote, said Jessica had asked for her to
11    either e-mail or fax over the quote so she
12    could see what it was.
13    And then my employees told me about this
14    and I contacted the U.S. Navy, spoke with
15    Mrs. Coolidge about this issue and said, "I'm
16    sorry.  We'd be happy to sell this material to
17    you.  You know, I don't understand the confusion.
18    I didn't know about this.  I'm sorry about the
19    confusion.  That's not the customer service
20    that you're used to dealing with my company,"
21    and that's it.
22  Q  So apparently this person whom you refer to as
23    Ms. Coolidge was confused about which company
24    she was dealing with.  Is that true to your
25    understanding?

59

1  A  Yes.
2  Q  Now, you're familiar with the defendant All
3    Metal Source, LLC also known as A Metal Source,
4    LLC; are you not?
5  A  Yes.
6  Q  In fact, that's the defendant in this lawsuit;
7    is it not?
8  A  Correct.
9  Q  And do you know, other than Ms. Coolidge's act
10    of confusion, of other instances in which
11    procurement people or purchasing agents or
12    other companies have been confused between your
13    company and the defendant's company?
14  A  Yes.
15  Q  Could you elaborate on that?  Can you tell us
16    the specific instances of confusion?
17  A  Sure.  We have received numerous quotes from
18    our vendors that will have All Metal Source,
19    Jessica's company, listed with our toll free
20    numbers listed.  They'll have mismatched
21    address, phone numbers and names, and quotes
22    will come over for things that we did not
23    solicit pricing for.  A company called Elgiloy.
24  Q  Spell that, please.
25  A  E-l-i-g-a-l-y (sic) or o-l-y, Elgiloy.  They're

60

1    in Illinois.  It's for some hastelloy foil
2    which we contacted Elgiloy, explained this is
3    not our company and, you know, get in touch
4    with Jessica, but we didn't solicit this quote.
5    We've had numerous customers and
6    potential customers send us over requests for
7    quotes with either Jessica's name on it or her
8    company's name with our toll free number, and
9    those I believe -- I don't know if you've seen
10    them or not, but we have them.  We have copies
11    of multiple ones and --
12  Q  All right.  So if I understand your testimony
13    correctly, your company, All Metal Sales, Inc.,
14    has been in receipt of numerous quotes or
15    solicitations for quotes that your company
16    actually didn't solicit; is that correct?
17  A  Quotes.
18  Q  Quotes.
19  A  And we fax them back and say wrong company,
20    send them right back.
21  Q  All right.  And you said there were numerous
22    quotes.  Can you tell us how many quotes would
23    fit into that category?
24  A  Don't have an exact number.  It's happened on
25    and off for the last, I don't know, year plus.

15 (Pages 57 to 60)

61

1  Q  All right.  And you indicated that there are
2      writings that reflect these numerous quotes.
3      Do you have such writings?
4  A  Yes.
5  Q  Are they located here today or are they at your
6      principal place of business?
7  A  They have been scanned and e-mailed to my
8      attorney.
9  Q  All right.  Does your attorney have possession
10     of these quotes that you just referred to?
11             MR. CUPAR:        Objection.
12  Q  If you know.
13             MR. CUPAR:        If you know.
14  A  Should have, but I don't know.  I would hope
15     so.
16  Q  You e-mailed those to your attorney; is that
17     correct?
18  A  Correct.
19  Q  And what number are we talking about?  How
20     many, if you know?
21  A  You asked me that a couple minutes ago and I
22     said I don't know.  Numerous.
23  Q  All right.  So these were quotes that came your
24     way.  What about quotes or solicitations for
25     quotes that might have come to the defendant?

62

1      In other words, somebody was asking for a quote
2      from All Metal Sales, Inc., but instead, it
3      went to All Metal Source or A Metal Source,
4      LLC.  Do you know of any transactions like
5      that?
6  A  Yes.
7  Q  How many?
8  A  One specifically for sure because you just
9      asked me about it, a Mrs. Coolidge from the
10     U.S. Navy for sure.
11  Q  Okay.  Do you know of any others?
12  A  No.
13  Q  All right.  So other than the numerous quotes
14     that came your way that weren't solicited by
15     you and the one instance of the U.S. Navy
16     person that solicited defendant's company
17     instead of yours, do you know of any other
18     instances of confusion arising from the names?
19  A  Yes.
20  Q  Tell us about those.
21  A  When my employees and myself have been on the
22     phone with various customers and vendors, they
23     have asked "Which one is this, All Metal Source
24     or All Metal Sales?".  We call to follow up on
25     a quote, we call to follow up with a quote with

63

1      a vendor, with a customer; they've been
2      confused as far as which one and they've
3      rattled off different locations, because
4      Jessica Esparza's company, All Metal Source, is
5      in the same city as mine, in Westlake, Ohio.
6          When they look it up in their database,
7      when they start typing in that A-l-l and Metal,
8      both of our companies come up.  And they ask
9      for "Which location are you at?", and then I --
10     or I and my employees state, "We only have this
11     one location in Westlake.  This is us.  This is
12     somebody that's copying our business."
13         Because they ask, "Where do we send the
14     quote?  Where do we send the purchase order?
15     Where do we send it to?".  And they have both
16     in their database, and that is why we're in a
17     lawsuit today is because of this confusion.
18  Q  Well, aside from the confusion, do you have
19     evidence of lost sales or lost business as a
20     result of any things you just testified to?
21             MR. CUPAR:        Objection.
22     Vague.  Calls for legal conclusion.
23  Q  Do you have an answer to that question, sir, as
24     to whether you've lost any sales?
25             MR. CUPAR:        Same

64

1      objection and answer only if you know.
2  A  I don't know.
3             MR. DRAIN:        Okay.  That
4      concludes my questioning, Mr. Klocker, at this
5      time.  Your attorney will explain your rights
6      so far as your ability to read the transcript
7      of the deposition.
8             THE WITNESS:        Are these
9      documents for me?
10             MR. CUPAR:        We're done.
11             THE WITNESS:        Are these for
12     you?
13             MR. CUPAR:        They're for
14     the court reporter.
15          - - - - -
16         (The deposition concluded at 11:25 a.m.)
17          - - - - -

16 (Pages 61 to 64)

**65**

THE STATE OF OHIO,   )   SS:
COUNTY OF CUYAHOGA.   )

I, Elaine S. Newlin, a Notary Public within
and for the State of Ohio, duly commissioned and
qualified, do hereby certify that THOMAS G. KLOCKER
was first duly sworn to testify the truth, the whole
truth and nothing but the truth in the cause
aforesaid; that the testimony then given by him was
by me reduced to stenotypy in the presence of said
witness, afterwards transcribed on a computer/
printer, and that the foregoing is a true and
correct transcript of the testimony so given by
him as aforesaid.

I do further certify that this deposition was
taken at the time and place in the foregoing caption
specified.  I do further certify that I am not a
relative, counsel or attorney of either party, or
otherwise interested in the event of this action.

IN WITNESS WHEREOF, I have hereunto set my
hand and affixed my seal of office at Cleveland,
Ohio, on this 14th day of September, 2011.

Elaine S. Newlin, Notary Public
Within and for the State of Ohio.
My Commission expires August 22, 2015

**66**

THE STATE OF                _)
                        )   SS:
COUNTY OF _ _ _ _ _ _ _ _ _ _ _)

Before me, a Notary Public in and for said
state and county, personally appeared the above-
named THOMAS G. KLOCKER, who acknowledged that he
did sign the foregoing transcript and that the same
is a true and correct transcript of the testimony so
given.

IN TESTIMONY WHEREOF, I have hereunto affixed
my name and official seal at
this        day of            , 2011.

Thomas G. Klocker

Notary Public

My Commission Expires:   _

en

**67**

DEPOSITION ERRATA SHEET
Page No. ___ Line No. ___ Change to:

Reason for change:
Page No. ___ Line No. ___ Change to:
Reason for change:
Page No. ___ Line No. ___ Change to:

Reason for change:
Page No. ___ Line No. ___ Change to:
Reason for change:
Page No. ___ Line No. ___ Change to:

Reason for change:
Page No. ___ Line No. ___ Change to:
Reason for change:
Page No. ___ Line No. ___ Change to:

Reason for change:
Page No. ___ Line No. ___ Change to:
Reason for change:
Page No. ___ Line No. ___ Change to:

Reason for change:
Page No. ___ Line No. ___ Change to:
Reason for change:
Page No. ___ Line No. ___ Change to:

Reason for change:
Page No. ___ Line No. ___ Change to:
Reason for change:
Page No. ___ Line No. ___ Change to:

Reason for change:

SIGNATURE:                DATE:
            Thomas G. Klocker

**A**

ABB 20:14
ability 64:6
able 7:12 15:20 22:13
 33:2,5 36:12,17,17,23
 36:23 37:7 39:19
about 7:15 8:25 10:18
 16:5 20:4 22:7 23:23
 31:25 32:10 33:11,12
 33:14 34:22 38:8,22
 41:2,4 42:16 43:12,15
 43:16,18 44:18,19
 45:6,8,20 46:6,23
 47:21 48:18 49:24
 50:1,3 52:11,12 54:18
 54:25 58:13,15,18,18
 58:23 61:19,24 62:9
 62:20
above 1:25 66:4
absolutely 43:25
Academy 25:4,10
account 23:12 24:18
 48:5
accounts 17:24,25,25
 18:8,9,13
accurate 28:19 51:4
acknowledged 66:5
acronyms 37:17,18
acronysm 37:15
act 42:23 43:7 59:9
action 65:18
actual 15:17
actually 60:16
address 4:14,22 5:2,5
 9:5,7 12:9 59:21
AEA 20:14
Aero 20:14
Aerojet 20:14
Aerospace 20:18,21,21
 20:23 21:2,6,9,13,15
 21:15
affixed 65:20 66:9
aforesaid 65:8,13
after 25:10 26:5 47:19
 49:16 50:7,13,16,20
afterwards 65:10
Again 31:2
against 6:20 46:14 49:3
age 4:2
agent 57:13
agents 59:11
ago 11:16 17:4 28:15

48:3 61:21
agree 35:18
ahead 54:2
Air 21:19
Aircraft 20:25
Airfoils 21:5
Alamos 20:17
ALCOA 20:15
Alison 4:17
allegation 42:22 43:5
 43:23 44:1,9
almost 47:10,11
amount 13:24 47:23
another 6:5 25:19
 37:23 39:13 47:9
answer 6:9,24 7:24,25
 18:3,6,15 22:6,13
 23:3,14,20 24:22
 33:23 35:4 36:16,19
 36:23,24 37:3 38:4,4
 43:3,9 44:5,6,13
 50:21 51:11 53:2,10
 53:21 54:2 55:17 56:3
 56:9,19 57:2 63:23
 64:1
answered 7:16 13:22
 22:17,19,20 23:4 35:3
 42:20 44:12 52:16
 56:8,18
answers 7:23 53:25
answer's 43:1
anything 15:23
apparently 58:22
Appearance 26:21
APPEARANCES 2:1
appeared 66:4
appears 7:9
application 31:19 35:4
 35:10
applied 48:21
apply 31:22
appreciate 37:18
approached 17:6
appropriate 49:5
approximately 11:16
 26:15
Architect 20:15
area 10:2
Argonne 20:15
arising 49:10 62:18
around 18:21 19:24
aside 63:18

asked 7:5 13:22 17:9
 22:17 35:3 41:7 42:20
 44:12 56:8,18 57:17
 58:10 61:21 62:9,23
asking 12:17,21 32:22
 32:23 33:11,12,13,16
 33:18,19 34:21,23
 37:1,24 40:4 47:21
 50:1 52:11 54:18 62:1
association 6:11 41:22
 42:4 46:25
association's 41:11
attempted 30:24
attempts 57:14
attend 25:16
attention 10:11 30:1
attorney 15:18 30:18
 61:8,9,16 64:5 65:17
Attorneys 1:5 52:6
August 1:12 65:25
Avenue 1:23 2:4
Aviation 21:10
avoiding 18:17
aware 42:11 48:20
A-l-l 63:7
a.m 1:24 64:16

