# Exhibit G

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Jessica Esparza, et al., | CASE NO.: CV-13-798996 |
| Plaintiffs, | JUDGE: KATHLEEN ANN SUTULA |
| v. | **DEFENDANTS' REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Thomas G. Klocker, et al., | |
| Defendants. | |

Defendants hereby submit their Reply to the Response of the Plaintiffs to the Defendants' Motion for Summary Judgment. Defendants will first address Plaintiffs' Statement of Facts, and second, Plaintiffs' legal arguments in a Memorandum of Law.

## STATEMENT OF FACTS

It is of interest that the Plaintiffs do not identify any material issues of fact to be determined by a jury in their statement of facts. Rather, Plaintiffs are reduced to attempting to sway this Court by the introduction of irrelevant information which serves no purpose but to attempt to convince the court that the Defendant, Thomas G. Klocker, (Klocker) is a bad person; and, thus should not win. Wherefore, Defendant, Klocker, would ask this Court to strike from the pleadings all statements allegedly made by Defendant about Rocio Klocker contained on page 1 of the brief of the Plaintiffs.

Rule 12 (F) of the Ohio Rules of Civil Procedure provides that the Court may order stricken from any pleading any immaterial, impertinent or scandalous material.

1

'Immaterial' allegations are generally defined as those that have no bearing on the subject matter of the litigation. 'Impertinent' allegations have been defined as statements that do not pertain or are not necessary to the issues in question. A 'scandalous' allegation generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court. *Pigford v. Veneman*, 215 F.R.D. 2, 4(D.D.C.2003); *see also In re 2TheMart.com Inc. Securities Litigation*, 114 F.Supp.2d 955, 965(C.D.Cal.2003)(**'scandalous'** includes allegations that place cruelly derogatory light on a party or other person. Therefore, Courts may strike allegations that do not relate to the subject matter of the action and may cause 'significant prejudice' to one or more of the parties. *New Day Farms, LLC v. Board of Trustees of York Township,* **Ohio**, 2009 U.S. Dist. LEXIS 130429, 2009 WL 1652126, *3 (S.D. **Ohio** 2009).

At page 2 of their Brief, Plaintiffs begin a recitation of alleged acts of the Defendants which are immaterial to this case. Rocio Klocker is not a Plaintiff. The alleged events occurred in the mid or late 1990s, totally unrelated to the acts which serve as the basis for this litigation. Wherefore, Defendants move this Court for an ORDER striking these allegations from the pleadings.

Next Plaintiffs, at page 3, set forth an entire paragraph of alleged misdeeds by Defendant Klocker without providing citation to any evidentiary material in support. This is because there is none. Plaintiffs do not provide a citation to any evidence to support any allegation until it is alleged that Defendants purchased domain names. Wherefore,

2

Defendants move this Court for a determination that these mere allegations cannot serve as a factual basis for a denial of the Defendants' Motion for Summary Judgment.

Thus, a review of the Plaintiffs' "Statement of Facts" reveals that it consists of one section of immaterial and scandalous material which should be stricken; one section of allegations without any evidentiary basis; and, one section that establishes that domain names were purchased, a point on which there is no dispute and which will be addressed later in Defendants' Reply.

In contrast to the Plaintiffs' failure to set forth evidentiary material in support of their position, Defendants identified and filed evidentiary material of the type set forth in Rule 56 (C) in support of their motion for summary judgment. When the Defendants discharged this initial burden, Plaintiffs then bear a reciprocal burden of specificity to oppose the motion. *Vahila v. Hall*, 77 Ohio St. 3d 421, 429, 674 N.E. 2d 1164 (1997). See, also, *Mitseff v. Wheeler*, 38 Ohio St. 3d 112, 526 N.E. 2d. 798 (1988). This, Plaintiffs have failed to do. Therefore, as Defendants have met their burden, and Plaintiffs have not, Defendants are entitled to summary judgment in this matter. In order to further establish that the Defendants have met their burden in this matter, Defendants will address the Plaintiffs' claims in the order in which they appear in Plaintiffs' response.