**B**

B 2:3 3:4
back 7:5 8:9 16:12
 17:12 47:19 60:19,20
Badgering 35:3
BAE 20:16
Baker 20:16
balance 47:11
Bank 1:22 2:4
Base 21:19
basically 33:25 40:16
Beach 4:15,24 50:23
Beaver 20:21
became 17:25
become 26:4
before 1:18 5:17,22 7:6
 18:7 39:21,22 40:3,10
 40:12,20 47:13 66:3
behalf 2:2,7
being 13:15,16,17
 16:16 45:14
believe 9:18 28:18
 30:16 31:24 35:12
 40:25 56:25 60:9

believed 43:19
Bell 2:9
Bentley 54:6,11
Berkeley 20:19
best 17:6
better 48:24
between 59:12
beyond 25:23
Bill 28:10,11,13
bit 19:1
bitch 17:10,13
Bluefin 20:22
board 8:15 9:23
boards 41:15
boat 49:20,21,21 50:6
boats 27:3
Bob 47:1,1
Boeing 18:23 20:23
 21:17
Bombardier 20:23
both 14:14 33:12,19
 63:8,15
bought 50:6
Bowling 25:13,14,16
 25:24 26:1,5
box 9:10,11,14
Bradford 45:25 46:10
break 17:8 47:13,16,20
brick 5:8 41:10,13
bring 39:15
Brookhaven 20:23
building 1:23 2:4 5:6,7
 5:8 9:6
bureau 30:16
business 5:2,14 8:2 9:2
 9:6,7,17,25 10:7,23
 12:2,10,16,24,25
 22:23 23:8 27:1,7,10
 27:12,16,21,22 28:1,8
 28:9,11 30:17,20,25
 35:13,14 37:11 38:9
 38:17 52:12 55:4,10
 56:3,15 57:22,23 61:6
 63:12,19
businesses 8:22 10:15
 11:22 35:23

**C**

C 1:4 5:3
CAGE 37:13,23 38:6,8
 38:13 39:24
call 6:2 62:24,25

**called** 1:16 4:2 57:6 59:23
**calls** 6:23 27:24 32:17 43:9 44:4 50:19 57:15 63:22
**came** 28:7 30:15 50:7 61:23 62:14
**Canada** 45:10
**Canadair** 20:24
**capacity** 8:11 9:21 11:4 26:5
**Capitol** 20:15
**caption** 65:15
**car** 54:15
**care** 51:9
**cars** 53:4,7,18,23,24 54:18
**case** 1:3 5:24 6:3,4,5,16 6:16 7:3,4,7,7,9,12,15 7:19 40:24 42:12,13 42:16,25 43:12,13,15 43:16 44:10,15,18,22 45:6,8,11,14,20,23,25 46:6,17,19,21,23
**category** 60:23
**Caterpillar** 20:24
**cause** 65:7
**caused** 27:25
**caving** 41:9
**Cavs** 17:7
**CCR** 37:8,11
**Center** 21:2,9
**Central** 37:20,25
**certain** 18:12
**certified** 4:5
**certify** 65:5,14,16
**Cessna** 20:24
**Chagrin** 2:10
**change** 67:1,2,3,4,4,5,6 67:7,8,9,10,10,11 67:12,13,13,14,15,16 67:16,17,18,19,19,20 67:21,22,22,23
**Charter** 9:1,16 10:16 11:19
**chose** 41:16
**Chrysler** 21:6
**circumstance** 49:11
**circumstances** 13:7 27:20
**city** 63:5
**Civil** 1:18 4:4

**clarify** 12:22 48:23
**clarity** 7:11
**clear** 12:21 18:25 30:8 46:16 48:23 49:25 51:22
**clearing** 48:5
**Clemens** 5:3
**Cleveland** 1:23 2:5 30:15 65:20
**client** 52:21
**Clifton** 5:25 6:2,18,20 7:8,10 41:1,22 42:1,1 42:2,4 46:25 47:2
**closed** 42:8,9 44:22 46:17,18
**code** 37:13,23 38:6,8 38:13,17 39:24
**College** 24:25
**color** 42:6
**Columbia** 17:12
**Combination** 14:14
**come** 30:3,23 49:16 50:13,16 59:22 61:25 63:8
**commencing** 1:24
**Commission** 65:25 66:23
**commissioned** 65:4
**common** 41:6
**communication** 16:17
**companies** 19:18,20 20:11 22:24 29:5 35:25 36:5,8,13 38:16 38:18 39:24 59:12 63:8
**company** 8:17 9:8,13 9:21,25 10:1,23,24 11:4,7 14:21 20:20 21:17 23:24 26:17,18 26:20,22 27:2,4,6,10 27:16,25 28:4 30:4 32:2,8,11,24 35:19 42:22 43:6 45:1,4,7 47:6,7 49:25 51:14,20 52:1 53:24 54:4,6,11 54:13 57:8,16,24 58:1 58:9,20,23 59:13,13 59:19,23 60:3,13,15 60:19 62:16 63:4
**company's** 55:24 60:8
**complete** 7:25
**computer** 65:10

**concluded** 45:11,23 64:16
**concludes** 64:4
**conclusion** 6:23 32:18 43:9 44:4 63:22
**conclusory** 50:15
**Confidential** 52:7
**confused** 57:25 58:6,23 59:12 63:2
**confusing** 57:22
**confusion** 58:17,19 59:10,16 62:18 63:17 63:18
**consider** 21:22
**considered** 41:14
**consist** 32:19
**Consolidated** 20:25
**construction** 45:17
**contact** 57:7,14
**contacted** 57:24 58:14 60:2
**continue** 52:22
**continuously** 28:21 29:3
**contract** 29:16,17,18 29:19,21,22 46:14
**Contractor** 37:21,25
**conversation** 17:5 54:23 55:5,8
**Coolidge** 56:23 57:5,13 57:17,24 58:15,23 62:9
**Coolidge's** 59:9
**copies** 39:12 60:10
**copy** 19:13 29:24 39:10 39:13
**copying** 55:18,20 63:12
**Corcoran** 45:15,17,18
**Corning** 21:5
**corporation** 9:3 21:8
**correct** 8:5,10 9:12 10:14 15:4 16:15 27:13 30:21,22 34:9 35:21 49:9 50:8,10 55:14 56:24 59:8 60:16 61:17,18 65:12 66:7
**correctly** 60:13
**cost** 49:22
**counsel** 65:17
**counterclaim** 6:20 7:2
**country** 51:8

**county** 47:22 65:1 66:2 66:4
**couple** 4:21 44:20 61:21
**court** 1:1 6:17 42:14 64:14
**CPA** 47:10 51:7,24
**Crane** 20:25
**crush** 56:2
**Cupar** 2:3 3:3 6:6,22 7:13,16 12:4,13,20 13:21 17:23 18:1,5,14 19:13,14,16 21:24 22:5,11,16,21 23:1,4 23:17,22 24:4,14,20 27:8,15,18,23 28:2 30:7 31:2 32:16,21 33:3,9,17 35:2 36:2 36:10,14,18,20,25 37:6 38:2,21 39:9,14 39:20 40:2,9,14 42:19 42:24 43:2,8 44:3,6 44:11 46:5 47:12 48:25 49:12,23 50:4 50:18 51:10,16 52:4 52:10,18 53:1,8,19 54:1,7,16 55:6,11,15 56:5,11,17 57:1 61:11 61:13 63:21,25 64:10 64:13
**current** 50:23
**Curtiss** 21:5
**customer** 58:19 63:1
**customers** 17:21 19:23 20:1,7 21:22,22 22:1 22:3,15 23:9,11,15,19 24:7,12,18 45:9 60:5 60:6 62:22
**Cuyahoga** 47:22 65:1

**D**
**dad** 18:21
**Daimler** 21:6
**Daniel** 44:24
**database** 63:6,16
**date** 1:24 11:17 67:24
**David** 2:3
**day** 1:24 65:21 66:11
**dcupar@mcdonaldh...** 2:6
**dealing** 58:20,24
**deck** 41:6,9

**defendant** 1:7,17 2:7 4:2 55:2,9 56:2 57:6 59:2,6 61:25
**defendant's** 3:6,7 19:2 19:7,10 39:5,7 59:13 62:16
**Defense** 20:22
**delinquency** 51:3
**demands** 41:12
**Department** 47:23
**deposition** 1:11,16 3:1 5:16 7:6,19 19:2,10 52:5 64:7,16 65:14 67:1
**describe** 5:5 15:6 16:20 32:13 33:2,5,16 34:3 35:14
**description** 14:8,10
**Design** 20:14
**designated** 6:17 39:25
**designation** 6:2
**details** 29:10
**Detroit** 9:4 13:1
**develop** 23:15,18,19 24:6
**devote** 10:6 11:6
**devoting** 10:11
**different** 6:1 28:24 41:23,25 63:3
**dilapidated** 41:9
**diploma** 25:7
**directing** 30:1
**director** 11:5
**directors** 8:15 9:23
**disagreement** 49:4
**discrimination** 44:1,9
**dispute** 48:2,18 53:20 54:19
**distributor** 35:16
**District** 1:1,1 42:14
**DIVISION** 1:2
**divisions** 18:20
**DLA** 45:15,17,17
**document** 19:17,22 39:2,19 40:3,10,15,18 40:25
**documents** 40:13 64:9
**doing** 4:9 8:2 38:23,24 52:9
**dollars** 44:20
**Donald** 1:4
**done** 64:10

**doors** 5:1
**Doubt** 29:25
**down** 4:21,25 5:1 41:14 41:17
**Downtown** 30:15
**Drain** 2:8,9 4:8 19:4,12 22:9,18 23:6,25 24:2 27:18 30:9 33:13,21 37:1,4 39:4,11,18 40:4 47:15,17 50:2 52:8,14,23 54:21 64:3
**drive** 54:15
**driveway** 42:6,7
**duly** 4:4 65:4,6
**during** 22:24 28:23 29:1,4,5,13
**duties** 14:2
**Dynamics** 21:8

**E**

**E** 3:4
**each** 6:14 23:16,20 24:10 47:11
**earlier** 40:25 41:25
**East** 1:23 2:4
**EASTERN** 1:2
**education** 25:22
**effect** 17:13
**either** 30:4 37:19 47:5 58:11 60:7 65:17
**elaborate** 59:15
**Elaine** 1:19 56:6 65:3 65:23
**Elecsys** 21:6
**Electric** 18:20,22
**Elgiloy** 59:23,25 60:2
**else's** 57:23
**employed** 8:6,11 11:24 13:2 26:4 29:1
**employee** 8:4
**employees** 14:21,23 17:21 24:1 57:21 58:13 62:21 63:10
**employment** 13:5 26:16 29:9
**en** 66:25
**Endo-Surgery** 21:7
**Enterprises** 44:16
**entire** 19:17
**entry** 47:25
**equipment** 10:3,4,5 11:1,2,3

**ERRATA** 67:1
**Escalade** 54:13
**Esparza** 2:13 55:20
**Esparza's** 57:16 63:4
**Esq** 2:3,8
**estate** 51:1
**estimate** 36:8,11,12,17 36:17 37:7
**Ethicon** 21:7
**Even** 36:22
**event** 57:9 65:18
**eventually** 44:21
**ever** 5:16 13:17 16:23 16:24,25 17:11,20,24 18:8 22:23 23:8,11 39:20 40:20 55:8 56:3 56:13
**every** 23:16,20 24:10 35:16 45:12
**everything** 45:24 46:2
**evidence** 27:24 63:19
**exact** 13:18,24 42:3 60:24
**exactly** 13:4
**examination** 1:17 4:3,7
**Examinations** 3:2
**examined** 4:5
**exchange** 41:8
**Exhibit** 3:6,7 19:2,7,10 39:5,7
**exist** 20:2,8
**existed** 16:15
**existence** 35:25
**exists** 20:1,3
**expect** 7:23
**expires** 65:25 66:23
**explain** 30:12 48:23 64:5
**explained** 60:2
**extent** 6:7,23 38:22 44:4
**Eyes** 1:5 52:6
**E-l-i-g-a-l-y** 59:25
**e-mail** 57:15 58:11
**e-mailed** 61:7,16

**F**

**fact** 26:18 59:6
**facts** 27:24
**factual** 7:22,23
**fair** 7:25 10:12 19:25 20:7 42:23 43:7

**Falls** 2:10
**familiar** 19:18,19 37:21,25 42:2 44:15 46:20 47:24 56:21 59:2
**far** 11:8 14:18 16:16 24:24 51:2 63:2 64:6
**father** 14:17 15:2,3,7 16:7,16,18 17:6,7 54:24 55:1
**father's** 16:21 22:3,15
**Faulty** 45:22
**fax** 58:11 60:19
**federal** 1:18 4:3 30:5 30:13 31:1 34:22 37:12 38:9,12,18 43:21
**Feeling** 13:14
**felt** 13:16 43:19
**Fermi** 21:7
**Fifth** 1:22 2:4
**fighting** 47:7
**Fike** 21:7
**filed** 6:16,20 7:2 47:22
**finally** 58:8
**financial** 51:23 52:11
**find** 35:9,24
**fine** 55:19
**finish** 46:3
**fired** 43:19
**first** 4:4 26:7 46:4 65:6
**fit** 60:23
**Five** 5:13 47:14
**fixed** 45:24 46:2
**Flight** 21:9
**Florida** 11:14,15 26:10
**foil** 60:1
**follow** 62:24,25
**follows** 4:6
**founding** 11:24
**Four** 5:1
**free** 59:19 60:8
**friend** 17:6
**from** 19:24 20:1 24:13 24:18 25:1,14 28:22 28:24 34:18 41:24,25