## MEMORANDUM IN SUPPORT

**Plaintiffs' Sixth Cause of Action. Intentional interference with a business relationship (Counts 35-39) and (7) Intentional interference with a business contract. (Counts 40-43)**

3

Defendants seek summary judgment on the claims of the intentional interference with a business relationship and intentional interference with a business contract because A-Metal cannot identify a single existing contract with which All-Metal interfered.

To determine the elements of a cause of action for intentional interference with a business relationship we turn to the Ohio Jury Instructions. According to OJI, tortious interference with business relations is but one example of interference with economic relationships, which includes tortious interference with contractual relations and tortious interference with employment relations. *OJI-CV 453.03, OJI-CV 453.05. See, also, A & B-Abell Elevator Co., Inc., 73 Ohio St. 3d 1, 1995-Ohio-66 (plurality opinion) ; Walter v. ADT Sec. Sys., Inc., 10th Dist. No. 06AP-115, 2007-Ohio-3324* . Tortious interference with business relations and tortious interference with contractual relations differ only in that the former tort does not require proof of a contractual relationship. *A & B-Abell Elevator Co., Inc., 73 Ohio St. 3d 1, 1995-Ohio-66* . Thus, "[t]he main difference between tortious interference with a contract and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract." Walter v. ADT Sec. Sys., Inc., 10th Dist. No. 06AP-115, 2007-Ohio-3324, at P 31 .

Pursuant to OJI, before you can find for the plaintiff, you must find by the greater weight of the evidence that there was an existing or a prospective business relationship between the plaintiff and some third party; and, the defendant knew of the business relationship; and, the defendant acted with the purpose to interfere with the plaintiffs' business relationship. As set forth in the Defendants' Motion for Summary Judgment, Plaintiffs' cause of action must fail because the Plaintiffs cannot identify even one third

4

party with whom the Plaintiffs had an existing or prospective business relationship with whom the Defendants interfered.

The Plaintiffs' claims that the Defendants "misappropriated" Plaintiff's customer information and "caused a nosedive" in sales is not supported by any evidence and is merely speculative. There is no evidence that the Defendants "misappropriated" client information. Defendants had proper access to information in the federal case, but there is no evidence Defendants used information at all for any purpose, let alone for business gain or benefit or to divert Plaintiffs' customers. Plaintiffs allege business went down since the federal lawsuit was filed but fails to identify a single customer, sale or contract lost. Plaintiffs have not offered any evidence that a causal connection exists between the conduct complained of and the "nosedive." Plaintiffs' conclusion is speculative and could just as easily been due to general economic conditions, poor marketing, greater competition, or other market factors.

Esparza's opposition confirms that she has not (and cannot) identify a single "contract" or "business relationship" with which Defendants allegedly interfered. Plaintiffs rely on testimony of one unnamed customer that A-Metal identified who was allegedly confused and mistakenly typed in a domain name owned by All-Metal. However, this does not establish a lost customer or prospective customer because in fact the customer picked up the phone and spoke to A-Metal. Nothing was lost.

Further, the elements require Plaintiffs to establish the Defendants knew of the business relationship; and, Defendants acted with the purpose to interfere with Plaintiffs' business relationship. Nothing in the evidence submitted by the Plaintiffs establishes that the Defendants knew of this prospective customer and acted with the purpose to

interfere with that business relationship.  Under the Plaintiffs' analysis, any competitor of any company who took any action to saturate the market or woo customers would be interfering with another company's "prospective business" by the mere fact of their existence.  That is why the case law and the elements of the cause of action require more specificity.

Plaintiffs' arguments regarding the domain names are merely a smoke screen to hide the fact that they have no evidence to support their claims. First, Plaintiffs purposely dropped their federal unfair competition claim, which is the law that would apply to improper domain uses, to avoid federal jurisdiction and obtain remand.  This was done because Plaintiffs have no evidence that All-Metal was actually using any of the domain names that it registered. Instead, the evidence is that All –Metal was merely holding them.  Courts unanimously agree that there is nothing tortious or confusing about purchasing domain names when, as here, they are merely being owned and not being used as a redirect or to host a website. See: *NVST.COM INC. V. NVEST, LLP*, 32 Fed Appx. 207; 2002 WL 460221 (C.A. 9 (Wash)); *HQM. LTD, and Hatfield, Inc. v. William B. HATFIELD,* 71 F.Supp. 2d 500; *CLINE V. 1888-PLUMBING GROUP, INC.*, 146 F.Supp. 2d 351; and, *JUNO ONLINE SERVICES, L.P. V. JUNO LIGHTING, INC.*, 979 F.Supp. 684, 44 U.S.P.Q. 2d 1913