41:25 44:20 58:1,2
59:17 62:2,9,18 63:18
front 34:5 41:6 51:11
Ft 26:10
fucking 17:13
full 4:12 10:11
full-time 29:9
further 47:13 52:20
65:14,16

**G**

G 1:11,16 3:1 4:1,7 6:3
6:18 7:10 46:1,19
65:5 66:5,14 67:25
game 17:7
Garcia 56:22 57:5
GE 21:8
Gear 21:10
General 18:20,22,22
21:8
Gerald 4:13
getting 13:14
give 7:24 29:10 37:5
given 57:19 65:8,12
66:8
Global 35:16
globally 35:19
go 7:5 17:12 24:24 25:9
25:19 27:20 28:1
30:19 35:8 47:13 54:2
55:3
Gobain 21:12
Goddard 21:8
goes 56:15
going 7:22,24 8:9 16:12
19:1,1,9 23:3,20 38:7
39:2 43:19 52:5,19,20
52:21 54:17 55:1 56:1
56:14 57:25 58:6
gone 16:10 27:12
Good 4:9,11
Goodrich 21:9,10
goods 46:15,15
Government 30:6,14
31:1,24 34:22 37:12
38:9,12,18
graduate 25:1,14
Green 25:13,14,17,24
26:1,5
ground 41:6
guess 39:21
guessing 41:24

guidelines 43:22

**H**

H 3:4
half 25:18,23
Hamilton 21:10
hand 17:7 19:1,9 39:2
48:10 65:20
handling 47:10
handshake 17:8
Hannifin 21:5
happen 17:16
happened 57:11 60:24
happy 58:16
harassment 43:23
Harvard 21:11
hastelloy 60:1
having 4:4 39:25 54:23
55:4
HAYNES 35:6
heard 34:21
hearsay 55:12 56:12,18
held 46:14
help 50:12
her 15:17,19,20,25
16:23 17:2 55:20 56:2
56:24 58:9,10 60:7
hereinafter 4:5
hereunto 65:19 66:9
He'll 37:2
high 25:1,3
higher 25:9,23
him 12:22 17:9 18:6
33:16 37:1,1,5 45:1
49:25 50:3 65:8,13
hold 33:9 36:25 38:21
46:5 47:12 52:4 56:5
Honeywell 21:11
hope 61:14
Hopkins 1:22 2:3 20:17
30:18
hours 10:7,8 29:12
42:17
house 4:20 41:6
Hughes 20:16
hundred 44:20
hundreds 18:20

**I**

Idaho 21:16
idea 29:15 51:5
identified 19:9 33:10

33:18 57:5
identify 7:12 19:22
39:3,19
Illinois 60:1
impose 50:7
improve 41:12
improvement 41:14
Inc 1:2 8:3,4,7 9:16
10:12,16 11:25 13:3
13:20 14:16 24:6,6,13
24:17,17,19 29:13
30:2,25 31:15 32:15
34:15,16,24 35:11,13
42:13 43:6,13 44:16
45:7 51:14,20 52:2,24
53:4,7 60:13 62:2
incident 27:25
incorporate 30:19
incorporated 5:15 8:17
8:20 9:1,19 11:9,11
12:1,3 26:21,22 30:2
30:17 34:4,6 58:2
Incorrect 55:13
INDEX 3:1
indicated 61:1
individually 23:24
40:19 47:6
industrial 5:8,9
Industries 20:18 21:14
information 52:12
inside 14:12
instance 5:20 40:24
62:15
instances 59:10,16
62:18
instead 62:2,17
institution 25:22
interested 65:18
investing 14:3,4,6
involved 41:21 42:12
45:14
Irrelevant 49:24
issue 41:4 42:18 45:21
48:15,16 58:15
item 51:25
ITT 21:16

**J**

Jessica 2:13 55:19
57:16,17,19 58:10
60:4 63:4
Jessica's 59:19 60:7

Jet 21:16
Jetseal 21:17
Jim 57:18 58:3
JL 21:17
job 13:25 14:8,10 26:7
43:21
Johns 20:17
Judge 1:4
judgment 47:4,21,25
48:8 49:2
June 8:21 13:6,20
28:22
just 4:25 12:22 17:17
19:12 21:20 30:8
32:14 33:6,19 34:24
37:24 46:5 49:25
50:11 51:11 52:16
57:2 61:10 62:8 63:20

**K**

keep 33:11
kind 10:4 11:2 44:2
54:15
Klocker 1:11,16 3:1
4:1,7,9,13,17 6:3,18
7:8,10,15 11:22 14:17
18:3,9 19:15 46:1,19
47:18 51:10 54:24
55:1 57:1 64:4 65:5
66:5,14 67:25
know 6:24,25 7:1,2,4
7:22 8:18,20 9:15
12:15,23 13:4,23,24
14:18,19 15:11,16,18
15:19,20 16:1,2,4,5
18:4,15 20:2 22:7,14
22:14,22 23:10 26:25
31:7,8,10,12 32:7,19
32:24 33:20,23,24
34:1 36:4 37:8,10,24
38:16,22,24,25 40:16
43:10,11 44:7 46:6
49:11,14 50:19 51:2
51:18 52:1 53:16,22
53:23,24 54:2,3,20
58:17,18 59:9 60:3,9
60:25 61:12,13,14,20
61:22 62:4,11,17 64:1
64:2
knowledge 44:10 57:4
57:8
knowledgeable 38:7

known 59:3
Korea 20:18

**L**

Lab 20:16,17,19,24
  21:3,7,13,16,16
Labor 42:23 43:7
Lagoon 5:25 41:22
  42:1,4 46:25 47:2
Lagoons 7:8
Lakewood 4:15
land 41:5,8,12 42:2
Landing 21:10
language 42:3
last 17:2 28:13 51:8
  60:25
Lauderdale 26:10
Law 2:9
lawful 4:2
Lawrence 20:18
lawsuit 41:19 42:5 47:3
  59:6 63:17
lawsuits 42:10
Learjet 20:19
learning 25:10,23
lease 5:11,12 10:25
Leasing 9:1,16 10:1,2
  10:16,21,24 11:19
least 16:14 29:12
leave 13:5 17:9 26:1,16
  52:21
leaving 26:5
legal 6:23 32:17,22
  43:9 44:4 63:22
less 29:20
let 12:20 24:16 36:4
  37:1 39:16 42:21 46:3
  56:6
letter 32:14
let's 7:5 27:19 47:13
liabilities 51:15,21,25
  52:2,16
license 30:16,17
lien 47:21 48:8
liens 47:4
light 5:8,9
like 13:16 15:23,24
  18:19 37:16,18 57:18
  58:3 62:4
Limited 20:18 21:18
  45:8
line 51:25 54:22 67:1,3

67:4,6,7,9,10,12,13
  67:15,16,18,19,21,22
lipstick 17:12
list 19:23 46:7
listed 59:19,20
listing 19:25 21:20
little 11:8 18:25 48:24
live 4:16 46:25
lived 4:19
LLC 1:5,22 2:3 10:22
  45:16 46:1 55:10 57:7
  59:3,4 62:4
local 35:19 39:15
located 5:6 45:9 61:5
location 12:17,18,23
  63:9,11
locations 63:3
Lockheed 20:19
logo 32:2 34:4,5,24
London 44:19
long 4:19 5:12 8:6 9:16
  13:2,19 16:9 20:6
  26:13 28:14 55:18
long-term 51:15,21,25
  52:2,15
look 19:11,15,17 20:5
  35:22 63:6
looked 20:6 34:14
looking 6:10 29:11
Los 20:16
lost 63:19,19,24
lot 45:10 51:7,8
love 54:20

**M**

Machine 20:20 45:7
made 31:19 49:18
  57:14
maintain 41:7,13
maintained 41:16
Maintaining 27:3
make 6:15 12:20 18:8
  39:12 51:11 55:2 56:4
  56:13,14
manager 45:18
Managing 11:5
Manchester 20:20
Manufacturing 20:14
  21:17
many 5:19 13:12,18
  25:16 33:22 36:8
  41:16 53:4,7,18,23,24

60:22 61:20 62:7
Marble 45:15
Marine 10:5 26:21
Maritime 11:3
mark 19:4 39:4
marked 19:2,7 39:7
marriage 15:12,13
  16:3
Martin 20:20
mate 26:12
material 58:4,16
materials 46:7,11
may 4:20 44:5 53:10
maybe 13:18 15:18
  18:25 26:15
MBM 20:20 45:7
McCarthy 42:12
McDonald 1:22 2:3
  30:18
MDOT 20:21
mdrain@mdrainlaw...
  2:11
mean 14:10 24:5 31:15
  49:1
Met 44:16
metal 1:2,5 5:15 8:3,4,7
  10:12 11:25 24:5,6,17
  24:17 30:1,25 31:15
  32:15 34:4,6,14,15,23
  35:10,13,16,24 36:5
  40:1,19 42:13 43:6,12
  44:15 45:6 51:14,20
  52:1,24 53:4,7 55:2
  55:10 56:15 57:6,16
  58:1,5 59:3,3,18
  60:13 62:2,3,3,23,24
  63:4,7
Metals 12:1,3,7,11 13:3
  13:20 14:15 17:20
  18:12 22:4,23 23:8
  24:13,19 28:7,19,21
  29:1,13 38:19,19
  39:25
Michael 2:8,9
Midwest 12:1,3,7,11
  13:3,20 14:15 17:19
  18:12 22:4,23 23:8
  24:13,19 28:7,19,21
  29:1,13
might 20:2 36:9 61:25
Military 25:4,10
mine 63:5

minute 48:3
minutes 47:14 61:21
mirror 17:12
Mischaracterization
  24:15
mischaracterizes 6:7
Misleading 56:7
mismatched 59:20
Misrepresents 42:25
mistakenly 57:6
mistaking 57:22
MIT 21:1
money 14:7 44:21,25
  45:10 55:3 56:14
months 26:15
more 29:10 42:7,21
  51:22 53:14
morning 4:9
Motors 18:22
moved 4:20
much 9:8,10 10:6 11:6
  49:21,21
multiple 60:11
must 27:12
myself 62:21

**N**

name 4:12 5:14 6:10
  7:18 8:3 9:13 15:15
  15:17,19,20,25 25:12
  28:13 32:14 34:6
  35:23 36:5 37:23
  39:25 40:1 42:4 55:18
  55:19,21,25 56:22,24
  60:7,8 66:10
named 38:18 47:1,3
  66:5
names 20:11 54:3
  59:21 62:18
NASA 21:1
National 20:16,17,19
  20:24 21:2,7,13,16
nature 17:5 35:14 48:8
Naval 21:1
Navy 21:18 56:21
  57:14 58:14 62:10,15
need 7:11 41:18
needs 37:2
negotiations 46:8
Nevada 20:22
never 16:5 39:22 40:3
  40:10,11,15,18

new 15:12,13 16:21
Newlin 1:19 65:3,23
nice 27:19
None 52:3
nonexistent 15:10 16:7
  16:9,15,22
Nope 56:20
NORTHERN 1:1
Northstar 21:2
Notary 1:20 65:3,23
  66:3,21
note 17:11
nothing 50:11 52:14
  65:7
Nuclear 21:1
Nugent 1:4
number 6:3 19:2,10
  21:21 35:24 36:12
  60:8,24 61:19
numbers 59:20,21
numerous 57:17,20
  59:17 60:5,14,21 61:2
  61:22 62:13
nutshell 43:18

**O**

Oak 21:2
oath 47:19
Object 33:9 40:14
objection 6:6,22 7:13
  12:4,13 13:21 17:23
  18:1,14 21:24 22:5,11
  22:16 23:1,17,22
  24:14,21 27:8,15,23
  28:2 31:3 32:16 33:3
  33:10,17 35:2 36:2,10
  36:14,15,18,21,22
  38:2,22 40:2 42:19,24
  43:8 44:3,11 48:25
  49:12,23 50:5,18
  51:16 52:5 53:1,8,19
  54:7,16 55:6,11,16
  56:7,7,8,12,17 61:11
  63:21 64:1
objections 56:6,18
obtain 30:3,24
obtained 30:16
occasions 57:18
occupy 9:8
occurrence 49:11
Oceaneering 21:3
off 20:10 21:20 60:25