The reason is that when All-Metal purchased the domains, nothing changed from the perspective of the outside world. To illustrate, if a customer had typed in the allmetalsourcell.com domain before All-Metal purchased the domain, he would have arrived at the exact same dead site that he arrived at after All-Metal purchased the domain. Therefore, All-Metal's purchase of the domain is not the cause of any

confusion, rather it was the customer mistakenly typing the wrong domain name that caused the purported issue.

Wherefore, Defendants move this Court for an ORDER of Summary Judgment on Counts 35-43 of the Plaintiffs' Second Amended Complaint.

### Malicious Civil Prosecution (Counts 1-19)

Defendants seek summary judgment on the malicious prosecution claim because A-Metal cannot establish a pre-judgment seizure of person or property as required to prove this cause of action. Again, in analyzing whether the Plaintiffs have met their burden of proof in providing evidence on all key elements of this cause of action, we begin our analysis with the Ohio Jury Instructions. The comments to OJI 439.05 provide: **The tort of malicious prosecution requires the seizure of the plaintiff's person or property during the course of the prior lawsuit.** *Robb v. Chagrin Lagoons Yacht Club, Inc.,* **75 Ohio St. 3d 264, 1996-Ohio-189 . (Emphasis added).**

If you look at the list of items Plaintiffs argue that their evidence shows: (1)-(6) at page 12 of the brief of the Plaintiffs, there is absolutely no mention of seizure of the Plaintiffs' person or property. Later Plaintiffs make the generalized statement: Defendant seized Plaintiff A Metal Source's customer invoices and information. However, Plaintiffs point to no evidence to establish this allegation. Later, at page 14, Plaintiffs state that pursuant to a discovery order in the federal case, Plaintiffs provided information of all its customers to Defendant All Metal. In the federal action, a stipulated Protective Order was docketed on February 16, 2011. The stipulation indicated that confidential and proprietary information provided pursuant to discovery, including customer names and lists, would be marked for "Attorneys' Eyes Only".

In deposition, Plaintiff was unable to identify any confidential or proprietary information marked "Attorneys' Eyes Only", which was seen by Defendants or used by them for any purposes. (Depo of Jessica Esparza, p. 148-157, attached hereto as Ex. C and incorporated herein by reference).

Plaintiffs now seem to allege that Defendants " seizure" consisted of looking at documents that were not marked for ATTORNEYS EYES ONLY OR CONFIDENTIAL. By failing to so identify any documents, Plaintiffs conceded the information was not proprietary and, therefore, that they did not care who saw them. This cannot constitute a " seizure" of property. Plaintiffs seem to be taking the position that the provision of information during the discovery phase of litigation or pursuant to a Court ORDER constitutes "seizure". This element of the cause of action has been strictly interpreted to apply only to actual seizures of actual real or personal property. *See, e.g., Aames Capital Corp. v. Wells*, 2002 Ohio 1498, 2002 WL 500320 at *6 (Ohio Ct. App.) ("Damage to a person's credit, however, does not constitute seizure of property with regard to a malicious prosecution claim."); *Ahlbek v. Joelson*, 1997 Ohio App. LEXIS 3519, 1997 WL 458460, at *3 (Ohio Ct. App., Aug. 8, 1997) (freezing of assets during bankruptcy proceedings caused by suit does not satisfy seizure element).

Plaintiffs state that they have sufficient evidence to show that the prior proceeding by Defendant was maliciously instituted; lacked probable cause; and ended favorably in the Plaintiff's favor. If true, this would meet three out of the four elements necessary to establish a cause of action for malicious civil litigation. However, without the fourth element, the actual seizure of personal property, Plaintiffs' cause of action must fail. In addition, as stated in Defendants' Motion for Summary Judgment, Plaintiff

specifically alleged in her Counterclaim in the federal case that Defendants had probable cause to file their case.