63:3
office 5:7 9:6 31:14
  34:11,14,17,19,23
  35:1,9 65:20
offices 1:21 2:9
official 7:18 42:3 66:10
officially 15:16
Oh 9:11 42:15 48:16
  50:2
Ohio 1:1,21,24 2:5,10
  4:15 8:19 9:4,19 11:9
  13:1 21:3 25:4,10
  26:23 30:5,13,19,20
  31:1,23,25 32:1,7,9
  33:6,15 34:7,8,20
  47:22 48:20 49:2,7,16
  50:7,13,16,20,21,22
  63:5 65:1,4,21,24
Oilphase 21:4
okay 20:10 22:23 23:25
  34:2 37:6 50:4 54:21
  55:23 62:11 64:3
one 5:21,22 7:7,20 18:6
  18:7 19:13 23:5,16,20
  24:10 25:12,18,23
  33:4,6,12 34:13,15,19
  35:8,9,22,24 38:15
  39:15 41:2,16 42:1
  45:9 47:9 48:9,9,10
  48:19 53:12,14 62:8
  62:15,23 63:2,11
ones 54:3 60:11
only 1:5 6:24 22:6
  38:22 41:13 43:9 52:6
  63:10 64:1
operate 8:22
opportunities 57:20
Orbital 21:4
order 1:7 37:11 63:14
other 6:14 8:22 10:15
  10:15 11:22 14:21
  15:1,1 19:13 28:8
  29:5 35:22 36:4,8,12
  38:16 39:24 41:20
  42:10 47:11 59:9,10
  59:12 62:1,13,17
others 62:11
otherwise 50:21 55:9
  65:18
out 4:20 10:21 13:14,15
  13:16,17 27:6,12,20
  27:22 28:1 41:8 47:11

49:10 50:12 51:7 55:3
  56:2,15
outside 14:13
outstanding 47:4
over 41:19 42:5 47:8
  58:11 59:22 60:6
overpaying 47:8
owed 45:10,12 47:9
Owen 4:17
Owens 21:4
own 5:10 23:12,16,19
  24:9,18 53:4,7,12,14
  53:18,25 54:4,6,11,13
owns 53:24
o-l-y 59:25

**P**

Page 3:2,5 67:1,3,4,6,7
  67:9,10,12,13,15,16
  67:18,19,21,22
paid 44:24,24 45:12
  46:16
Paragraph 1:5
park 5:9 6:2,18,21 7:10
  41:1 42:1
Parker 21:5
parties 38:23
party 47:3 65:17
past 20:9 58:3
patent 31:14 34:11,13
  34:16,19,22,25 35:4,8
patio 41:3,4
Patterson 21:19
Paul 14:17 54:24
pavers 41:10,14,17
pay 46:13
paycheck 29:4
payroll 28:23,24 29:8
pays 51:7
PCC 21:5
pending 34:18 35:5,10
  39:17 42:13
penny 45:12
people 59:11
per 41:11 46:8
percent 44:24 45:13
  48:19
period 10:21,21 12:5
  26:13 29:6,14
person 56:22 57:4
  58:22 62:16
personally 49:25 50:3

50:6 54:18 66:4
phone 54:24 57:15
  59:21 62:22
phrase 35:23 36:5
  38:19 40:1
pilfer 17:20
Pioneer 21:11
place 9:2 12:2,10,15
  16:3 61:6 65:15
Plaintiff 1:3 2:2
please 4:12 19:5 29:10
  35:15 39:5 59:24
plus 16:14 60:25
PO 9:10,11,14
point 30:7,10 54:19
pointed 34:24
portion 19:23
possession 61:9
potential 60:6
Power 20:25 21:14
PPG 21:11
practice 17:20 18:8
Pratt 21:12
Praxair 21:12
Precision 26:21
prejudicial 52:15
prepares 51:24
presence 65:9
present 2:12 8:23 20:9
  52:25
presented 34:5
president 8:12 9:22
  14:1,9 32:24 46:24
  47:1
previously 7:20
pricing 59:23
principal 9:2,25 10:23
  12:2,10,15 14:15,18
  15:3 27:1 61:6
printer 65:11
prior 4:22,24 11:24
probably 15:12 48:20
Procedure 1:18 4:4
procurement 56:22
  59:11
Products 45:25 46:10
Professional 1:20
pronounce 15:16,21
proper 6:10 37:15 58:9
property 41:7
Propulsion 21:16
prosecuted 49:7

prosecution 49:6 50:14
protected 43:21
Protective 1:6
provided 57:19
public 1:20 6:1 65:3,23
    66:3,21
purchase 49:18,19 58:4
    63:14
purchased 4:20 41:5
purchasing 57:13
    59:11
pursuant 1:5,17 4:3
put 41:17 49:2 52:5
    56:2,6
putting 41:13

**Q**

qualified 65:5
question 7:14,17 18:6
    18:10,17,19 22:13,20
    23:3,5 24:16 32:22
    35:7 37:2 38:7 39:17
    40:7 43:4,5,16 46:3,4
    49:15 51:11,19 52:20
    53:5 54:9 56:1 57:2
    63:23
questioning 54:22 64:4
questions 7:23 52:22
question's 18:23
quote 46:8,11 57:19
    58:1,10,11 60:4 62:1
    62:25,25 63:14
quoted 58:9
quotes 59:17,21 60:7
    60:14,15,17,18,22,22
    61:2,10,23,24,25
    62:13

**R**

R 15:17
rattled 63:3
read 20:10 21:20 64:6
real 15:19 51:1
really 15:24
reason 16:6 67:2,4,5,7
    67:8,10,11,13,14,16
    67:17,19,20,22,23
reasons 13:12
rebuilt 4:21
recall 17:3,14,15,16,17
    17:18 18:4 26:2 29:7
    40:24 43:13 45:14,25

47:18 54:23
receipt 60:14
received 29:4 59:17
receiving 14:3
recently 31:11
recollection 39:23 40:5
    40:8,11
record 20:10 47:19
records 6:1,17 32:6
    51:3
reduced 65:9
refer 51:23 58:22
reference 24:2,16
referred 61:10
referring 6:4 37:13,14
    37:20 38:6 48:9
reflect 61:2
refresh 39:23 40:8,11
refreshes 40:5
regard 30:13
regarding 42:6 48:5
register 37:11 38:11
registered 1:19 11:11
    11:15 32:6,8 33:15
    34:25
registration 30:4,24
    31:13,16,20,22 37:21
    37:22 38:1 39:24
regular 10:7,8
relationship 15:6 16:7
    16:9,15,20
relative 65:17
relax 27:19 37:2
relevance 49:24 50:5
    53:9,20 54:8,17
remember 7:21 28:16
    55:4
removed 41:17
rent 5:10
repeat 35:7 53:5 54:9
repeated 57:14
rephrase 36:4 49:15
replaced 41:10,18
replicating 55:18
reporter 1:20 64:14
representation 20:7
represents 21:21
request 41:11
requests 60:6
required 29:15
requirement 37:10
    38:11

Research 21:14
residence 4:22 9:5
    45:19
resolved 48:19
responsibilities 14:2
result 63:20
retainage 46:13,14
returned 44:21
Rex 26:8
Ridge 21:2
right 6:16 7:20 10:10
    12:19,25 30:23 35:5
    35:18 38:14 39:2
    44:22 45:1,2 47:8
    48:10 50:15 51:6
    53:23 60:12,20,21
    61:1,9,23 62:13
rights 18:22 64:5
Road 4:15,24 5:3 9:4
    13:1 50:23
Robert 46:20,24
Robotics 20:22
Rocio 15:23
Rolls-Royce 54:4
room 52:21
rotten 41:15
route 52:19
rude 58:5
rule 39:15
Rules 1:18 4:3
R-o-c-i-o 16:1

**S**

S 1:19 3:4 65:3,23
Saint 21:12
sales 1:2 5:15 8:3,4,7
    10:12 11:17,19,25
    14:3,12,12,13 24:5,6
    24:17,17 26:8 27:4
    30:2,25 31:15 32:15
    34:4,6,15,16,24 35:11
    35:13 40:19 42:13
    43:6,13 44:16 45:6
    51:14,20 52:1,24 53:4
    53:7 58:2 60:13 62:2
    62:24 63:19,24
salesman 57:15 58:2
salesmen 15:1
salespeople 15:4
same 7:9 23:5 24:20
    34:10 36:15,20 41:23
    55:15 56:18 63:5,25

66:6
Sandia 21:12
save 43:20
saying 40:17
says 33:14
scanned 61:7
school 24:24 25:1,3,9
    25:20
Science 21:4
scope 35:22
seal 65:20 66:10
secret 52:13
see 6:15 7:19 16:6
    17:19 18:25 20:10
    34:5,15 39:16 41:20
    53:18 55:22 58:12
seen 39:21,22 40:3,10
    40:11,15,18 60:9
selective 49:5 50:14
selectively 49:7,17
sell 58:16
selling 35:19
send 60:6,20 63:13,14
    63:15
Senior 21:13
September 54:25 65:21
service 58:19
Services 21:18 45:15
set 1:25 65:19
several 42:6 51:8
sexual 43:23
shake 17:7
shareholder 8:13
SHEET 67:1
shipping 14:3
Short 47:16
show 51:3
sic 20:21 37:15 59:25
Siemens 21:13
sign 66:6
SIGNATURE 67:24
similar 7:9
since 9:18 15:18 32:2,5
    34:7,20
sir 12:6,25 20:11,13
    21:20 22:20 24:5,12
    24:24 28:1 30:1 31:5
    31:17 32:13 33:22
    35:5,9 36:6,19 37:22
    39:19 40:6,13,20
    42:21 43:17 44:13
    46:4,21 47:5 48:12,14

50:8,24 54:15,23
55:17 56:4,9 63:23
**six** 26:15
**size** 35:16
**Solar** 21:13
**sold** 28:8,9,11
**solicit** 59:23 60:4,16
**solicitations** 60:15
61:24
**solicited** 62:14,16
**some** 24:12 26:4 29:10
60:1
**somebody** 43:18 57:23
62:1 63:12
**someone** 18:19 23:24
58:5
**something** 17:13 29:19
48:6 50:17
**son** 4:17
**sorry** 19:19 39:11 46:3
58:16,18
**Sounds** 15:24
**Source** 1:5 55:3,10
56:15 57:7,16 58:6
59:3,3,18 62:3,3,23
63:4
**space** 9:8 21:3,9
**speak** 37:16 57:18
**speaking** 58:4
**specific** 33:12 42:7,21
52:11 59:16
**specifically** 55:23 62:8
**specified** 29:21 65:16
**speculation** 50:19
**Spell** 59:24
**spelled** 10:21 16:1
**spend** 56:14
**spent** 55:3
**spoke** 58:14
**SS** 65:1 66:1
**Standards** 42:23 43:7
**Starsys** 21:14
**start** 26:17,18 63:7
**started** 32:11
**state** 1:21 4:12 8:19
11:9,11,13 21:3 25:13
25:24 26:1 30:5,19,20
31:1,23,25 32:1,6,8
33:6,15 34:7,8,19
47:8,9,22 49:2,7,16
50:6,12,16,20,21,22
63:10 65:1,4,24 66:1

66:4
**stated** 55:23
**statement** 50:15 56:4
56:13
**statements** 51:24
**STATES** 1:1
**stenotypy** 65:9
**still** 14:18 27:10 47:18
**Stipulated** 1:6
**stole** 44:19
**stop** 54:17
**stopped** 28:3
**street** 2:9 4:25
**Strongwell** 21:14
**stuff** 51:7
**substantial** 21:21,25
**sue** 46:12
**sued** 40:20,21,22 45:1
45:4 46:12 47:2
**suing** 6:12,12,14
**suit** 41:2,23,23 42:8
**Suite** 2:9
**suits** 41:20
**Superior** 1:23 2:4
**supply** 20:25 46:7,9,10
**supposed** 39:15
**sure** 6:15 7:14,18 12:21
15:17,24 32:22 33:19
47:15 51:11,13,13
53:11,13 54:10 55:2
56:14,24 59:17 62:8
62:10
**Surface** 21:1
**Swagelok** 21:15
**sworn** 4:4 65:6
**Systems** 20:16 21:3