Wherefore, Defendants move this Court for an ORDER of Summary Judgment on Counts 1-19 of the Plaintiffs' Second Amended Complaint.

### Vexatious Litigator (Counts 20-23)

Ohio Revised Code, §2323.52 limits an action to seek vexatious litigator status to only those matters involving the claimant and the alleged vexatious litigator. Ohio Revised Code, §2323.52(B). The statute aptly states:

> A person... who has defended against habitual and persistent conduct in the court...may commence a civil action...to have that person declared a vexatious litigator.

At page 14 of their brief Plaintiffs state: " ... Plaintiff did not bring the Vexatious Litigator claim solely based on the federal lawsuit." The only All-Metal case in which A-Metal was a party (other than the instant case) was the federal lawsuit. A-Metal has no standing to sue on any other case. Thus, inasmuch as A- Metal has only been party to one other lawsuit involving the All- Metal, their evidence involving other matters and parties is misplaced and irrelevant, *see , Helfrich v. Madison* (OHCA5), 2009-Ohio-5140, P38 (summary judgment cannot be granted on a vexatious litigator claim when the moving party has failed to submit proper documentation concerning the alleged prior actions between the parties); *Buoscio v. Macejko*, Mahoning App. No. 00-CA-00138, 2003-Ohio-659, P34; and, *Brown v. Carlton Harley-Davidson, Inc.*, 2013-Ohio-4047 (8th Dist.) in which the Court stated:

> We note that the pleadings also set forth numerous examples of Brown's **vexatious** conduct against unrelated parties in Ohio civil and criminal trial courts, appellate courts, and federal courts. However, those portions of the counterclaim do not impact our analysis of whether appellees' conduct against appellants constituted vexatious litigation.

9

Wherefore, Defendants move this Court for an ORDER of Summary Judgment on Counts 20-23 of the Plaintiffs' Second Amended Complaint.

### Unjust Enrichment (Counts 24-26)

Unjust enrichment occurs when a party retains money or benefits that in justice or equity belong to another. *Liberty Mut. Ins. Co. v. Indus. Comm.*, 40 Ohio St. 3d 109, 110-11, 532 N.E. 2d 124 (1988); *Brose v. Bartlemay*, 1st Dist. No. C-960423, 1997 Ohio App. LEXIS 1478, *12 (Apr. 16, 1997). To establish unjust enrichment, the plaintiff must demonstrate: (1) a benefit conferred by the plaintiff on the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Morequity, Inc. v. Fifth Third Bank*, 1st Dist. No. C-080824, 2009 Ohio 2735, ¶ 22.

Let us now examine the above elements in light of the evidence presented on each of those elements by the Plaintiffs. Plaintiffs state, at page 14, that "Defendant Klocker gained access to Plaintiff A Metal Source's complete customer invoices and information." As discussed earlier, any proprietary information for which the Plaintiffs sought confidentiality was to be marked for ATTORNEYS EYES ONLY OR CONFIDENTIAL.

Plaintiffs now seem to allege that Defendants "unjust enrichment" consisted of looking at documents that were not marked for ATTORNEYS EYES ONLY OR CONFIDENTIAL. By failing to so identify any documents, Plaintiffs conceded the information was not proprietary and, therefore, that they did not care who saw them. Further, the information was openly provided to the Defendants by the Plaintiffs.

Plaintiffs' position now seems to be, yes I gave it to you but now you should pay me for it.

In determining whether an unjust benefit has been received by a defendant, a court must consider whether the defendant was the party responsible for the plaintiffs detrimental position. *U.S. Health Practices, Inc. v. Blake*, 10th Dist. No. 00AP-1002, 2001 Ohio App. LEXIS 1291, *6 (Mar. 22, 2001). In the matter at hand, if the Plaintiffs had not wanted the Defendants to see the information which they now claim constitutes unjust enrichment, the solution was to mark the material ATTORNEYS EYES ONLY OR CONFIDENTIAL prior to providing such material. The error in providing, if any, lies with counsel for Plaintiffs for not indicating the alleged sensitive nature of the material prior to providing the same. The law requires not only that a party be enriched, but that the enrichment be unjust. In other words, enrichment alone will not suffice to invoke the remedial powers of a court of equity. A party seeking the equitable remedy of unjust enrichment must come to the court with clean hands. *Klaustermeyer v. Cleveland* (1913), 89 Ohio St. 142, 105 N.E. 278.