**T**

**T** 3:4 10:21,21
**take** 16:3 17:21 19:14
19:16 23:11 24:18
47:13 51:9 55:24
**taken** 1:18,21 5:16 7:6
7:20 24:13 47:16
65:15
**talk** 39:16
**talked** 16:23 17:2
**talking** 7:15 22:7 23:23
61:19
**Tausch** 43:12
**tax** 48:2,15,16,20,22
49:8 50:7,13,17

**Taxation** 47:23
**taxes** 47:5,8 50:23 51:1
51:9
**Tect** 21:15
**tell** 5:19 8:25 10:20
30:12 48:18 59:15
60:22 62:20
**telling** 41:24
**terminology** 37:15
**terms** 9:5
**testified** 4:6 33:6 48:2
63:20
**testify** 65:6
**testimony** 6:8,19 24:15
34:17,21 60:12 65:8
65:12 66:7,9
**Thank** 37:19
**Thayer** 21:15
**their** 7:18 12:9 40:1
42:3 43:21 46:13,14
63:6,16
**Thermacore** 21:18
**things** 59:22 63:20
**think** 28:14 33:18 37:1
37:2,5 52:19
**third** 1:22 2:4 38:23
**Thomas** 1:11,16 3:1
4:1,7,13 6:3,18 7:10
14:17 46:1,19 54:24
65:5 66:5,14 67:25
**though** 36:22
**thousand** 44:20
**three-year** 29:6,13,19
**through** 28:22 30:17
30:20
**tile** 45:15,17,18,18
**time** 5:22 7:20 8:23
10:6,11 11:6 12:5,6,7
12:11,16 13:2,19,24
14:20,24 16:17 17:2
18:11 19:17 20:6
22:24 25:19 26:13
27:6 28:3,15,23 29:2
29:4,21 30:3,8,10,23
31:4 35:25 37:5 47:5
52:25 64:5 65:15
**timeframe** 18:15 22:6,7
31:3,3
**times** 5:19
**title** 13:25
**today** 4:10 15:7 20:1,2
20:3 61:5 63:17

**told** 8:2 13:17 16:5
17:9 54:25 58:13
**toll** 59:19 60:8
**Tom** 54:1
**Tool** 20:20 45:7
**tore** 4:21 41:8
**touch** 58:8 60:3
**trade** 52:12
**trademark** 30:4,13,24
31:5,13,14,19,23 32:1
32:4,5,10,11,13,19,25
33:2,4,5,11,14,24
34:1,2,3,10,11,14,17
34:18,23 35:1,9,10
53:20
**trademarked** 34:16
**trademarks** 33:4,10,22
**transaction** 49:10
**transactions** 62:4
**transcribed** 65:10
**transcript** 52:6 64:6
65:12 66:6,7
**tried** 17:7,8 30:3 31:4
**true** 10:13 24:12 36:1
58:24 65:11 66:7
**Trust** 46:25 47:2
**Trustee** 42:2
**Trustees** 5:25 6:3,18,21
7:10 41:1
**truth** 65:6,7,7
**trying** 28:14 57:7
**TUESDAY** 1:12
**Turbine** 21:18
**two** 11:16 17:4 33:18
**Two-story** 5:8
**type** 35:16
**typing** 63:7
**T-w-o** 10:21
**T.T** 9:1,16 10:16,19
11:19

**U**

**under** 5:14 8:2 13:7
27:20 34:14 43:21
47:19 52:6,24
**undersigned** 1:19
**understand** 6:19 18:10
18:11,16,18,19 58:17
60:12
**understanding** 57:11
58:25
**unhappy** 13:8,9,9,10

13:11
**UNITED** 1:1
**university** 20:17 21:4
21:11 25:13,20,24
26:2
**unpaid** 47:5
**until** 13:20 46:15
**use** 41:8 48:15,16,20,22
49:8 50:7,13,16
**used** 42:3 43:20 58:20
**using** 30:18 48:20
**U.S** 31:14,24 34:10,13
34:16,18,22,25 35:8
42:14 56:21 57:13
58:14 62:10,15

**V**
**vague** 18:2,15,24 21:25
22:6,12 23:2,18 24:3
24:15 27:9 32:17 36:3
36:11 38:3 49:13
51:17 56:7 63:22
**various** 62:22
**vendor** 44:19 63:1
**vendors** 59:18 62:22
**vendor's** 30:16
**versus** 5:25 6:3,18 7:8
7:10 42:13 43:12
44:16 45:7,15 46:1,19
**very** 11:8,8 18:23,23,23
58:5,6
**via** 57:15,15
**Vice** 14:1,9
**violated** 42:22 43:7
**vs** 1:4

**W**
**wages** 42:17
**want** 6:15 12:23 18:6
19:15 53:5 54:9 55:9
55:20
**Warfare** 21:1
**wasn't** 29:15,16 42:2
55:18
**water** 52:24
**waterways** 48:21
**way** 43:20 48:21 61:24
62:14
**ways** 13:18
**website** 20:1,6
**week** 29:12
**weeks** 11:16 51:9

**Well** 4:22 7:5 18:11,25
20:4 37:4 40:13 42:21
50:12 52:14 56:25
63:18
**went** 27:6,22 28:18
30:15 34:13 50:20
62:3
**were** 6:12,12,14 11:24
12:6,11 13:2,9,9,11
13:13,15,17,17 14:2
14:12,20,20,23 15:1,3
17:19 18:11 22:3,15
24:13 29:8 35:8,22
41:7,15 42:12 43:19
46:7,11 51:23 55:1
56:1,13 60:21 61:23
**weren't** 62:14
**Westlake** 5:4 9:4 13:1
63:5,11
**we're** 37:20 47:19
63:16 64:10
**We've** 60:5
**WHEREOF** 65:19
66:9
**while** 23:9
**Whitney** 21:12
**whole** 65:6
**wife** 4:17 15:14 16:21
17:8
**wife's** 15:15
**withdraw** 54:22
**witness** 51:13 64:8,11
65:10,19
**witness's** 6:7
**wood** 41:5
**words** 13:18 62:1
**work** 13:19 17:24
26:13 28:7,19,21 29:5
29:12 45:18
**worked** 12:7 14:23
22:4,10,25 23:9 58:3
**working** 10:7,8 12:6,11
14:20 17:19 18:12
28:3,25
**workmanship** 45:22
**world** 18:21 19:24
**wouldn't** 35:25
**Wright** 21:6,19
**write** 17:11
**writing** 29:22
**writings** 61:2,3
**written** 14:10

**wrong** 60:19

**X**
**X** 3:4

**Y**
**yacht** 26:8,12
**year** 8:9 11:20 25:5
26:1,24 28:16 47:9,10
60:25
**years** 4:21 5:13 8:8
16:11,14 17:4 25:16
25:23 41:16 42:6
**yesterday** 20:4,5

**Z**
**Zeiger** 46:20,24
**Zero** 10:10

**$**
$1,000 47:11
$171,239.11 47:24 49:3

**0**
03 4:20
05-568033 6:4

**1**
1 3:6 19:3,7,10
1:10-CV-02343 1:3
100 44:24 45:13 48:19
11 8:8 16:14
11:25 64:16
12 13:20
12th 13:6 28:22
14th 65:21
147 2:9
15th 4:20
17th 54:25
171,000 48:13
19 3:6
1989 26:3,5
1996 28:17,18,22
1999 8:9,21 13:6,20
28:22 30:2,21 31:9
32:3,5,9,12 34:7,20

**2**
2 3:7 39:5,7
2002 9:18
2005 6:16
2009 54:25
2010 42:14

**2011** 1:12 11:20 65:21
66:11
**2015** 65:25
**202** 2:9
**2100** 1:22 2:4
**216-348-5400** 2:5
**22** 65:25
**25989** 13:1
**29260** 5:3

**3**
**30** 1:12
**30628** 9:4
**39** 3:7

**4**
**4** 3:3
**40** 29:12
**440-247-3380** 2:10
**44022** 2:10
**44107** 4:15
**44114** 2:5
**44145** 5:4 13:1

**5**
**5** 1:5

**6**
**600** 1:23 2:4

**8**
**87** 25:6

**9**
**9:55** 1:24
**90s** 16:12
**900** 4:24
**908** 4:15



| DATE:<br>10/31/2011 | DOCUMENT ID<br>201130101135 | DESCRIPTION<br>TRADE MARK/ORIGINAL FILING (TMO) | FILING<br>125.00 | EXPED<br>.00 | PENALTY | CERT<br>.00 | COPY<br>.00 |

### Receipt
This is not a bill. Please do not remit payment.

A METAL SOURCE, LLC
25935 DETROIT RD. #321
CLEVELAND, OH 44145

---

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, Jon Husted

**2057127**

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**THE LETTERS A M S AND L WRITTEN IN GREY EVENLY SPACED HORIZONTAL LINE. A TWINKLE BETWEEN LETTERS M AND ETC.**

Document(s)                                    Document No(s):

**TRADE MARK/ORIGINAL FILING**                  **201130101135**
METAL GOODS
Registrant's State of Inc.:   OH              A METAL SOURCE, LLC
Date of First Use:            09/16/2011       25935 DETROIT ROAD, #321
Date of First Use in Ohio:    09/16/2011       CLEVELAND, OH 44145
Expiration Date:              10/24/2021



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 24th day of October,
A.D. 2011.

*Jon Husted*

Ohio Secretary of State

---





| DATE: | DOCUMENT ID | DESCRIPTION | FILING | EXPED | PENALTY | CERT | COPY |
|-------|-------------|-------------|--------|-------|---------|------|------|
| 10/31/2011 | 201130101134 | SERVICE MARK/ORIGINAL FILING (SMO) | 125.00 | .00 | | .00 | .00 |

### Receipt

This is not a bill. Please do not remit payment.

A METAL SOURCE, LLC
25935 DETROIT RD. #321
CLEVELAND, OH 44145

---

# STATE OF OHIO

## CERTIFICATE

### Ohio Secretary of State, Jon Husted

**2057126**

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**THE LETTERS A M S AND L WRITTEN IN GREY EVENLY SPACED DASHED HORIZONTAL**

**LINES, A TWINKLE BETWEEN LTRS M AND S MARKS ETC**

Document(s)                                                          Document No(s):

**SERVICE MARK/ORIGINAL FILING**                          **201130101134**

MATERIAL TREATMENT
Registrant's State of Inc.:    OH                          A METAL SOURCE, LLC
Date of First Use:              09/16/2011                25935 DETROIT ROAD, #321
Date of First Use in Ohio:   09/16/2011                CLEVELAND, OH 44145
Expiration Date:                10/24/2021



Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 24th day of October,
A.D. 2011.

*Jon Husted*

United States of America
State of Ohio
Office of the Secretary of State                          Ohio Secretary of State



# United States of America

### United States Patent and Trademark Office

# A Metal Source, LLC

**Reg. No. 4,047,248**

**Registered Oct. 25, 2011**

**Int. Cl.: 39**

**SERVICE MARK**

**SUPPLEMENTAL REGISTER**

A METAL SOURCE, LLC (OHIO LIMITED LIABILITY COMPANY)
25935 DETROIT ROAD, #321
CLEVELAND, OH 44145

FOR: DISTRIBUTION SERVICES, NAMELY, DELIVERY OF STANDARD AND CUSTOM-MADE PRODUCTS MADE FROM METALS, ALLOYS AND/OR RARE EARTH METALS, IN CLASS 39 (U.S. CLS. 100 AND 105).

FIRST USE 10-8-2010; IN COMMERCE 10-8-2010.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "LLC", APART FROM THE MARK AS SHOWN.

SER. NO. 85-316,388, FILED P.R. 5-9-2011; AM. S.R. 8-31-2011.

DAVID I, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office



EXHIBIT
P

FILED

Ref: CASE #1:10-CV-02343

All Metal Sales, Inc vs A Metal Source LLC

ENCLOSED

PERSONAL DEPOSITION

for Judge Nugent + Court

~~(also Court of Appeals)~~

from Thomas P. Klocker

( father of Thomas G. Klocker - All Metal Sa

step father of Jessica Esparza - A Metal So

Thomas P. Klocker

Received at U.S. Court house 12-22-11

by

EXHIBIT
Q

# MIDWEST METALS, INC.

### CORPORATE HEADQUARTERS

**25989 DETROIT ROAD * WESTLAKE, OH 44145**
**440.871.6455 * 800.860.6455 * 440.871.6552 Fax**
www.midwestmetalsinc.com

United States District Court
Northern District of Ohio
Eastern Division
Carl B. Stokes US Court House
801 West Superior Avenue
Cleveland OH 44113

Friday, December 16, 2011

**RE:  All Metal Sales, Inc.  v.  A Metal Source, LLC  f/d/b  All Metal Source, LLC    Case # 1:10-CV-02343**

I would like to tell you some important information and history about all of us as a family and as well as our line of business.  I am Thomas Paul Klocker, father of Thomas Gerald Klocker or "Tommy", the Plaintiff, and step-father of Jessica Esparza, the Defendant.