Further, the material allegedly seen and retained by the Defendants only constitutes a benefit if the Defendants somehow used or appropriated the information. The sole evidence provided by the Plaintiffs is that the information was seen. There is no evidence that the Defendants used or benefited or were enriched by the information seen. Plaintiffs present no evidence of any damages resulting from Defendants seeing the material provided without reservation by the Plaintiffs.

This is where the *Noerr-Pennington* doctrine comes in to play. If a party looking at discovery documents could risk civil liability for doing so, then the constitutional right to file and maintain a lawsuit would be chilled and people would resort to self-help.

The doctrine of unjust enrichment is not a contractual remedy. It is an equitable quasi contractual remedy which comes in to play when there is no other remedy. In

Ohio, Plaintiffs have another remedy that is available. By statute, Ohio's Uniform Trade Secret Act is the exclusive remedy for allegedly improper use of "confidential and proprietary information." *Rogers Indus. Prods. Inc. u. BF Rubber Mach., Inc.,* 188 Ohio App. 3d 570, 2010 Ohio-3388, ¶ 28-32 (9th Dist.) (affirming summary judgment on civil tort claims as displaced by trade secret act).

Wherefore, Defendants move this Court for an ORDER of Summary Judgment on Counts 24-26 of the Plaintiffs' Second Amended Complaint.

### Intentional Infliction of Emotional Distress (Counts 27-31)

Turning again to OJI for reference as to what evidence Plaintiffs must present to establish a claim for Intentional infliction **of serious** emotional distress, **OJI CV 429.05 provides:**

> Whenever an individual intentionally or recklessly acts in an extreme and outrageous manner so as to cause serious emotional distress to another, he may be held liable for any mental or physical injury caused. Citing to *Yeager v. Local Union 20 (1983), 6 Ohio St. 3d 369 ; Reamsnyder v. Jaskolski (1984), 10 Ohio St. 3d 150 .*
>
> Liability exists only where the conduct is so outrageous in character and so extreme in degree, that it goes beyond all possible bounds of decency and may be regarded as atrocious and utterly intolerable in a civilized community.
>
> Mere insults, indignities, threats, annoyances, and petty oppressions are not enough. All people are expected to be hardened to a certain amount of rough language or acts which are inconsiderate or unkind. The law does not intervene in every case where feelings are hurt and there is still freedom to express an unflattering opinion.
>
> In order to recover the plaintiff must prove by the greater weight of the evidence three elements:
>
> (1)  That the defendant intentionally or recklessly acted in an extreme and outrageous manner.

(2) That defendant's actions proximately caused plaintiff's psychic and physical injuries.

(3) That plaintiff's mental anguish was serious and of a nature that no reasonable man could be expected to endure.

An act is extreme and outrageous when it passes all reasonable bounds of decency and is excessive, wanton, or gross.

The emotional distress or mental anguish must be serious. A reasonable person, of normal mental condition, would be unable to contend with satisfactorily a serious emotional distress.

The law cannot provide damages or protect against all mental anguish. People are required to endure some emotional discomfort. To recover the plaintiff must prove by the greater weight of the evidence that the distress is serious.

Let us now consider what evidence the Plaintiffs present in support of these elements. Plaintiffs present evidence that:

1. Defendant Klocker instituted a federal lawsuit against A Metal Source. This is not an issue.

2. Defendant Klocker allegedly said he would "make sure the bitch never will be in business. I'm going to put her out of business. "

    This issue was already addressed in the federal case. There is a specific allegation in the counterclaim of Ms. Esparza that addressed this issue. Because the claim was dismissed, *res judicata* applies.

3. While Plaintiff Esparza alleges that Defendant misappropriated her information, there is no actual evidence that Defendant Klocker has done the same.