First off, I must say that I am the President / Owner of Midwest Metals, Inc. a metal distribution company I started in 1978 after working for Chase Brass & Copper, Inc.  I started and operate my business in my home in the city of Westlake where to this day, is still located in my home.  When I first started my business over 33 years ago, I established myself the old fashion way by working hard.  We could only communicate through the phone and postal mail, and we operated on typewriters because in those times, there were no faxes or computers.  The introduction of faxes became a very useful tool and was a big deal decades ago for our line of business, just as electronic email and the internet is today.

I established very good business relationships with both my customers and vendors from the ground up and maintained a mutual beneficial relationship with each and every one of them over the years.  I have been extremely fortunate to have had such a success story in starting a business from scratch and lasting as long as I have.  My hard work is the reason my business has grown and has been successfully operating for over three decades.

My success allowed me to spoil my son, Tommy, the Plaintiff while growing up even though his mother and I had divorced when he was very young.  But ever since Tommy was young, he has always been a problem child for me, long before Rocio and her family ever came into my life.  My son, Tommy, was so out of control that I was forced to send him to military school at Howe Military School in Indiana.  Somehow he got through military school but while attending Bowling Green State University, Tommy was thrown out of school due to academic failure.

DISTRIBUTOR OF:  ALLOY STEELS * ALUMINUM * BERYLLIUM * BRASS * BRONZE * CARBON STEEL * COPPER * STAINLESS STEEL *
TOOL STEEL * TITANIUM * HASTELLOY * LEAD * MARAGING * WASPALOY * MAGNESIUM * NICKEL ALLOYS * COBALT ALLOYS *
TUNGSTEN ALLOYS * HIGH TEMPERATURE ALLOYS * EXOTIC ALLOYS * RARE ALLOYS * SUPER ALLOYS
FOIL * STRIP * SHEET * PLATE * ROD * BAR * STRUCTURALS * TUBING * PIPE * EXTRUSIONS * FORGINGS * FASTENERS *
FLANGES * FITTINGS * CASTING * SHIM * SHAPES

*INCLUDING...ALL YOUR HARD TO FIND ITEMS!!*


EXHIBIT
Q

# MIDWEST METALS, INC.

### CORPORATE HEADQUARTERS

### 25989 DETROIT ROAD * WESTLAKE, OH 44145

### 440.871.6455 * 800.860.6455 * 440.871.6552 Fax

### www.midwestmetalsinc.com

Tommy eventually applied himself more into marine maintenance where he would clean other peoples' boats, or he would make repairs on the boats, or he would transport the boats, or prepare the boats for winter. In 1993, my son was arrested in Lakeside-Marblehead for stealing boat parts from the very same boats he was taking care of. To top things off, my son stored these stolen parts in my home in Marblehead without my knowledge. The worst of it all was that when he was arrested, he was charged as Thomas Klocker and the home address he gave the Police was my own address instead of his. This caused a widespread humiliation for me as it was printed in the newspapers and is public records. My own neighbors, my friends and everyone who knew me or knew of me believed that I was the one that had committed the crime when it was actually my son, Tommy. This incident lead me to have the serious discussion with my son, that from then on he was to always refer himself as Thomas Gerald Klocker or Thomas G. Klocker or Tom G. Klocker making it clear that he and I are two different people.

I met my wife, Rocio Sanjuan, in Boca Raton, Florida in 1993 when I was on vacation visiting my family for Christmas that coincidentally lived in the same city as did Rocio. I was very interested in getting to know her better and for some time, I called Rocio trying to convince her to come visit me in Ohio but she refused to come, so I began to visit her in Florida.

When I first met Rocio, I was not use to her broken English and at times, it was hard understanding her but we managed. Now, 19 years later, her English is still broken but it has gotten better and it is much easier for me to understand her. Sometimes others cannot understand her because of her accent and the speed she is speaking in and I then become her translator. When I met Rocio, she had 2 daughters, Karla and Jessica, the Defendant and in 1993 Karla was 20 years old meanwhile Jessica was 12 years old. Rocio and Karla moved in with me in Westlake, Ohio and months later, Jessica moved in with me as well. My son, Tommy, the Plaintiff, at the time was 24 years old but he did not live with us whatsoever as he had his own condo in Lakeside-Marblehead at the time.

My son has done everything in his power to make life a living hell for me, for Rocio, for Karla, and for Jessica. My son has been nothing but a complete nuisance and a monster for all of these years. My wife as you can see is Hispanic and has a dark skin complexion. This has always been an issue with Tommy. Back then and to this day, when my wife and I run into my son in public, my son constantly yells at my wife the racial "N" word or the "F" "B" words and repeatedly tells her to leave and go back to Colombia. My son has threatened to kill my wife on more than one occasion. My son has attempted to have my wife arrested, not once, but two times. In the mid 1990's Tommy told the Westlake Police that my wife, Rocio, was going to kill me with a pellet gun that he thought was a real gun. The other incident was in November 2009 when Tommy told the Westlake Police that my wife, Rocio, had killed me and that my dead body was in the basement of our home. Tommy had told the Westlake Police that

DISTRIBUTOR OF: ALLOY STEELS * ALUMINUM * BERYLLIUM * BRASS * BRONZE * CARBON STEEL * COPPER * STAINLESS STEEL * TOOL STEEL * TITANIUM * HASTELLOY * LEAD * MARAGING * WASPALOY * MAGNESIUM * NICKEL ALLOYS * COBALT ALLOYS * TUNGSTEN ALLOYS * HIGH TEMPERATURE ALLOYS * EXOTIC ALLOYS * RARE ALLOYS * SUPER ALLOYS
FOIL * STRIP * SHEET * PLATE * ROD * BAR * STRUCTURALS * WIRE * TUBING * PIPE * EXTRUSIONS * FORGINGS * FASTENERS * FLANGES * FITTINGS * CASTING * SHIM * SHAPES

*INCLUDING...ALL YOUR HARD TO FIND ITEMS!!*

Page 2 of 6



EXHIBIT
Q

# MIDWEST METALS, INC.

## CORPORATE HEADQUARTERS

### 25989 DETROIT ROAD * WESTLAKE, OH 44145
### 440.871.6455 * 800.860.6455 * 440.871.6552 Fax
### www.midwestmetalsinc.com

Rocio had killed her previous three (3) husbands, which is completely false as Rocio was a single mother of two (2) and her first and her only marriage has been with me, Thomas Paul Klocker.

My son goes around telling negative things to others about my wife, meanwhile, my wife has done nothing to him. My wife, Rocio, got him a ticket to Rio De Janiero, Brazil when I had told her specifically not to, but the three (3) of us had a great time on the vacation. Jessica was supposed to go with us but she was not able to take such a long time off from high school. Tommy had, had the misfortune of being arrested for receiving oral sex from a female illusionist in public at Mardi Gras in the Rio De Janiero. Other than this humiliating incident in Brazil, Tommy, Rocio and I had a wonderful time together golfing, boating, swimming, visiting important sites and enjoying the food and culture.

The only other times my son has been pleasant with my wife was 1) When Tommy wanted to take Rocio's daughter Karla out, 2) When Tommy wanted to date two (2) of Rocio's friends from her English school, 3) When Tommy wanted something out of me, he would use Rocio and go through her, to get me to give my son whatever it was he wanted at the time, and again 4) When I paid him large amounts of money, every month, to be nice to Rocio, my wife.

At some point in the early months of 1993, Rocio's daughter Karla at the age of 19 began working for me at Midwest Metals as one of my secretaries. Karla worked hard for me and helped me through a business crisis I had years ago and she respectfully worked for me until she moved to New York to start a family in 1996. Rocio's other daughter Jessica at the age of 14 began working for me after school in 1995 to help my secretaries with their paperwork, including Tommy's paperwork. She was quite handy because she was of the computer generation and at the time I implemented computers into my office at Midwest Metals, my secretaries were not computer literate. Jessica was computer savy and was very efficient.

After Tommy came out of jail for the crime he had committed for stealing the boat parts, he continued working in the marine business for another 3 years until he asked if he could work for me at Midwest Metals. My son worked at my business for a total of three (3) years from 1996 until he resigned in 1999 to which I was led to believe that he had gone back to marine maintenance. While employed at Midwest Metals, I had to pay my son a couple of thousand dollars at a time for him to be nice to Rocio, to Karla and to Jessica when he would interact with them as my business was in my home; and there were obvious times they would come in contact with each other. After paying him, he would be nice to them for a little while or sometimes just for a couple of days until he began his tantrum again and I would then have to cut him another check. This repetitive disrespectful behavior and outright extortion from my own son, lasted up until he left my business in 1999. For the record, Tommy's way of being nice to Rocio, to Karla and to Jessica was to completely ignore them, or avoid being around them




# MIDWEST METALS, INC.

### CORPORATE HEADQUARTERS

**25989 DETROIT ROAD * WESTLAKE, OH 44145**

**440.871.6455 * 800.860.6455 * 440.871.6552 Fax**

www.midwestmetalsinc.com

and not say a single word to them. Tommy caused problems at Midwest Metals when he physically assaulted one of my other employees [Lara] and because of this incident by my son, my company almost faced a possible lawsuit.

In the time Tommy was still working for me at Midwest Metals, I was notified by a couple of individuals that my son had started his own metal distribution business. Two of the women my son dated told my wife that Tommy was operating his business from the home he lived in, that I was paying his rent for, in Lakewood. Needless to say, I did not believe the news I was being given. Rocio's own daughter, Karla was telling me that Tommy was running his metal business within Midwest Metals but I didn't believe her either. Only when the UPS delivery driver told me that he had just made some deliveries at my son's business, did I truly believe that my son had become my competitor. Not only did he operate his own business from within my company, Tommy used Midwest Metals company checks to pay for the "off-the-radar orders" he processed and diverted to his own business, All Metal Sales, Inc. My son stole additional company checks to pay himself extra while in my absence to top things off. This was not a small amount of money we are talking here. We are talking several of thousands of dollars. My accountant and I discovered my son's mischievous actions only after Tommy was no longer employed by Midwest Metals.

I later discovered that my son, Tommy, was visiting my customers and presenting himself to them as Thomas Klocker or Tom Klocker, President of Midwest Metals, Inc. My son told my customer's that the company was going under a business name change to All Metal Sales, Inc. and that the new business location was in Avon, Ohio; which is where Tommy had his first warehouse before relocating to Westlake. Before my son Tommy officially resigned from Midwest Metals and while still working for me, he had long before established All Metal Sales, Inc. and he was diverting Midwest Metals business to All Metal Sales, Inc. I lost a lot of my key customers and the repeat orders to my son that I had worked very hard to develop over the years that fueled my business.

Tommy and the success of his business All Metal Sales, Inc. derived from the hard work my business had established with my customers that was outright stolen from Midwest Metals. Stealing prime and repetitive business from Midwest Metals paved the way much too easily for my son the millionaire. My son became a millionaire from one night to the other and he has been living the grand lifestyle that he believes he worked hard for although only a few know the factual truth of my son's success. Taking a look at my son's lifestyle, his possessions people wonder, "How the hell did this guy become so successful?" I ask myself, after taking all of my business and my son's continued extravagant purchases, when will his parade end. My wife and I have been saying for several years that he is burning




DISTRIBUTOR OF: ALLOY STEELS * ALUMINUM * BERYLLIUM * BRASS * BRONZE * CARBON STEEL * COPPER * STAINLESS STEEL TOOL STEEL * TITANIUM * HASTELLOY * LEAD * MARAGING * WASPALOY * MAGNESIUM * NICKEL ALLOYS * COBALT ALLOYS * TUNGSTEN ALLOYS * HIGH TEMPERATURE ALLOYS * EXOTIC ALLOYS * RARE ALLOYS * SUPER ALLOYS FOIL * STRIP * SHEET * PLATE * ROD * BAR * STRUCTURALS * WIRE * TUBING * PIPE * EXTRUSIONS * FORGINGS * FASTENERS * FLANGES * FITTINGS * CASTING * SHIM * SHAPES

*INCLUDING...ALL YOUR HARD TO FIND ITEMS!!*



EXHIBIT Q

# MiDWEST METALS, INC.

### CORPORATE HEADQUARTERS

25989 DETROIT ROAD * WESTLAKE, OH  44145
440.871.6455 * 800.860.6455 * 440.871.6552 Fax
www.midwestmetalsinc.com

through his money faster than he is making it, and that one day his finances will catch up to him.  Other mutual acquaintances have commented the same with regards to my son and his lifestyle.