4. Defendant Klocker purchased domain names.

Taken as a whole in light of the legal standard, the evidence presented by the Plaintiffs fails to establish a claim for intentional infliction of emotional distress. Even if

all of the above allegations were accepted as true, which Defendants deny, they still do not rise to the level of conduct that is so outrageous in character and so extreme in degree, that it goes beyond all possible bounds of decency and may be regarded as atrocious and utterly intolerable in a civilized community.

Further, Plaintiff presents no evidence of injury or damage as a result of these alleged acts. Plaintiff simply asserts on page 18 that Defendants didn't ask the right question at her deposition, and she in fact is currently undergoing professional treatment. A review of the deposition reveals Plaintiff was asked and given ample opportunity to state she was in treatment. Regardless, her brief offers no evidence in compliance with Rule 56 in the form of an affidavit or sworn statement that she is treating for an emotional condition related to any of the Defendants' conduct. Without evidence which complies with Rule 56, Plaintiffs' allegations of extreme emotional distress and treatment are meritless.

Wherefore, Defendants move this Court for an ORDER of Summary Judgment on Counts 27-31 of the Plaintiffs' Second Amended Complaint.

### Defamation (Counts 32- 34)

It appears from a review of the Response Brief that A-Metal has conceded that the trade magazine article is not actionable. Rather Plaintiffs rely on only a single alleged incident to support the defamation claim. This is the only alleged act of defamation made within the applicable statute of limitations. This was the allegation that McGrath told Sepulveda that Esparza was crazy found at page. 134, line 5 of Esparza's deposition transcript. This allegation is premised upon the hearsay statement of Claudia Sepulveda that an employee of Defendant, Stephen McGrath, said Plaintiff was crazy.

This statement cannot be considered by this Court because there is no Rule 56 compliant evidence submitted on this issue. Sepulveda failed to appear at her deposition even though she was served with a subpoena. She has not submitted an affidavit. Therefore, there is no evidence from this witness to establish this fact. The only compliant evidence on the matter came from McGrath at his deposition, and he denied ever making such a statement. Therefore, there is no admissible evidence that McGrath said that. McGrath denied it and Sepulveda skipped her deposition and never provided an affidavit. Esparza's hearsay testimony is not admissible and cannot be considered.

Further, there is no evidence that McGrath was acting within the scope of his employment when he made this alleged statement. Thus, there is no evidence that would make All-Metal vicariously liable for this statement. Obviously, Defendant Klocker cannot be personally liable for it under any theory.

Finally, Plaintiffs offer no evidence of any damages. On deposition, Esparza testified that Sepulveda was still friends with her after hearing this and they even spent New Years Eve together.

Wherefore, Defendants move this Court for an ORDER of Summary Judgment on Counts 32-34 of the Plaintiffs' Second Amended Complaint.

## CONCLUSION

Based upon the foregoing, Defendants respectfully request that this Court grant summary judgment in their favor on all claims.

Respectfully submitted,

*/s/ Joseph A. Ferrante*

_____
**JOSEPH A. FERRANTE** (0040128)
Attorney for Defendants,
Thomas G. Klocker and All Metal Sales, Inc.
2 Summit Park Drive, #540
Independence, OH  44131
Direct:  216/ 674-1836
Office:  216/ 623-1155; Facsimile:  623-1176
Email:  Ferranj@Nationwide.com

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on the Court's on-line docket this 8th day of April, 2014, and an electronic copy sent to:

| | |
|---|---|
| Lei Jiang, Esq.<br>26943 Westwood Road<br>Westlake, OH  44145-4656 | Attorney for Plaintiffs |
| Gregory E. O'Brien, Esq.<br>Cavitch, Familo & Durkin Co., L.P.A.<br>Twentieth Floor<br>1300 East Ninth Street<br>Cleveland, OH  44114 | Attorney for Third Party Plaintiff,<br>Nationwide Mutual Insurance Company |
| Matthew J. Cavanagh, Esq.<br>600 Superior Avenue, East<br>Suite 2100<br>Cleveland, OH  44114 | Attorney for Defendants,<br>Thomas G. Klocker and All Metal Sales, Inc. |

*/s/ Joseph A. Ferrante*

---
**JOSEPH A. FERRANTE** (0040128)
Attorney for Defendants,
Thomas G. Klocker and All Metal Sales, Inc.