Jessica graduated in 2005 from Bowling Green State University where she was studying to become a doctor while also working for Midwest Metals part time on school breaks or long weekends.  At that same time period, Midwest Metals had experienced some changes and was in need of personnel.  Instead of going to medical school at Case Western Reserve as she had planned, she continued to work for my company, Midwest Metals due to my business losing key veteran employees.  Jessica became Midwest Metals main employee and she managed the duties and responsibilities herself, that I use to have five (5) employees perform.  Jessica had become a valuable part of my business and worked for Midwest Metals for 14 years up until June of 2009.  Five (5) months later, Jessica opened her own metal business under the name All Metal Source, LLC.  She too has started her business in her home just as I did 33 years ago.

The home I used to rent for Tommy in Lakewood, he has since then purchased along with purchasing the home right next to it combining the two (2) homes as one.  Tommy had an expensive, extensive and extravagant remodeling project on his home in 2005.  This remodeling project has lead to a legal battle that my son has been battling for years now, against the residential community he lives in which involves a dispute over the color of brick used on the strip of property Tommy claims to be the owner of.  The final outcome of the all the cases were not in my sons' favor and he is now responsible for the court costs and attorney's fees of all the failed cases and their appeals as the final decision made from the Ohio Supreme Court in April of 2011.  My son had told me that he had spent almost two-hundred thousand dollars on lawyers for these cases he lost.

My son then bragged that he was prepared to spend a lot more money than that on legal fees to make sure Jessica, the Defendant, is put out of business.  Furthermore, my son shared with me that ten (10) years ago a successful businessman, Tommy's landlord at some point in time, told him, "Don't be afraid to sue people and or to sue as many people as you can as this will make you successful.  For example, you get an oil change for your car, sue or threaten to sue the mechanic for a scratch on the car hood and they will settle to any of your demands.  This way you make out because most people can't afford lawsuits, therefore getting anything you want from them."  This is exactly what Tommy is doing with the lawsuit against Jessica.  He is abusing the courts to take advantage of Jessica.  Tommy has financial responsibilities to his failed lawsuit attempts and I am most certain that his case against Jessica is more of a way to get money from her that way he can pay his own debt, while still succeeding in destroying her business.



DISTRIBUTOR OF:  ALLOY STEELS * ALUMINUM * BERYLLIUM * BRASS * BRONZE * CARBON STEEL * COPPER * STAINLESS STEEL *
TOOL STEEL * TITANIUM * HASTELLOY * LEAD * MARAGING * WASPALOY * MAGNESIUM * NICKEL ALLOYS * COBALT ALLOYS *
TUNGSTEN ALLOYS * HIGH TEMPERATURE ALLOYS * EXOTIC ALLOYS * RARE ALLOYS * SUPER ALLOYS
FOIL * STRIP * SHEET * PLATE * ROD * BAR * STRUCTURALS * WIRE * TUBING * PIPE * EXTRUSIONS * FORGINGS * FASTENERS *
FLANGES * FITTINGS * CASTING * SHIM * SHAPES
INCLUDING...ALL YOUR HARD TO FIND ITEMS!!



EXHIBIT
Q

I did my best raising my son as his mother and I had divorced when he was extremely young. But the truth of the matter is, I want you to see my son, Tommy, the Plaintiff and the owner of All Metal Sales, Inc. for the monster that he is. If you have not established from my letter today as well as the evidence from this case that are truthful and factual, that my the Plaintiff is selfish, he is arrogant, he is racist, he is deceitful and conniving, he is cruel and he is vindictive. He is a monster and I have been saying this for way too long.

I firmly believe that my son Thomas G. Klocker or "Tommy" should be held fully responsible for paying Jessica Esparza's court costs, attorney's fees, compensatory damages and any further relief the Courts deem appropriate. This lawsuit has absolutely nothing to do with regards to Trademark infringement, nor does it have to do with unfair competition, but instead this lawsuit is derived from Tommy's extreme hatred and vengeance towards Jessica. This case is only being pursued by my son Tommy in the hopes to destroy my daughter Jessica Esparza. My son continues to cause an immeasurable amount of pain and suffering to Jessica emotionally, financially and spiritually.

Thank you for reading my input on the injustice that my son, Thomas G. Klocker, "Tommy" the Plaintiff, is attempting to do to my daughter, Jessica Esparza, the Defendant.

Sincerely,

Thomas Paul Klocker aka known as Tom, Sr.
President of Midwest Metals, Inc.

Verified on this 16th day of December 2011.
Rachael Mathes Notary Public
My Comm. Expires:
June 21, 2015

DISTRIBUTOR OF: ALLOY STEELS * ALUMINUM * BERYLLIUM * BRASS * BRONZE * CARBON STEEL * COPPER * STAINLESS STEEL * TOOL STEEL * TITANIUM * HASTELLOY * LEAD * MARAGING * WASPALOY * MAGNESIUM * NICKEL ALLOYS * COBALT ALLOYS * TUNGSTEN ALLOYS * HIGH TEMPERATURE ALLOYS * EXOTIC ALLOYS * RARE ALLOYS * SUPER ALLOYS
FOIL * STRIP * SHEET * PLATE * ROD * BAR * STRUCTURALS * WIRE * TUBING * PIPE * EXTRUSIONS * FORGINGS * FASTENERS * FLANGES * FITTINGS * CASTING * SHIM * SHAPES
INCLUDING...ALL YOUR HARD TO FIND ITEMS!!

EXHIBIT Q

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ALL METAL SALES, INC., | ) | CASE NO. 1:10 CV 2343 |
| | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGMENT |
| ALL METAL SOURCE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

The above-captioned case came before this Court for a trial by jury. At the conclusion of the trial, the Jury returned unanimous Answers to Interrogatories in favor of Defendant, All Metal Source, LLC.

In its Complaint, Plaintiff All Metal Sales, Inc., asserted claims of unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1))A); violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 et. seq.; unfair competition; and unjust enrichment all based upon Defendant's alleged infringement of Plaintiff's trademark "All Metal" and its A Logo

The trial commenced on January 4, 2012. A Jury of twelve was duly impaneled and sworn pursuant to Fed. R. Civ. P. 39(c)(1). Opening statements of counsel were made. Plaintiff called the following witness(es): (1) Jim Vandevelde; (2) Ancillia Garcia-Coolidge by video depositon; (3) Christopher Ciccarello; (4) Jessica Maria Esparza. Plaintiff rested. The Court reserved ruling on Defenant's Rule 50 motion. The Defendant called the following witness(es): (1) Jaine Anne Wirtjes; (2) Thomas P. Klocker; and (3) Jessica Esparza. Court was then



adjourned until January 5, 2012 at 8:15 a.m.

The trial continued on January 5, 2012. The Defendant called the following witness(es): (4) Professor Jeffrey Samuels (taken out of order); (3) Jessica Esparza, continued. The Defendant rested. Plaintiff rested. The Court gave initial jury instructions. Closing arguments of counsel were made and the Court gave final instructions. Thereafter, the Jury retired to deliberate. The Jury, in open court, returned the following unanimous Answers to Interrogatories:

## INTERROGATORY NUMBER 1

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" infringed on Plaintiff's "All Metal" trademark in violation of the Lanham Act?

___NO___ (insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 2

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" willfully infringed Plaintiff's "All Metal" trademark in violation of the Lanham Act?

___NO___ (insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 3

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" infringed Plaintiff's "All Metal" trademark in violation of the Lanham Act?

2

__NO_____(insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 4

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" willfully infringed Plaintiff's "All Metal" trademark in violation of the Lanham Act?

__NO_____(insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 5

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" infringed Plaintiff's A Logo in violation of the Lanham Act?

__NO_____(insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 6

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" willfully infringed Plaintiff's A Logo in violation of the Lanham Act?

__NO_____(insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 7

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC " infringed Plaintiff's A Logo in violation of the Lanham Act?

__NO_____(insert in ink "YES" or "NO" according to your findings)

3

### INTERROGATORY NUMBER 8

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" willfully infringed Plaintiff's A Logo in violation of the Lanham Act?

___NO_____(insert in ink "YES" or "NO" according to your findings)

### INTERROGATORY NUMBER 9

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Plaintiff's "All Metal" trademark was infringed by cyberpiracy in violation of the Lanham Act by Defendant's use of the domain name "AllMetalSource.com"?

___NO_____(insert in ink "YES" or "NO" according to your findings)

### INTERROGATORY NUMBER 10

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Plaintiff's "All Metal" trademark was infringed by cyberpiracy in violation of the Lanham Act by Defendant's use of the domain name "AMetalSource.com"?

___NO_____(insert in ink "YES" or "NO" according to your findings)

The Court read the Interrogatory Answers in open court, and thereafter, the Court polled the Jury. Each Juror affirmatively responded to the correctness of the Answers. The Court accepted the Interrogatory Answers and the Jury was then discharged.

THEREFORE, based upon the Interrogatory Answers, the Court enters Judgment

pursuant to Rule 58 of the Federal Rules of Civil Procedure in favor of the Defendant A Metal

Source LLC (formerly known as All Metal Source LLC on Plaintiff's Complaint. All costs are to

be paid by the Plaintiff.

**IT IS SO ORDERED.**


_____
**DONALD C. NUGENT**
**UNITED STATES DISTRICT JUDGE**


DATE: _____

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,111,084**

**Registered Mar. 13, 2012**

**Int. Cls.: 6 and 40**

**TRADEMARK**

**SERVICE MARK**

**PRINCIPAL REGISTER**

ALL METAL SALES, INC. (OHIO CORPORATION)
29260 CLEMENS ROAD
WESTLAKE, OH 44145

FOR: NON-STANDARD AND CUSTOM-MADE ITEMS MADE FROM HIGHLY SPECIALIZED NON-STANDARD METAL MATERIAL, NAMELY, METAL IN THE FORM OF FLAT BARS, HOLLOW BARS, RECTANGULAR BARS, ROUND BARS, HEXAGON BARS, SQUARE BARS, HALF ROUND BARS, COILS, PLATES, TUBES, SHEETS, STRIPS, PIPES, STRUCTURAL BEAMS, WIRE, FOIL, STRIPS, STRUCTURAL CHANNELS, STRUCTURAL TEES, STRUCTURAL ANGLES, STRUCTURAL RAILS, RINGS, AND CUSTOMER-SPECIFIED SHAPES, ALL FOR FURTHER MANUFACTURE; METAL BOLTS; METAL SCREWS; AND METAL SHIM STOCK, IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FIRST USE 9-30-1999; IN COMMERCE 9-30-1999.

FOR: MANUFACTURING TO THE ORDER AND SPECIFICATION OF OTHERS OF NON-STANDARD AND CUSTOM-MADE ITEMS MADE FROM HIGHLY SPECIALIZED NON-STANDARD METAL MATERIAL, NAMELY, METAL IN THE FORM OF FLAT BARS, HOLLOW BARS, RECTANGULAR BARS, ROUND BARS, HEXAGON BARS, SQUARE BARS, HALF ROUND BARS, COILS, PLATES, TUBES, SHEETS, STRIPS, PIPES, STRUCTURAL BEAMS, WIRE, FOIL, STRIPS, STRUCTURAL CHANNELS, STRUCTURAL TEES, STRUCTURAL ANGLES, STRUCTURAL RAILS, RINGS, AND CUSTOMER-SPECIFIED SHAPES, ALL FOR FURTHER MANUFACTURE; METAL BOLTS; METAL SCREWS; AND METAL SHIM STOCK, IN CLASS 40 (U.S. CLS. 100, 103 AND 106).

FIRST USE 9-30-1999; IN COMMERCE 9-30-1999.

THE STIPPLING IS FOR SHADING PURPOSES ONLY

THE MARK CONSISTS OF THE LETTER "A" STYLIZED WITH A SWIRL AROUND THE LETTER "A".

SER. NO. 85-243,378, FILED 2-16-2011.

ANDREW RHIM, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office



EXHIBIT S

STATUS    DOCUMENTS                                                    Back to Search    Print

Generated on: This page was generated by TSDR on 2012-12-05 16:07:45 EST

Mark: A



US Serial Number: 55242578
US Registration Number: 4111084
Register: Principal
Mark Type: Trademark, Service Mark
Status: Registered. The registration date is used to determine when post-registration maintenance documents are due.
Status Date: Mar. 13, 2012
Publication Date: Dec. 27, 2011

Application Filing Date: Feb. 18, 2011
Registration Date: Mar. 13, 2012

## Mark Information

Mark Literal Elements: A
Standard Character Claim: No
Mark Drawing Type: 3 - AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S)/NUMBER(S)
Description of Mark: The mark consists of the letter "A" stylized with a swirl around the letter "A".
Color(s) Claimed: Color is not claimed as a feature of the mark.
Lining and Stippling Statement: The stippling is for shading purposes only.
Design Search Code(s): 26.17.09 - Bands, curved lines, curved;Curved line(s), band(s) or bar(s); Bars, curved

## Goods and Services

## Basis Information (Case Level)

## Current Owner(s) Information

Owner Name: All Metal Sales, Inc.
Owner Address: 28250 Clemens Road
                Westlake, OHIO 44145
                UNITED STATES
Legal Entity Type: CORPORATION

State or Country Where Organized: OHIO

## Attorney/Correspondence Information

### Attorney of Record

Attorney Name: David B. Cupar

Docket Number: 13313

### Correspondent

Correspondent Name/Address: DAVID B. CUPAR
                MCDONALD HOPKINS LLC
                600 SUPERIOR AVE E STE 2100
                CLEVELAND, OHIO 44114-2690
                UNITED STATES
Phone: 216-348-5400

Correspondent e-mail: ip@mcdonaldhopkins.com

Fax: 216-348-5474

Correspondent e-mail Authorized: No

Domestic Representative - Not Found



Prosecution History

| Date | Description | Proceeding Number |
|------|-------------|-------------------|
| Mar. 13, 2012 | REGISTERED-PRINCIPAL REGISTER | |
| Dec. 27, 2011 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Dec. 27, 2011 | PUBLISHED FOR OPPOSITION | |
| Dec. 07, 2011 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Nov. 02, 2011 | LAW OFFICE PUBLICATION REVIEW COMPLETED | 68120 |
| Nov. 22, 2011 | ASSIGNED TO LIE | 68123 |
| Nov. 01, 2011 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Nov. 01, 2011 | EXAMINER'S AMENDMENT ENTERED | 88869 |
| Nov. 01, 2011 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED | 6328 |
| Nov. 01, 2011 | EXAMINERS AMENDMENT E-MAILED | 6328 |
| Nov. 01, 2011 | EXAMINERS AMENDMENT -WRITTEN | 78048 |
| Oct. 28, 2011 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88869 |
| Oct. 28, 2011 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88869 |
| Oct. 28, 2011 | TEAS REQUEST FOR RECONSIDERATION RECEIVED | |
| Sep. 13, 2011 | NOTIFICATION OF FINAL REFUSAL EMAILED | |
| Sep. 13, 2011 | FINAL REFUSAL E-MAILED | |
| Sep. 13, 2011 | FINAL REFUSAL WRITTEN | 78048 |
| Aug. 23, 2011 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88869 |
| Aug. 23, 2011 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88869 |
| Aug. 23, 2011 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| May 18, 2011 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6328 |
| May 18, 2011 | NON-FINAL ACTION E-MAILED | 6325 |
| May 18, 2011 | NON-FINAL ACTION WRITTEN | 78048 |
| May 18, 2011 | ASSIGNED TO EXAMINER | 78048 |
| Feb. 23, 2011 | NOTICE OF DESIGN SEARCH CODE AND PSEUDO MARK MAILED | |
| Feb. 22, 2011 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Feb. 19, 2011 | NEW APPLICATION ENTERED IN TRAM | |

TM Staff and Location Information

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **ALL METAL SALES, INC.,** | ) | **CASE NO. 1:10 CV 2343** |
| | ) | |
| | ) | **JUDGE DONALD C. NUGENT** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **ALL METAL SOURCE, LLC,** | ) | **AND ORDER (CORRECTED)** |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on Plaintiff's Renewed Motion for Judgment as a Matter of Law or, for a New Trial(ECF #71). On January 5, 2012, after a two day trial, the twelve member Jury returned unanimous Interrogatory Answers finding that Plaintiff had not demonstrated the elements necessary for its claims of unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1))A); violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 et. seq.; unfair competition; and unjust enrichment all based upon Defendant's alleged infringement of Plaintiff's trademark "All Metal" and its A Logo

The Jury, in open court, returned the following unanimous Answers to Interrogatories:

## INTERROGATORY NUMBER 1

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" infringed on Plaintiff's "All Metal" trademark in violation of the Lanham Act?

___NO___ **(insert in ink "YES" or "NO" according to your findings)**

## INTERROGATORY NUMBER 2



Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" willfully infringed Plaintiff's "All Metal" trademark in violation of the Lanham Act?

___NO___(insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 3

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" infringed Plaintiff's "All Metal" trademark in violation of the Lanham Act?

___NO___(insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 4

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" willfully infringed Plaintiff's "All Metal" trademark in violation of the Lanham Act?
___NO___(insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 5

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" infringed Plaintiff's A Logo in violation of the Lanham Act?

___NO___(insert in ink "YES" or "NO" according to your findings)

## INTERROGATORY NUMBER 6

Do you find that Plaintiff All Metal Sales, Inc. proved by

2

a preponderance of the evidence that Defendant's use of "All Metal Source, LLC" willfully infringed Plaintiff's A Logo in violation of the Lanham Act?

___NO_____(insert in ink "YES" or "NO" according to your findings)

### INTERROGATORY NUMBER 7

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC " infringed Plaintiff's A Logo in violation of the Lanham Act?

___NO_____(insert in ink "YES" or "NO" according to your findings)

### INTERROGATORY NUMBER 8

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Defendant's use of "A Metal Source, LLC" willfully infringed Plaintiff's A Logo in violation of the Lanham Act?

___NO_____(insert in ink "YES" or "NO" according to your findings)

### INTERROGATORY NUMBER 9

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Plaintiff's "All Metal" trademark was infringed by cyberpiracy in violation of the Lanham Act by Defendant's use of the domain name "AllMetalSource.com"?

___NO_____(insert in ink "YES" or "NO" according to your findings)

### INTERROGATORY NUMBER 10

Do you find that Plaintiff All Metal Sales, Inc. proved by a preponderance of the evidence that Plaintiff's "All Metal" trademark was infringed by cyberpiracy in violation of the

3

Lanham Act by Defendant's use of the domain name "AMetalSource.com"?

___NO___(insert in ink "YES" or "NO" according to your findings)

The Court accepted the Jury's Answers and entered Judgment in favor of Defendant on Plaintiff's Complaint. Plaintiff now moves for judgment as a matter of law that: (1) Plaintiff's ALL METAL trademark has secondary meaning; (2) Defendant's use of the "All Metal" term in its first business name All Metal Source, LLC, infringed Plaintiff's ALL METAL mark in violation of the Lanham Act, Ohio's Deceptive Trade Practices Act and unfair competition law; and (3) that Defendant's use of "A Metal Source, LLC" as its second business name infringed Plaintiff's ALL METAL mark in violation of the Lanham Act, Ohio's Deceptive Trade Practices Act and unfair competition law.[1]  Plaintiff states that it no longer seeks money damages, only a judgment of infringement and a corresponding permanent injunction.

## STANDARD OF REVIEW

Fed.R.Civ.P. 50(b) provides that if a court does not grant a motion for judgment as a matter of law made after the close of all the evidence and the party renews its request after a verdict is returned, the court may (1) allow the judgment to stand, (2) order a new trial, or (3)

---

[1]

Somewhat confusingly, Plaintiff states "All Metal no longer seeks money damages and, as such, does not seek judgment as a matter of law or a new trial on damages. All Metal seeks only a judgment of infringement and a corresponding permanent injunction." (ECF #71 at 1) However, it is unclear how seeking a "judgment" differs from judgment as a matter of law and Plaintiff does not provide any clarification. The Court will not re-address a summary judgment issue at this late juncture, and will treat Plaintiff's motion as one for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b).  Further, despite the quoted statement above, in its conclusion in its Reply Brief, Plaintiff requests the alternative relief of a new trial.

4

direct entry of judgment as a matter of law. The "standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion." Wright & Miller, *Federal Practice and Procedure*: Civil 2d § 2537, p. 347 (footnote omitted).

That is, judgment as a matter of law may be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); see also Fed. Civ. R.50(b). "The Court is not free to weigh the parties' evidence or to pass upon the credibility of witnesses. Nor may the Court substitute its own judgment for that of the jury.... When the evidence would permit reasonable minds to differ on the issues decided, a motion for judgment as a matter of law must be denied. In short, every effort must be made to uphold the verdict if reasonably possible." *In re Scrap Metal Antitrust Litigation*, No. 1:02 CV 0844, 2006 WL 2850453, at *8 (N.D. Ohio Sept. 30, 2006).

The application of Fed. Civ. R.59 is similarly limited, and does not permit a court to set aside a jury verdict "simply because different inferences and conclusions could have been drawn or because some other results are more reasonable." *J.C. Wyckoff & Assoc., v. Standard Fire Insurance Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). Under Fed. R. Civ. P. 59(a), "a new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...."

When reviewing a motion for a new trial, a court "should indulge all presumptions in

5

favor of the validity of the jury's verdict." *Brooks v. Toyotomi Co.*, 86 F.3d 582, 588 (6th Cir. 1996)(citing *Ragnar Benson, Inc. v. Kassab*, 325 F.2d 591, 594 (3rd Cir. 1963)). A jury verdict must be upheld so long as there is any competent and substantial evidence in the record to support it, even if contradictory evidence was presented. *Green v. Francis*, 705 F.2d 846, 849 (6th Cir. 1983).

Nevertheless, on a motion for new trial, as contrasted with a motion for judgment as a matter of law, the judge may set aside the verdict even though there exists substantial evidence to support it. *McDonald v. Petree*, 409 F.3d 724 (6th Cir. 2005). However, the district court "should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result." *Brooks*, 86 F.3d at 588. The Sixth Circuit has explained that a "seriously erroneous result" would be evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion *i.e.*, the proceedings having been influenced by prejudice or bias. *Holmes v. City of Massillon*, 78 F.3d 1041 (6th Cir. 1996).

Moreover, procedural errors, such as a mistake regarding the admission or exclusion of evidence or an error made in instructing the jury, cannot be the basis for ordering a new trial unless the error affects a substantial right of a party. See Fed. R. Civ. P. 61. Thus, a motion for a new trial will not be granted unless the moving party suffered prejudice. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir.2004)(citing *Erskine v. Consol. Rail Corp.*, 814 F.2d 266, 272 (6th Cir.1987)) (holding that a new trial will not be granted on the ground that surprise evidence was admitted unless the moving party was prejudiced). Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted

6

unless the evidence would have caused a different outcome at trial. *Morales v. American Honda Motor Co., Inc.,* 151 F.3d 500, 514 (6th Cir.1998).

## DISCUSSION

The basis of Plaintiff's motion is that the twelve member jury erred in answering all ten interrogatories because based on the evidence offered at trial, reasonable minds could only conclude that each one of those interrogatories should have been answered in Plaintiff's favor. Plaintiff notes various testimony or documents which "dispositively" establish that its ALL METAL mark has secondary meaning and that there was likelihood of confusion. While, the evidence referred to by Plaintiff could certainly provide an inference of secondary meaning and/or likelihood of confusion, it was by no means dispositive in a legal sense. Further, Defendant introduced witnesses and documents which supported Defendant's position on those questions. After carefully reviewing the record, filings and briefs, the Court concludes that the evidence would permit reasonable minds to differ on the issues decided. The Court must not and will not weigh the evidence or make credibility determinations. The jury did that and its decisions were reasonably supported by the evidence. Accordingly, a motion for judgment as a matter of law must be denied.

Similarly, with respect to Plaintiff's half hearted alternative request for a new trial, this Court will " indulge all presumptions in favor of the validity of the jury's verdict." *Brooks,* 86 F.3d 582, 588 (citation omitted) and uphold the jury's verdict so long as there is any competent and substantial evidence in the record to support it, even if contradictory evidence was presented. See *Green,* 705 F.2d 846, 849. Based upon review of the trial transcript, evidence and filings, the Court does not find that the answers to interrogatories were "seriously erroneous." That is the

answers were not against the weight of the evidence and there was no showing that trial was

unfair to the Plaintiff or that the answers were influenced by prejudice or bias. *Holmes,* 78 F.3d

1041. As such, Plaintiff's motion for a new trial is denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's Renewed Motion for Judgment as a Matter of

Law or, for a New Trial (ECF #71) is denied.

**IT IS SO ORDERED.**

                               */s/Donald C. Nugent*

                               **DONALD C. NUGENT**

                               **UNITED STATES DISTRICT JUDGE**

**DATE:** __May 18, 2012____